UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>TELEXFREE, LLC,<br>TELEXFREE, INC.,<br>TELEXFREE FINANCIAL, INC.,<br><br>Debtors | Chapter 11<br>Case No. 14-40987-MSH<br>Case No. 14-40988-MSH<br>Case No. 14-40989-MSH<br><br>Jointly Administered |
| STEPHEN B. DARR, Chapter 11 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>BENJAMIN ARGUETA, ALEXANDRO ROCHA, JOSE NETO, JULIO C. PAZ, EUZEBIO SUDRE NETO, HUGO ALVARADO, ANA R. RAMOS, LINDA SUZANNE HACKETT, RUDDY ABREAU, MARCO ALMEIDA, RODRIGO MONTEMOR, LAUREANO ARELLANO, AARON ATAIDE, ROSANE CRUZ, OMAR QUINONEZ, CARLOS C. DEJESUS, BILKISH SUNESARA, ANDRES BOLIVAR ESTEVEZ, JOSE LOPEZ, ANA ROSA LOPEZ, FRANTZ BALAN, MARCELO DASILVA, GLADYS ALVARADO, AND A DEFENDANT CLASS OF NET WINNERS,<br><br>Defendants | Adv. Proc. No. |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
<u>MOTION FOR CLASS CERTIFICATION</u>**

<u>PRELIMINARY STATEMENT</u>

The debtors, TelexFree, LLC, TelexFree, Inc., and TelexFree Financial, Inc.

(collectively, the "<u>Debtors</u>") ostensibly operated a multi-level marketing company engaged in the

sale of voice over internet service ("VoIP") but in actuality operated a large scale Ponzi scheme involving up to 1,900,000 persons throughout the world.

In this class action, the trustee Stephen B. Darr (the "Trustee") seeks two principal forms of relief: (i) recovery, on the basis of fraudulent transfer, from the approximately 15,000 net winners who reside in the United States ("Net Winners") and who received more from their involvement in the Ponzi scheme than they paid;[1] and (ii) recovery, as preferential transfers, of amounts paid to those Net Winners who also received more from their involvement in the scheme than they paid out in the ninety (90) days prior to the bankruptcy filings. The Trustee has elected to bring this litigation as a defendant class action, in the interests of conserving judicial resources, preserving the resources of the parties, and in order to avoid the potential for inconsistent results. As further set forth below, the action meets the criteria for institution of a defendant class action as set forth in Federal Rule of Civil Procedure 23, as incorporated by Federal Rule of Bankruptcy Procedure 7023.

## FACTS

**A.    Mechanics of the Scheme**

1.    Persons (hereafter, "Participants") could join the Debtors' scheme by purchasing a membership plan in, or a VoIP package from, the Debtors. The Debtors offered two membership plans, an Ad Central Plan ($339 for a one year contract) or an AdCentral Family Plan ($1,425 for a one year contract). Both plans offered Participants the right to receive credits, convertible into cash, on a weekly basis for the placement of useless internet advertisements, enabling Participants to generate returns on their investment ranging from 200% to 300%

---

[1] The use of the term "Participant" to denote those who invested and became involved in the Debtors' scheme is not intended to infer that Participants were cognizant of the illegality of the scheme.

2

annually. (*Affidavit of Stephen B. Darr in Support of Motion for Class Certification*, hereinafter "Darr Decl." ¶¶ 13-14).

2. In addition to credits for posting these advertisements, the Debtors issued credits to Participants for the sale of membership plans and the establishment of new User Accounts (as defined herein) as follows:

a. $20 in credits for each new AdCentral Plan and $100 in credits for each new AdCentral Family Plan in a Participant's network.

b. $20 in credits for each User Account in one's "network," up to a maximum of $440, as long as there were two subsidiary User Accounts.

c. 2% of all payments to each User Account within one's network, down to six "levels" of the network, provided that each User Account had a registered VoIP customer.

d. 2% of the Debtors' net monthly billing, up to a maximum of $39,600 in credits, for an AdCentral Family Plan that had ten new AdCentral Family Plans in its network, so long as each plan had five registered VoIP customers.

(Darr Decl. ¶ 15).

3. The Debtors also issued credits to Participants for the sale of VoIP Packages as follows:

a. 90% (or $44.90 in credits) for the initial sale of a VoIP Package at $49.90.

b. 10% (or $4.99 in credits) per month for the renewal of a VOIP Package by a User Account holder directly in one's network[2] and 2% (or $0.99 in credits) per month for the renewal of a VOIP Package by a User Account holder indirectly in one's network, down to six levels of the network.

c. 2% from all VoIP Package sales in one's network, down to six levels of the network.

(Darr Decl. ¶ 16).

---

[2] In practice, the Debtors appear to have provided Participants with credits equal to ninety percent (90%) of the renewal fees.

3

4. The credits issued to Participants for placing advertisements and selling membership plans and VoIP Packages could be redeemed for cash, transferred to another User Account, or applied in satisfaction of an invoice for another User Account. (Darr Decl. ¶ 17).

5. Participants could pay their invoice for the purchase of a membership plan or VoIP Package in cash directly to the Debtors. Alternatively, a Participant could satisfy his/her own invoice directly by payment in cash to a recruiting Participant, who would, in turn, satisfy the invoice by a redemption of that recruiting Participant's accumulated credits (referred to as a "Triangular Transaction"). In fact, it was a regular practice of the Debtors that membership fees were paid by the use of accumulated credits rather than by cash. (Darr Decl. ¶¶ 22-24).

6. A new account ("User Account") was generally established each time that a membership plan or VoIP Package was purchased, with either cash or accumulated credits. (Darr Decl. ¶ 28).

7. Approximately 11,000,000 User Accounts were created, involving up to 1,900,000 Participants. Many Participants maintained multiple User Accounts, and some had hundreds, or even thousands, of User Accounts. (Darr Decl. ¶ 21).

8. Each time that a Participant purchased a membership plan or VoIP Package, an account was established with SIG (the "User Account"). At the time a User Account was created, Participants were asked to input into the Debtors' database their name, email address, passcode, and other identifiying information (the "Common Identifiers"). SIG did not contain a mechanism to automatically link or aggregate all User Accounts of a Participant. Through the use of algorithms linking Common Identifiers, however, the Trustee is able to determine a Participant's User Accounts ("Related User Accounts"). (Darr Decl. ¶¶28-29).

4

9. Although, as in most Ponzi schemes, the vast number of Participants lost money, approximately 15,000 Participants are believed to be Net Winners, defined as any Participant who received more from their involvement in the scheme, either directly from the Debtors or through Triangular Transactions, than such Participant paid out during the scheme, either directly to the Debtors or through Triangular Transactions. Within the class of Net Winners are Participants who also received preferential transfers, that is, they received more than they paid out during the ninety days prior to the bankruptcy filings as a result of their involvement in the scheme. The list of Net Winners was prepared by the Trustee using algorithms to link the Common Identifiers for individual Participants. (Darr Decl. ¶30).

10. On October 7, 2015, the Trustee filed a *Motion by Chapter 11 Trustee for Entry of Order Finding that Debtors Engaged in Ponzi and Pyramid Scheme and Related Relief* (the "Ponzi Motion"). By order dated November 24, 2015, as amended by order dated December 21, 2015, the Court found that the Debtors engaged in a Ponzi scheme and that such finding was the law of the case.

## ARGUMENT

**A.     Requirements for Class Certification.**

1. Prerequisites to a Class Action.

Pursuant to Fed. R. Bankr. P. 7023, Rule 23 of the Federal Rules of Civil Procedure applies in adversary proceedings. Rule 23(a) sets forth a four-prong test for class certification:

> One or more members of a class may sue *or be sued* as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable ["the **numerosity requirement**"];
>
> (2) there are questions of law or fact common to the class ["the **commonality requirement**"];

5

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["the **typicality requirement**"]; and

(4) the representative parties will fairly and adequately protect the interests of the class ["the **adequacy requirement**"].

Fed. R. Civ. P. 23(a) (emphasis supplied). While most class actions involve classes of *plaintiffs,* it is clear that a class action may also involve a class of *defendants* since the rule references members who may "sue or be sued". Defendant class actions are particularly appropriate in a Ponzi scheme insolvency case, where claims against net winners involve common questions of law and fact, and where the principal issue unique to individual Defendants is the computation of net winnings. *See Bell v. Disner,* 2015 WL 540552, at *2 (W.D.N.C. Feb. 10, 2015); *Guy v. Abdulla,* 57 F.R.D. 14 (N.D. Ohio 1972).

The Trustee need not prove the presence of these factors by more than a preponderance of the evidence. *See, e.g., Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 202 (2nd Cir. 2008); *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 307 (3rd Cir. 2008).[3] As set forth below, the preponderance of the evidence shows that class certification is appropriate and consistent with the provisions of Fed. R. Civ. P. 23.

B. **The Proposed Class Satisfies The Four Criteria Of Rule 23(a).**

1. Numerosity.

To prove numerosity, the Trustee must demonstrate that the class is "so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1). Numerosity is generally "not a difficult burden to satisfy." *McAdams v. Mass. Mut. Life Ins. Co.,* 2002 WL 1067449, at *3 (class

---

[3] The First Circuit has expressly declined to define the burden of proof on the movant at the class certification stage. *See In re PolyMedica Corp. Secs. Litig.,* 432 F.3d 1, 17 (1st Cir. 2005). It has suggested that the court must evaluate the movant's evidence "critically" but "without allowing the defendant to turn the class-certification proceeding into an unwieldy trial on the merits. … These generalities," the court said, "are the best we can do." *Id.*

6

of 117). Numbers alone are not *usually* determinative. *Id.* Here the proposed class includes approximately 15,000 Net Winners. In these cases, the sheer number of Net Winners compels the conclusion that the proposed class satisfies the numerosity requirement. *See, e.g., del Campo v. Am. Corrective Counseling Servs., Inc.,* 254 F.R.D. 585, 592 (N.D. Cal. 2008) ("A class of one thousand members clearly satisfies the numerosity requirement"); *Kerrigan v. Phila. Bd. of Educ.,* 248 F.R.D. 470 (E.D. Pa. 2008) ("common sense dictates that where the class numbers in the thousands that joinder of all would be impracticable and that the numerosity requirement has been satisfied"). In *Bell v. Disner,* 2015 WL 540552, at *2 (W.D.N.C. Feb. 10, 2015), an analogous case involving certification of a defendant class of net winners in a Ponzi scheme case, the Court held that a class of 9,400 net winners, far smaller than the class here, was undisputedly enough to satisfy numerosity.

In addition to the sheer number of Defendants, the members of the proposed class are also dispersed throughout the United States further supporting a finding that the numerosity requirement has been satisfied. *Andrews,* 780 F.2d at 131; *see also In re Carbon Black Antitrust Litig.,* 2005 WL 102966, at *10 (D. Mass. Jan. 18, 2005) ("the impracticability of joinder is exacerbated by the geographic diversity of the class"). (Darr Decl. ¶31).

    2.    <u>Commonality.</u>

To prove commonality, the Trustee need only demonstrate that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Even a single common question is enough. *See Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2556 (2011). This is a "low bar, and courts

have generally given it a permissive application." *In re New Motor Vehicles Can. Export Antitrust Litig.,* 522 F.3d 6, 19 (1st Cir. 2008) (citation omitted).[4]

The proposed Class consists of all Participants who are Net Winners and from whom the Trustee seeks to recover the Net Winner Payment as avoidable fraudulent transfers pursuant to Section 548 or the Net Preference Payments as avoidable preferential transfers pursuant to Section 547. Issues common to each member of the Net Winner Class include, among other things: (i) what transfers should be included in the determination of a Net Winner; (ii) whether Net Winners should be determined by an aggregation of Related User Accounts; (iii) whether the Net Winner Payments are avoidable as fraudulent transfers because the Debtors had the actual intent to hinder, delay, or defraud creditors; (iv) whether the Net Winner Payments are avoidable as fraudulent transfers because the transfers were made for less than fair consideration while the Debtors were insolvent, undercapitalized, or unable to pay debts as they became due; (v) whether the Net Preference Payments may be recovered as preferential transfers; (vi) whether the Court's finding that the Debtors engaged in a Ponzi and pyramid scheme may be applied, along with any applicable presumptions, in determining the Trustee's claims. (Darr Decl. ¶33).

The existence of a Ponzi scheme gives rise to several presumptions that the Trustee contends are applicable here. These presumptions relate to some of the common legal and factual issues in the cases. Because the Debtors have been found to have engaged in a Ponzi

---

[4] The Supreme Court's decision in *Wal-Mart,* its most recent look at the commonality requirement, has no bearing on this case. The plaintiffs failed the commonality test in *Wal-Mart,* mainly because of the unique nature of their claims. They sought to represent a class of 1.5 million female employees alleging that Wal-Mart had discriminated against them in employment by delegating pay and promotion decisions to local managers. The Court focused on the absence of a single, common policy that the plaintiffs were challenging; the whole point of their claims was that they were challenging many local policies and practices. There is no such issue here: the Trustee alleges a single Ponzi or pyramid scheme, with essentially identical transactions that carry essentially identical legal consequences for the Net Winners under bankruptcy law.

scheme, the Debtors are presumed: (i) to have made the transfers with their actual intent to defraud, *Emerson v. Maples (In re Mark Benskin & Co., Inc.)*, 59 F.3d 170 (6th Cir. 1995); *In re AFI Holding, Inc.*, 525 F.3d 700 (9th Cir. 2008); (ii) to have been insolvent at the time of the transfers, *Wiand v. Lee*, 753 F.3d 1194, 1201 (11th Cir. 2014); *Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006); and (ii) to have made the transfers for less than reasonably equivalent value, *Donell v. Kowell*, 533 F.3d 762, 777-78 (9th Cir. 2008). Because the Debtors engaged in a Ponzi scheme, the ordinary course of business defense is not applicable to the Defendants having received preferential transfers. *In re M&L Business Machine Company, Inc.*, 164 B.R. 657 (D. Col. 1994); *In re Baker & Getty Financial Services, Inc.*, 88 B.R. 792 (Bankr. N.D. Ohio 1988).

Whether the Court should exercise discretion in applying the law of the case as to the Ponzi finding and, if the Ponzi finding is applicable, whether the foregoing presumptions incident to a Ponzi finding may be rebutted by a Defendant, are themselves issues of fact and law that are common to all of the Defendants.

There are some individual issues of fact in the cases, namely the date and amount of each avoidable payment. But the common issues are "capable of classwide resolution," and in fact they *require* classwide resolution to avoid a multiplicity of suits that run the risk of inconsistent adjudications. (Darr Decl. ¶34).

*Bell v. Disner, supra,* a closely analogous case, shows that commonality is satisfied in a case to recover payments from net winners in a Ponzi scheme. In *Bell,* the defendants argued that there was no commonality because net winners might have differing relationships with the schemers and differing defenses. But the court held that this argument "ignore[s] the nature of this fraudulent transfer case, which simply looks at whether there was a fraudulent transfer to all

9

the Net Winners that must be repaid, without regard to the individual circumstances of participation in the scheme." *Id.* at *3. The same is true here.

  3. <u>Typicality.</u>

To prove typicality, the Trustee must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" in order to satisfy the typicality requirement. Fed. R. Civ. P. 23(a)(3). "Typicality does not require that the defenses be identical or perfectly coextensive; substantial similarity is sufficient." *In re Integra Realty Resources, Inc.,* 179 B.R. 264, 270 (Bankr. D. Colo. 1995), *aff'd,* 354 F.3d 1246 (10th Cir. 2004) (citation omitted) (defense class action seeking to avoid fraudulent transfer). The representative defendant's defenses to the Trustee's claim must be typical, but the Trustee does not need to show that any cross-claims or counterclaims the representative may have are typical. *See Tilley v. TJX Cos.,* 212 F.R.D. 43, 46 (D. Mass.), *vacated on other grounds,* 345 F.3d 34 (1st Cir. 2003); *In re Dehon, Inc.,* 298 B.R. 206, 215 (Bankr. D. Mass. 2003) (in defense class action, defenses were typical despite possibility for counterclaims or defenses based on ERISA or foreign law arising later).

Typicality is similar to commonality; both factors have to do with whether maintenance of a class action is economical and whether the representatives' claims and the unnamed class members' claims are "so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of S.W. v. Falcon,* 457 U.S. 147, 157 n.13 (1982); *see also Bakalar v. Vavra,* 237 F.R.D. 59, 64 (S.D.N.Y. 2006) (in defense class action, commonality, typicality, and adequacy "merge together"). In the defense class action context, courts have focused on whether "there is a unique defense that will consume the merits of the case." *Integra,* 179 B.R. at 270. If so, then the court is of course required to deny certification. Here, though, each of the Net Winners is identically situated. Because the Debtors have been

10

found to have operated a Ponzi scheme, all of the causes of action asserted, avoidance of fraudulent transfers and avoidance of preferential transfers, turn on the activity of the Debtors, not of the Net Winners. Even without the Ponzi finding and presumptions that follow from such finding, the issues—aside from the dates and amounts of particular transactions—are readily susceptible of class treatment. (Darr Decl. ¶35).

As set forth above, the only issues that are unique to each class member pertain to the amount of each member's Net Winnings and the date of the transactions in question. The Complaint requests a procedure, to take place after the Court has ruled on the class issues, to address the computation of liability for each class member and that will comport with due process. (Darr Decl. ¶36).

   4. <u>Adequacy.</u>

To prove the adequacy of the class representative in a defendant class action, the Trustee must demonstrate that the putative class representative has a substantial claim to defend, that there is no collusion between the putative class representative and the Plaintiff, and that the putative class representative has the resources to conduct the litigation fully. *Dehon,* 298 B.R. at 215 (citations omitted).

The Trustee has selected a group of potential class representatives who are adequate and appropriate representatives of the Net Winner Class because they have substantially more (or certainly at least as much) incentive to vigorously defend against the Trustee's claims as any unnamed class member. (Darr Decl. ¶37).

**C.** **<u>Type of Class Action.</u>**

There are three types of class actions that can be brought under Rule 23(b), assuming that the four requirements set forth in Rule 23(a) have been satisfied. The three types are listed below:

11

(b) A class action may be maintained if Rule 23(a) is satisfied and if

    (1) prosecuting separate actions by or again individual class members would create a risk of:

        (A)    inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

        (B)    adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

    (2)    The party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

    (3)    The court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy.

    1.    <u>The Class Should Be Certified Under Rule 23(b)(1).</u>

In connection with recovery of fraudulent transfers and preferential transfers in Ponzi cases, courts have found that class certification under Rule 23(b)(1) is appropriate.

In *Guy v. Abdulla,* 57 F.R.D. 14 (N.D. Ohio 1972), John Guy was the bankruptcy trustee for Don Lowers, a Ponzi schemer. The trustee sought to avoid preferential or fraudulent transfers, and he asked the court to certify a class of persons who received transfers from the debtor and a second class consisting of mediate transferees, pursuant to Rule 23(b)(1). The court granted the motion to certify under both Rule 23(b)(1)(A) and 23(b)(1)(B). It concluded that while it was "highly probable" that the same standards would be applied if the proceedings were kept separate, "the risk remains that inconsistent adjudication of the common issues could result," through "differing interpretations of the law." *Id.* at 17-18. To be sure, under the rule of *stare decisis*, later courts would be likely to follow the lead of the first court to decide the class

issues, if the actions were kept separate. But that is all the more reason to certify a class. In a class, the court makes findings of commonality, typicality, and adequacy of representation that ensure that the interests of the absent class members are protected. In separate actions, on the other hand, the later defendants are at the mercy of the quality of representation of the first defendant. *Id.* As in the present cases, the *Guy* court recognized that each Defendant's liability would need to be individually determined; the inability to render a money judgment as to each Defendant did not preclude the court from proceeding on a class action basis as to the common issues.

More recently, in *Bell v. Disner, supra,* the receiver sought to bring a defendant class action against net winners in a Ponzi scheme. The court granted the motion, citing some of the same considerations that persuaded the court in *Guy.* It noted the risk of inconsistent adjudication if the receiver were forced to bring nearly 10,000 individual claims. And it rejected the defendants' argument that certification under Rule 23(b)(1) was improper insofar as the receiver sought a money judgment. Even if there were an absolute rule against certifying a class under Rule 23(b)(1) when the plaintiff seeks damages— which there is not, as shown by cases such as *In re A.H. Robins Co.,* 880 F.2d 709, 742 (4th Cir. 1989) (claim for damages resulting from use of Dalkon Shield); *In re Federal Skywalk Cases,* 93 F.R.D. 415, 423-24 (W.D. Mo. 1982), *vacated on other grounds,* 690 F.2d 1175 (8th Cir. 1982) (action for damages caused by collapse of bridge)— the recovery of fraudulent transfers in bankruptcy is a special case, as *Guy* and *Bell* recognize. As the court in *Bell* found, "Actions for the return of fraudulent transfers and the imposition of constructive trust seek equitable relief (even though it is the payment of money) that is appropriate for Rule 23(b)(1)(A) class certification." *Bell,* 2015 WL 540552, at *6.

Other cases are in accord. *In re Broadhollow Funding Corp.,* 66 B.R. 1005 (E.D.N.Y. 1986), cites *Guy* and is to similar effect, though there the nature of the risk of inconsistent adjudications was different than in *Guy* and *Bell,* the two transfer avoidance cases. In *Broadhollow,* the plaintiff was the debtor in possession. It was in the business of originating and servicing mortgage loans. It brought a class action against the class of its investors, seeking a declaration as to the equitable ownership of the mortgages. The court, in addition to noting the general risk of inconsistent adjudication, noted that on the particular facts of the case, there was a risk that the debtor could be declared the equitable owner of a particular mortgage in an action against one investor but ordered to convey the mortgage to a second investor in a separate action. In *Weinman v. Fid. Capital Appreciation Fund*, 354 F.3d 1246 (10th Cir. 2004), the Tenth Circuit upheld class certification under Rule 23(b)(1)(B) in an action involving questions of whether a fraudulent transfer occurred and whether there was an unlawful dividend distributed. The court noted that the first suit against a defendant or group of defendants could be dispositive of all remaining suits and would decide the rights of absent defendants without the class action's assurance of adequate representation. *Id.* at 1263-1264.

The only practical approach to the disposition of the fraudulent transfer and preferential transfer claims is the institution of the Defendant class action. It is also the best method to protect the Estates from unreasonable costs. *See In re Dehon, Inc.*, 298 B.R. 206, 217 (Bankr. D. Mass. 2003).

    2.    <u>The Defendant class action should be mandatory, with no opt out right.</u>

Members of a class certified pursuant to Fed. R. Civ. P. 23(b)(1) are not entitled to opt out of the action. *See U.S. Trust Co. v. Alpert*, 163 F.R.D. 409 (S.D.N.Y. 1995); *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956 (3rd Cir. 1983); *Williams v. State Bd. Of Elections*, 696 F. Supp. 1574 (N.D. Ill. 1988). In this action as in any Rule 23(b)(1) case, the purpose of

14

proceeding on a class action basis would be eviscerated if class members could opt out, as the separate lawsuits would expose the Trustee to the risk of facing incompatible results and would multiply the litigation unnecessarily. This is particularly so in defendant class actions such as these cases, because the incentive to opt out, if there is a right to opt out, is so high in defendant class actions. *See* Robert E. Holo, *Defendant Class Actions: The Failure of Rule 23 and a Proposed Solution,* 38 UCLA L. Rev. 223, 240-41 (1990) (noting the incentive).

### D.     Timing of Class Certification

The Trustee requests that the Defendant class be certified within 30 days after the time for filing a responsive pleading has expired. Rule 23 requires the Court to rule on class certification "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). The purpose of the early certification requirement is to provide all parties with information concerning the scope of, and rights impacted by, the action and to protect parties from prejudice. *See Andrews*, 780 F.2d at 131. Certification should take place at an early stage of the case, before consideration of the merits. *See Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299 (1st Cir. 2000)(delaying class certification until after determination of summary judgment is unorthodox). The Trustee submits that consideration of class certification is appropriate promptly after the deadline for responsive pleadings has expired, as Defendants will have had an adequate opportunity to identify any basis for opposing certification.

### E.     Defining the Class and the Class Claims.

The order certifying a class "must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). The Trustee has filed a Motion requesting that the Court enter an order, in the form attached thereto,

that will comport with Rule 23(c)(1)(B). In the proposed order the Trustee seeks the following rulings:

(i) That the Defendant Class be defined as all Net Winners of fraudulent transfers (as described herein) residing in the United States, as well as those Net Winners residing in the United States who received at least $6,225 more from their involvement in the Ponzi scheme in the ninety days preceding the Petition Date than they paid into the Ponzi scheme[5];

(ii) That the class claims to be certified include the following: as to Count I, that the claims against Participants be aggregated based upon the activity in Related User Accounts; as to Count II, that that Debtors transferred an interest in property to the Net Winners with the actual intent to hinder, delay, or defraud creditors; as to Count III, that the Debtors transferred an interest in property to the Net Winners for less than fair consideration at a time when the Debtors were insolvent, undercapitalized, or unable to pay their debts as they became due; as to Count IV, that the Debtors transferred an interest in property to the Net Winners within ninety (90) days of the petition date on account of antecedent debt, while the Debtors were insolvent, and that enables the Net Winners to receive more than such Net Winners would have received in Chapter 7 absent having received the payment; as to Count V, that a uniform procedure be established to determine the amount of the Trustee's claim against each Net Winner by the issuance of a statement and an opportunity for the Net Winner to contest the amount asserted to be owed by the Trustee;

(iii) That the Court appoint class counsel after the deadline for filing an answer or other responsive pleading has expired.

---

[5] Since these cases involve Debtors whose debts are not primarily consumer debts, the Trustee may not recover preferential transfers where the value of the property that constitutes or is affected by such transfer is less than $6,225. 11 U.S.C. §547(c)(9).

**F.     Notice to the Class.**

Fed. R. Civ. P. 23 does not provide members of a class that is certified under Rule 23(b)(1)(A) with a right to be notified of the action. *See, e.g., U.S. Trust Co. v.* Alpert, 163 F.R.D. 409, 419 (S.D.N.Y. 1995). The court may, however, "direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A). The Trustee has filed a motion to establish the form and manner of notice to be provided to named and unnamed members of the Defendant class. In summary, the Trustee intends to make a good faith effort to provide notification by electronic or regular mail to all Net Winners and to provide constructive notice of the institution of this action through multi-level marketing websites and the website operated by the Trustee's claims agent. The Trustee asserts that such notice will be in accord with due process and the provisions of Fed. R. Civ. P. 23.

        STEPHEN B. DARR,
        CHAPTER 11 TRUSTEE,

        By his attorneys,

        */s/ Charles R. Bennett, Jr.*
        Harold B. Murphy (BBO #362610)
        Charles R. Bennett, Jr. (BBO 037380)
        Andrew G. Lizotte (BBO #559609)
        Murphy & King, Professional Corporation
        One Beacon Street
        Boston, MA  02108
        Telephone:  (617) 423-0400
        Facsimile:  (617) 423-0498
        Email: ALizotte@murphyking.com

Dated:  January 15, 2016
701095