**Jose Arantes Neto**
Self-Represented Defendant



# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: ) | **BK Case No.:** 14-40987 |
| ) | **AP Case No.:** 16-04006 |
| Telexfree, LLC ) | |
| Debtor, ) | Chapter 11 |
| ) | |
| Stephen B. Darr ) | |
| Plantiff, ) | **DEFENDANT'S ANSWER TO** |
| ) | **COMPLAINT** |
| ) | **TO RECOVER PROPERTY** |
| vs. ) | |
| ) | |
| Benjamin Argueta et al. ) | |
| Defendants, ) | |
| ) | |
| ) | |

Defendant answers Plaintiff's complaint as follows:

**Paragraph 1:** I do not have enough information, and therefore, deny.

**Paragraph 2:** I do not have enough information, and therefore, deny.

**Paragraph 3:** I do not have enough information, and therefore, deny.

**Paragraph 4:** I admit that I, Jose Neto, am an individual currently residing at 49 Rodney Street, Worcester, Massachusetts 01605.

**Paragraph 5:** I do not have enough information, and therefore, deny.

**Paragraph 6:** I do not have enough information, and therefore, deny.

**Paragraph 7:** I do not have enough information, and therefore, deny.

**Paragraph 8:** I do not have enough information, and therefore, deny.

**Paragraph 9:** I do not have enough information, and therefore, deny.

**Paragraph 10:** I do not have enough information, and therefore, deny.

**Paragraph 11:** I do not have enough information, and therefore, deny.

**Paragraph 12:** I do not have enough information, and therefore, deny.

**Paragraph 13:** I do not have enough information, and therefore, deny.

**Paragraph 14:** I do not have enough information, and therefore, deny.

**Paragraph 15:** I do not have enough information, and therefore, deny.

**Paragraph 16:** I do not have enough information, and therefore, deny.

**Paragraph 17:** I do not have enough information, and therefore, deny.

**Paragraph 18:** I do not have enough information, and therefore, deny.

**Paragraph 19:** I do not have enough information, and therefore, deny.

**Paragraph 20:** I do not have enough information, and therefore, deny.

**Paragraph 21:** I do not have enough information, and therefore, deny.

**Paragraph 22:** I do not have enough information, and therefore, deny.

**Paragraph 23:** I do not have enough information, and therefore, deny.

**Paragraph 24:** I do not have enough information, and therefore, deny.

**Paragraph 25:** I do not have enough information, and therefore, deny.

**Paragraph 26:** I do not have enough information, and therefore, deny.

**Paragraph 27:** I do not have enough information, and therefore, deny.

**Paragraph 28:** I do not have enough information, and therefore, deny.

**Paragraph 29:** I do not have enough information, and therefore, deny.

**Paragraph 30:** I do not have enough information, and therefore, deny.

**Paragraph 31:** I do not have enough information, and therefore, deny.

**Paragraph 32:** I do not have enough information, and therefore, deny.

**Paragraph 33:** I deny such allegations, and I profoundly disagree with them. By creating a "Net Winner Class" based on people that received more money that what was paid to the Debtor is fundamentally wrong and inconsistent with the concept of "Multi-Level Marketing" network[1].

TelexFree was presented to me as a multi-level marketing network, similar to Herbalife[2] (as a matter of fact, executives of Herbalife gave us several lectures and workshops about the topic). As such, it is intrinsic to the nature of this business that the highest level members, meaning the ones that started to work with the product before and built a stronger network, will have higher gains compared to the others.

The classification proposed by the Trustee is only related to the highest level members of any multi-level marketing network. It is not appropriate for a bankruptcy procedure, because it lefts

---

[1]DEFINITION of 'Multi-Level Marketing' according to investopedia.com (http://www.investopedia.com/terms/m/multi-level-marketing.asp).
A strategy that some direct sales companies use to encourage their existing distributors to recruit new distributors by paying the existing distributors a percentage of their recruits' sales. The recruits are known as a distributor's "downline." All distributors also make money through direct sales of products to customers. Amway is an example of a well-known direct-sales company that uses multi-level marketing.

[2] Visited on 02/08/2016: Forbes magazine estimates that 2% of the Herbalife distributors have a significant pay-off: http://www.forbes.com/sites/panosmourdoukoutas/2014/07/22/how-many-distributors-get-rich-from-herbalife/#2715e4857a0b11b44ffc7939

out the intent or state of mind through each the money was received and acquired. It means that, the "defendants" should be classified in accordance with whether their gains were received by fraud, instead of being chosen for generally having received more than invested. Therefore, I deny and disagree with the Trustee classification of the "Net Winner Class" for being overly broad.

**Paragraph 34:** I do not have enough information, and therefore, deny.

**Paragraph 35:** I do not have enough information, and therefore, deny.

**Paragraph 36:** I deny the allegations concerning the amount that was attributed to me. Truly believing the business to be a legitimate business strategy in complete accordance with the law, I have declared to the IRS all the gains and profits related to the TelexFree, as you can see from the underlined attachment 2.

**Paragraph 37:** I do not have enough information, and therefore, deny. However, considering the fact that the TelexFree business was started by other individuals (named Carlos Wanzeler, James Merrill and Steven Labriola) back in Brazil, it is only reasonable to say that there are many other people that were not named in this list and that would have had gains substantively higher than mine.

Additionally, it is not true that I was involved in the Debtor's scheme, for what I truly believed the business to be legitimate, as you can see from the underlined attachment 3, my affidavit.

**Paragraph 38:** I deny it. Class Representatives are chosen based on whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Therefore, a conflict that "goes to the very subject matter of the litigation will defeat a party's claim of representative status..." 7A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice & Procedure § 1768 (3d ed. 2005).

In this case, the fact that I decided to invest in the TelexFree business only after being shown all the documentation concerning the lawful and solvent status of this corporation by the incorporators themselves (see attachment _1_) at several occasions, sets me aside from the other so-called "Net Winners" that may have invested and received money with knowledge about the insolvency of TelexFree.

I was misled by the incorporators by official documents from the Secretary of State. Also, I so strongly believed the business to be lawful and solvent that I declared all my gains to the IRS, which makes me not only an inadequate class representative, but an inadequate defendant whatsoever.

**Paragraph 39:** I deny it. As I stated above, the claims and defenses of the so-called "Net Winners" are not typical of mine. Carlos Wanzeler, James Merrill and Steven Labriola asserted to me, during several occasions, including on camera (see attachment _1_) that the TelexFree company was a safe investment. I have not participated in any Ponzi or Pyramid Scheme, and the money that I have received through my participation in the business was all declared to the IRS.

**Paragraph 40:** I deny it. The nature of the defenses asserted by the class representatives is not the same, and liability for repayment does not depend on mathematical calculation but on proof that the defendants were "conscious participants" in the fraud. See Fleet Nat'l Bank v. Merriam, 45 Mass.App.Ct. 592, 699 N.E.2d 1266, 1268 (1998).

For instance, "[t]to be subject to aiding and abetting liability, an individual must have in some way associated with the fraudulent scheme and share the criminal intent of the principal". United States v. Serrano, 870 F.2d 1, 6 (1st Cir. 1989). See US v. Pol-Flores, 644 F. 3d 1 - Court of Appeals, 1st Circuit 2011.

In such circumstances, the court found, "the creditor can recover from the transferees of fraudulently conveyed property." Id. See also Nolan E. Clark, Recent Development, Tort Liability for Fraudulent Conveyances, 19 Stan. L.Rev. 636, 639 (1967) ("In a suit for damages resulting from a fraudulent conveyance three classes of potential defendants are available: the debtor transferor, the transferee with knowledge of the fraud, and assisting third parties."); Perkins v. Becker's Conservatories, 318 Mass. 407, 61 N.E.2d 833, 836 (1945) (concerning "a conveyance in actual fraud ... without regard to the nature or amount of consideration"). Cheswell, Inc. v. Premier Homes and Land Corp., 319 F. Supp. 2d 135 - Dist. Court, D. Massachusetts 2004.

However, here, there is no evidence of such conscious participation in fraud or any other indicial of fraud on my part. As a matter of fact, I invested in the TelexFree company with the strong belief (based on the documents that were showed to me) that it was a sound Multi-Level Marketing network.

As you can see from my affidavit (see attachment __3__), my belief in the stability of the company was so vigorous, that I invested almost all the money that I received back in it. I used the money to buy more credits, and later I used the unredeemed credits to buy even more credits from the company.

For having invested almost all the money received back in the company with the belief that it was a lawful and solvent company, I should not be considered a class representative for the defendants, but as one of the injured creditors of this company.

**Paragraph 41:** I deny it. As stated above, by aggregating all the participants that have "received more money than paid to the Debtor" in only one class of defendants, you are doomed to having not only inconsistent judgments, but also compelling unfairness. This is because you are failing to consider the ones that, like myself, invested the money back in the company with the belief (fully supported by the incorporators) that this was a sound company that would "last forever",

as Carlos Wanzeler asserted during one of the events for the company participants. (See attachment _1_ ).

**Paragraph 42**: I deny it. As you can see from my affidavit (see attachment _3_ ), when Carlos Wanzeler invited me to be part of TelexFree, he showed me that it was registered with the Secretary of State (see attachment _1_ ) and that it was Certified by the Federal Communications Commission to resell switched and private line services of authorized U.S. carriers for the provision of international service (see attachment _4_ ), as well as other documents proving that TelexFree was legally authorized to operate within the United States.

Carlos Wanzeler explained to me that TelexFree would be in charge of marketing the services of VOIP, an international phone service that he owned along with "Disk A Vontade", another international phone service with whom I had worked as a salesperson in the past.

The first month after the services began to operate in Massachusetts, I went on YouTube and watched tutorials about how to post the VOIP advertisements through TelexFree on websites that would not charge for the posting. Soon I started to notice that the more advertisements I posted, the more money I made.

Carlos Wanzeler then told me that if I recruited more people to advertise the VOIP products, I would received 10% of how much they made with their advertisements.

I started telling some of my friends about this company that was paying me to announce their services on websites, and that everything was really simple. In the total, I recruited 24 friends.

After you recruited your friends, you had no control over the people that they recruited. Some recruited dozens and others recruited hundreds of people. I recruited 24, namely: (1) Nelio Morelli, (2) Dalva Siqueira, (3) Nilson Machado, (4) Hugo Alvarado, (5) Edson Souza, (6) Edmar Fogaça, (7) Alan Takabata, (8) Romulo Zarour, (9) Washington Conceição, (10) Tadeu

Passos, (11) Adriana Alonso, (12) Ricardo Gomes, (13) Izabella Louise, (14) Paulo Machado, (15) Jamilson Conceição, (16) Junior Nascimento, (17) Antonio Raab, (18) Antonio Muniz, (19) Carlos Pessoni, (20) Jose Casino, (21) Francisco Leoncio, (22) Hervey Afiune, (23) Marcos Nobrega, (24) Marcos Thies.

After recruiting the 24 friends, I stopped recruiting and would help them manage their accounts and teach them how to post the VOIP advertisements online, for I would receive 10% of their productions. After three months working for TelexFree, all of them received their investment in the company back. However, of the people that they recruited, I had no responsibility whatsoever.

Therefore, concerning myself and the 24 people that I recruited, we received our initial investments back by actively advertising the VoIP services.

**Paragraph 47:** I do not have enough information, and therefore, deny.

**Paragraph 48:** I deny it. To be an advertisement agent for VOIP through TelexFree, the person herself had to create an online account, enter her information, her bank account information, and pay $1,375 plus $50 with a credit card to be considered a Partner of the business and receive 50 VOIP shares.

**Paragraph 49:** I admit it.

**Paragraph 50:** I deny it. Every "partnership share" of $1,375 would give you back $100 weekly through the shares that TelexFree would buy back from you every week in case none of your advertisements were sold through no fault of your own. So people started to realize that the more "partnership shares" they bought, the more money they would make when TelexFree bought their shares back weekly.

Also, you would get $100 (one time payment) for each binary formed by people recruited under you up to the 6th level. Therefore, people started to buy more "partnership shares" under themselves to get the extra $100.

The TelexFree company said that we could buy as many shares as we wanted to, and I would buy "partnership shares" under my own name and IT number, and state them on my IRS tax returns.

**Paragraph 51:** I deny it. After the payment, the person would have to post VOIP advertisements uninterruptedly for a week on various websites. If she did so, she would receive $100 that week. If she forgot to post advertisements for one day, she would receive nothing that week. If you posted VOIP advertisements uninterruptedly for one week and no VOIP sales resulted through no fault of your own, TelexFree would buy back your 50 VOIP shares for $100 and credit this amount on your account ("back office" as we called it).

Every Tuesday, you could log into your account and withdrawal the money that was accumulated concerning the shares the TelexFree had bought back from you that week. The e-wallet system would then deposit this amount directly on your bank account.

**Paragraph 52:** I admit it.

**Paragraph 53:** I deny it. As informed above, to be an advertisement agent for VOIP through TelexFree, the person herself had to create an online account, enter her information, her bank account information, and pay $1,375 plus $50 with a credit card to be considered a Partner of the business and receive 50 VOIP shares. After a while, TelexFree would accept payment with Paypal. Then, TelexFree started to require the person to go to the TelexFree headquarters in Marlborough personally with a Money Order or Cashier Check.

In March 2014 at the International Love Event in Boston (ON YOUTUBE), TelexFree announced that it would be launching its own credit card, and people could no longer use money order or cashier's check to buy more "partnership shares", but solely the "TelexFree Card".

While waiting for the "TelexFree Card" to be launched, instead of withdrawing the money (the e-Wallet service had stopped working), they would use their account balance to buy more "partnership shares". I did the same: after I realized that it would be more profitable to reinvest in the company using my account balance and that I had no means to withdraw my unredeemed credits, I used my account balance to buy more "partnership shares" under my name, as this option was available at the user account.

**Paragraph 54:** I deny it. From the 24 people that I recruited, they all paid directly to TelexFree, as I have stated above.

**Paragraph 55:** I do not have enough information, and therefore, deny.

**Paragraph 56:** I deny it. Once again, the people recruited by me would pay directly to TelexFree.

**Paragraph 57:** I deny it.

**Paragraph 58:** I do not have enough information, and therefore, deny.

**Paragraph 59:** I deny it.

**Paragraph 60:** I deny it. In accordance with what was said on the previous paragraphs, the determination of "Net Winner" should not be based on "related user accounts". It should be based on: 1) Whether the money was received with knowledge about the unlawful situation and insolvency of the Debtor; 2) Whether the money received was reinvested in the company. This is

because, if the money received was reinvested in the TelexFree company, the so-called "Net Winners" are actually creditors of such company.

For instance, in In Re Financial Resources Mortg. Inc, the investors defrauded by CLM and/or FRM held an equitable interest and constructive trust in the assets which were transferred by CLM to the Defendants in the form of False Prepaid Interest and/or False Interest. *In re Financial Resources Mortg., Inc.*, 454 BR 6 - Bankr. Court, D. New Hampshire 2011.

**Paragraph 61:** I deny it.

**Paragraph 62:** I do not have enough information, and therefore, deny.

**Paragraph 63:** I deny it. The so-called "net winner payments" do no constitute a transfer. This is because, for it to be a fraudulent transfer, the Debtor would have to be transferring an interest in his property, which is not the case. Here, the Debtor was transferring property/money from other investors.

For instance, in the In Re Financial Resources Mortg. Inc, the Court found that "[a]ccording to the Migliaccios, the funds in CLM's accounts, which were ultimately transferred to third party borrowers or paid back to the Migliaccios in the form of False Prepaid Interest, False Interest, or a return of monies on account of the Jakobola Loan that never closed, consisted of monies from other investors and therefore was not property of the Debtors and therefore it was never the Debtors' "property" within the meaning of the Bankruptcy Code, and thus the Trustee cannot avoid the transfers as fraudulent pursuant to § 548 or RSA 545-A. See Hanley v. Notinger (In re Charlie's Quality Carpentry, LLC), 2003 BNH 025, 11". *In re Financial Resources Mortg., Inc.*, 454 BR 6 - Bankr. Court, D. New Hampshire 2011.

**Paragraph 64:** According to the Chapter 109A § 3, fair consideration is given for property or obligation (a) When in exchange for such property or obligation, as a fair equivalent therefore,

and in good faith, property is conveyed or an antecedent debt is satisfied or (b) When such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained. 835 F.2d 1504 (1987) United States Court of Appeals, First Circuit.

As you can see in <u>Mayors v. Commissioner of Internal Revenue,</u> "[a] court might also use the notion of "good faith" in ambiguous circumstances to help determine whether an exchange is for a "fair equivalent." Suppose, for example, an insolvent debtor, D, transfers property valued at $100,000 to C, one of his creditors, to satisfy an antecedent debt of $80,000. Depending on how narrowly one interprets "fair equivalent," such a transaction might be questionable, for it might be viewed as conveying $20,000 ($100,000 less $80,000) without equivalent value, at least if one looks at the transaction with benefit of hindsight. Compare Hopkins v. Tinklepaugh, 139 Misc. 127, 247 N.Y.Supp. 486 (1931) ($20,115 not a fair equivalent for property worth $23,000) with Zellerbach Paper Company v. Valley National Bank, 13 Ariz. App. 431, 477 P.2d 550 (1970) (any valuable consideration is a "fair equivalent" unless it is so unequal as to "startle a correct mind or shock the moral sense"). In such circumstances, C's 'state of mind,' his subjective appreciation of the situation, his 'good faith,' might help a court determine whether the exchange was a fair one, i.e., how it should be viewed without hindsight. See Mayors v. Commissioner of Internal Revenue, 785 F.2d 757, 760-61 (9th Cir.1986) (finding "good faith" where transferee honestly believed she had given a fair equivalent regardless of whether the contract was legally binding); 1 G. Glenn, supra, § 296 (arguing that the test is whether "the parties traded as persons might normally be expected to do"); cf. Tacoma Association of Credit Men v. Lester, 72 Wash.2d 453, 458, 433 P.2d 901, 904 (1967) (outlining a three-part test for good faith, the first part of which is whether the transferee honestly believes in the fairness of the deal)".

Therefore, the notion of "less than fair consideration" must take into account the specificity of each case and circumstance, as well as it must consider the "good faith" of the transferee. In this case, I honestly believed that the money received by me from TelexFree was in complete accordance with the laws. For such reason, I declared it as my income to the IRS, and never

thought about leaving the country out of fear of prosecution, as so many other did. Also, I did not believe it to be "for less than fair consideration" because I had received it from posting an incredible amount of VOIP advertisements daily, as contracted with TelexFree.

**Paragraph 65:** I do not have enough information, and therefore, deny.

**Paragraph 66:** I deny it. Mass.Gen.Laws ch. 109A, § 4 (1986) asserts about 'constructive fraud' that every conveyance made by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made ... without a fair consideration.

Also, "[t]he cases and the commentators also state that fraudulent conveyance law does not seek to void transfers in a circumstance known as a "preference." Suppose a debtor owes A $10,000 and B $20,000. He has only $8000, which he uses to satisfy his debt to A. This conveyance may be unfair to B, but it is not a 'fraudulent conveyance' because it satisfies a debt owed to a person who is, at least, a legitimate creditor. G. Glenn, supra, § 289 quoting In Re Johnson, 20 Ch. D. 389 (1881)".

Here, the transfers cannot be considered as "fraudulent" because they were in exchange for my work with the VOIP advertisements, which at least seemed to be fair consideration in exchange for my long hours of labor; and also because TelexFree was satisfying her debt with me, as a legitimate creditor as any other person that invested in TelexFree, regardless of whether, in the end, they received more money than paid or not.

This is because "[t]he basic object of fraudulent conveyance law is to see that the debtor uses his limited assets to satisfy some of his creditors; it normally does not try to choose among them. See, e.g., Goldstein v. Columbia Diamond Ring Co., Inc., 366 Mass. 835, 323 N.E.2d 344 (1975); Fraudulent conveyance law is basically concerned with transfers that "hinder, delay or defraud" creditors; it is not ordinarily concerned with how such debts were created. Banca

Italiana Di Sconto v. Bailey, 260 Mass. 151, 157 N.E. 40 (1927); Banfield v. Whipple, 96 Mass. 13 (1867); Smith v. Whitman, 39 N.J. 397, 189 A.2d 15 (1963); Skinner v. Overend, 190 Minn. 456, 252 N.W. 418 (1934); Old Kent Bank v. Royce, 264 Mich. 242, 249 N.W. 838 (1933); Merchants' Bank v. Page, 147 Md. 607, 128 A. 272 (1925); Clark, supra, at 513-16; 1 G. Glenn, supra, § 289."

**Paragraph 67:** I deny it. In addition to what was said by me in the previous paragraphs, the Trustee is not entitled to a judgment against the Defendants and each member of the so-called "Net Winner Class" under the doctrine of *in pari delicto*. As the other investors, I was a creditor of TelexFree. I invested not only the money that I have received, but also all of my savings in this business that was claimed to be so vigorous. It means that, a judgment against myself, in favor of the other investors that entered this business venture with the same frame of mind and expectations that I did would be at least "*in pari delicto*".

"*In pari delicto* is both an affirmative defense and an equitable defense. Broadly speaking, the doctrine prohibits plaintiffs from recovering damages resulting from their own wrongdoing." Nisselson v. Lernout, 469 F.3d 143, 151 (1st Cir.2006), cert. denied, 550 U.S. 918, 127 S.Ct. 2131, 167 L.Ed.2d 863 (2007). The doctrine is grounded on two principles. First, where the plaintiff and the defendant are both responsible for wrongful actions, courts should not resolve disputes between them arising from the wrongdoing. Id. Second, denying relief to an admitted wrongdoer is an effective means of deterring illegality. Id. The *in pari delicto* defense is available to defendants in an action brought by a bankruptcy trustee whenever that defense would have been available by the debtor. Id. at 153. "After all, a trustee in bankruptcy cannot and does not acquire rights or interests superior to, or greater than, those possessed by the debtor." Id. In re Financial Resources Mortg., Inc., 454 BR 6 - Bankr. Court, D. New Hampshire 2011.

**Paragraph 68:** I deny it.

**Paragraph 69:** I do not have enough information, and therefore, deny.

**Paragraph 70:** I do not have enough information, and therefore, deny.

**Paragraph 71:** I deny that there was any intent to hinder, delay or defraud the other creditors. As I have previously asserted, [a]fter recruiting the 24 friends, I stopped recruiting and would help them manage their accounts and teach them how to post the VOIP advertisements online, for I would receive 10% of their productions. After three months working for TelexFree, all of them received their investment in the company back.

**Paragraph 72:** I deny it. The Trustee has failed to plead fraud with the specificity required, hence it should be dismissed. For example, in In Re Financial Resources Mortg. Inc, "[t]he Migliaccios contend that the Complaint fails to plead facts from which the Court may reasonably conclude that the Debtors made the alleged transfers with "actual intent to hinder, delay, or defraud" creditors, a requirement under both § 548(a)(1)(A) and RSA 545-A:4(I)(a). They undertake an analysis of the "badges of fraud" alleged by the Trustee and conclude that the Trustee's failure to allege a larger number of badges warrants a finding that the Complaint does not plead fraud with the specificity required and thus should result in dismissal of Counts II and III. The Migliaccios contend that the Trustee has failed to plead the requisite actual intent or, alternatively, badges of fraud on the part of CLM to hinder, delay, or defraud creditors through the specific transfers outlined in the Complaint." *In re Financial Resources Mortg., Inc.*, 454 BR 6 - Bankr. Court, D. New Hampshire 2011.

The same is also true here. There was no intent to hinder, delay or defraud relating to the transfers made to me, for what I was truly working as a VOIP advertisement agent besides having invested all of my money back in the TelexFree company.

**Paragraph 73:** As asserted above, the Trustee has failed to prove the intent to hinder, delay or defraud, allowing the Count Three to be dismissed.

**Paragraph 74:** I deny it.

**Paragraph 75:** I do not have enough information, and therefore, deny.

**Paragraph 76:** I do not have enough information, and therefore, deny.

**Paragraph 77:** I deny it. As I explained above, while waiting for the "TelexFree Card" to be launched, instead of withdrawing the money (the e-Wallet service stopped working), they would use their account balance to buy more "partnership shares". I did the same: after I realized that it would be more profitable to reinvest in the company using my account balance and that I had no means to withdraw the amount showing on my balance, I used my account balance to buy more "partnership shares" under my name, as this option was available at the user account.

Three months later, I typed (www.telexfree.com) on my browser, and the website showed a message stating that the company was in Bankruptcy proceedings. I called Carlos Wanzeler and he would tell me that it was a misunderstanding, that the company would be back and strong soon, that everything was fine.

Even so, we were locked out of our accounts, and all the balance that had been accumulated in the last three months. That was when I started to notice that there was something wrong.

Therefore, many months before the actual notice about the Bankruptcy proceedings there was no money involved with the transactions. It was just people using their own shares to buy more shares. This "Net Preference Payments" never existed.

**Paragraph 78:** I deny it. As explained, such "Net Preference Payments" never existed. The transactions consisted solely in using unredeemed credits to buy more credits.

**Paragraph 79:** I deny it.

**Paragraph 80:** I deny it considering all that I was stated in this Answer.

**Paragraph 81:** In accordance with what was said on the previous paragraphs, the determination of "Net Winner" should not be based on "related user accounts". It should be based on: 1) Whether the money was received with knowledge about the unlawful situation and insolvency of the Debtor; 2) Whether the money received was reinvested in the company. This is because, if the money received was reinvested in the TelexFree company, the so-called "Net Winners" are actually creditors of such company.

**Paragraph 82:** I deny it and hereby submit my objection to such classification.

**Paragraph 83:** I admit and agree that this Court should be responsible for determining a more suitable classification for monetary liability, especially considering that of the money that I have received from TelexFree, everything is stated on my IRS tax returns (see attachment $\mathcal{2}$ ). Everything else never left the system. It was all account balance that was used to my more "partnership shares" that were then turned into more account balance and so on. From what I have received and declared to the government, I used most of it to buy more "partnership shares" of the TelexFree company, and the rest was spent with family and daily expenses. Now, I still pay rent to live.

**Paragraph 84:** I deny it.

**Paragraph 85:** I deny it.

**Paragraph 86:** I deny it.

**WHEREFORE,** Jose Arantes Neto as he is one of the Defendants, respectfully prays that the Court enter judgment for him against the Trustee as follows:

1. On Count One, deny the methodology proposed by the Trustee to determine the Net Winners.

2. On Count Two, recognize the nonexistence of a constructive fraudulent transfer concerning this Defendant.

3. On Count Three, recognize the nonexistence of an actual fraudulent transfer concerning this Defendant.

4. On Count Four, recognize the nonexistence of payment preference concerning this Defendant.

5. On Court Five, the Court should create its own procedure to determine the monetary judgment.

6. On Count Six, dismiss the Trustee's claim.

7. And for such other and further relief as this Court deems just and proper.

JOSE ARANTES NETO

Self-Represented Defendant,

49 Rodney Street
Worcester, Massachusetts 01605
(774) 696-8420

Dated: February 11, 2016

# ATTACHMENT 1



# The Commonwealth of Massachusetts
## William Francis Galvin

Secretary of the Commonwealth, Corporations Division
One Ashburton Place, 17th floor
Boston, MA 02108-1512
Telephone: (617) 727-9640

**Public Browse and Search - Entity Results**

**2 Records Matched Your Begins With Search for Entity Name: telexfree**     (Page 1 of 1)

| Entity Name | Identification Number | Old Identification Number | Principal Office Address, City, State, Zip, Country |
|---|---|---|---|
| TELEXFREE LLC | 001105166 | | 4705 S. DURANGE DR., #100-J51, LAS VEGAS, NV 89147 USA |
| TELEXFREE, INC. | 000832397 | | 225 CEDAR HILL ST SUITE 200, MARLBOROUGH, MA 01752 USA |

New Search

© 2001 - 2013 Commonwealth of Massachusetts
All Rights Reserved

BEFORE THE
FEDERAL COMMUNICATIONS COMMISSION
WASHINGTON, D.C.

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| TELEXFREE, INC. | ) | |
| | ) | |
| Application Pursuant to Section 214 of the | ) | File No._____ |
| Communications Act of 1934, as amended, for | ) | |
| Global Authority to Resell Switched and Private | ) | |
| Line Services of Authorized U.S. Carriers for the | ) | |
| Provision of International Service to all | ) | |
| Permissible International Points | ) | |
| | ) | |
| | ) | |

## APPLICATION FOR SECTION 214 CERTIFICATION

TELEXFREE, INC. ("Applicant" or "TELEXFREE") hereby requests authority, pursuant

to Section 214 of the Communications Act of 1934, as amended, ("the Act"), 47 U.S.C. § 214

and § 63.18 *et seq.* of the rules and regulations of the Federal Communications Commission

("Commission"), to acquire and operate facilities of all U.S. common carriers and non-common

carriers previously and subsequently authorized by the Commission, including any necessary

foreign connecting facilities, for the purpose of providing telecommunications services between

the United States and all foreign points permitted by the Commission.  Applicant further requests

authority to resell the international switched services and private-line services of authorized U.S.

common carriers for the provision of international service to all permissible international points

deemed by the Commission to afford equivalent resale opportunities to U.S. carriers.  Applicant

resells only in accordance with the Commission's rules and regulations applicable thereto,

particularly §§ 63.18(e)(1) and (2).

Pursuant to § 63.18 of the Commission's rules, 47 C.F.R. § 63.18, Applicant submits the following information in support of its Application for authority:

1.    § 63.18(a).    The name, address, telephone number and facsimile number of the Applicant are:

Corporate Office
TELEXFREE, INC.
225 Cedar Hill Street
Suite 200
Marlboro, Massachusetts 01752
Phone:        508-889-8888
Fax:          508-630-2313

Regulatory Office:
4274 Enfield Court, Suite 1600
Palm Harbor, Florida 34685
Phone:        727-738-5553
Fax:          727-939-2672
E-mail:       isaacs@isg-telecom.com

2.    § 63.18(b).    The Applicant was incorporated under the laws of the Commonwealth of Massachusetts on December 31, 2002.

3.    § 63.18(c).    Correspondence concerning this Application should be addressed to:

Joseph Isaacs
% ISG-Telecom Consultants
4274 Enfield Court, Suite 1600
Palm Harbor, Florida 34685
Phone:        727-738-5553
Fax:          727-939-2672

4.   § 63.18(d).   The Applicant has not previously received authority under Section 214 of the Act.

5.   § 63.18(e)(1) through (5).   Applicant requests authority to operate as a resale and facility based international carrier, pursuant to Section 214 of the Act and the Commission's Foreign Carrier Entry Order[1].  Applicant further requests authority pursuant to Section 214 of the Act to resell the international switched and private line services of authorized U.S. common carriers for the provision of international switched and basic private line services to all permissible international points deemed by the Commission to afford equivalent resale opportunities to U.S. carriers.

6.   § 63.18(f).   This Application is subject to the Commission's streamlined processing rules.  The Applicant is a non-dominant carrier which qualifies for non-dominant regulation pursuant to § 63.12, 47 C.F.R. § 63.12, as it is not affiliated with a foreign carrier within the meaning of § 63.18(h)(1)(i) in a destination market for its resale or resold services as set forth below.

7.   § 63.18(g).   Not applicable.

8.   § 63.18(h)(1) and (3).  By its executed certification attached hereto, Applicant hereby certifies that:  it has no affiliation with foreign carriers, as defined in §§ 63.18(h)(1)(i) and (ii) of the Commission's Rules.

---

[1]   In the Matter of Market Entry and Regulation of Foreign-Affiliated Entities ("Report and Order"),

the services for which it requests authority. For the reasons stated above, Applicant submits that the public interest, convenience and necessity would be furthered by a grant of this Section 214 Application.

WHEREFORE, TELEXFREE, INC. respectfully requests that the Commission issue the requested Section 214 authorization for the purpose of providing global resale and facility based telecommunications services, resold and facility based international switched and private-line services of authorized U.S. common carriers for the provision of international service to all permissible international points deemed by the Commission to afford equivalent resale opportunities to U.S. carriers.

Respectfully submitted, this 23rd day of August, 2013.

For:   TELEXFREE, INC.

By:   /s/ Carlos Wanzeler, Director

## CERTIFICATION OF APPLICANT

I hereby certify that the statements in the foregoing Application for Section 214 authority are true, complete and correct to the best of my knowledge, information and belief and are made in good faith. I hereby certify that TELEXFREE, INC. ("TELEXFREE") is not affiliated with any foreign carrier and is not affiliated with any resale carrier whose services "TELEXFREE" intends to resell. I hereby certify that "TELEXFREE" will not accept special concessions directly or indirectly from any foreign carrier or administration with respect to traffic or revenue flows between the U.S. and any foreign country which "TELEXFREE" may serve under the authority granted under this part. I also hereby certify that no party to the foregoing Application is subject to denial of federal benefits pursuant to Section 5301 of the Anti-Drug Abuse Act on 1988, 21 U.S.C. § 853a.

Dated this 23rd day of August, 2013

For:    TELEXFREE, INC.

By:    _____

Carlos Wanzeler, Director

Subscribed and sworn to before me this 23RD day of August , 2013.

Notary Public in and for the State of Massachusetts

_____
Notary Signature

PAUL F. McGRATH
NOTARY PUBLIC
Commonwealth of Massachusetts
My Commission Expires on
December 1, 2017

10/11 2013 12:17 FAX                                                    @004/004

# Stacey Fisher

**From:**     Dileo, Anthony (SEC) <anthony.dileo@state.ma.us>

**Sent:**     Monday, November 18, 2013 6:04 AM

**To:**       'STACEY@BRIDGEWAYCORP.COM'

**Subject:**  TELEXFREE LLC  812-641-0115

Your certificate of amendment was rejected for the following reason.

Date: 11/15/2013 12:24:00 PM

MA SOC   Filing Number: 201356347670



Minimum Fee: $100.00

# The Commonwealth of Massachusetts
## William Francis Galvin

Secretary of the Commonwealth, Corporations Division
One Ashburton Place, 17th floor
Boston, MA 02108-1512
Telephone: (617) 727-9640

Special Filing Instructions

## Annual Report
(General Laws, Chapter 156D, Section 16.22; 950 CMR 113.57)

Federal Employer Identification Number: __000832397__ *(must be 9 digits)*

1. Exact name of the corporation: __TELEXFREE, INC.__

2. Jurisdiction of Incorporation:   State: __MA__   Country:

3,4. Street address of the corporation registered office in the commonwealth and the name of the registered agent at that office:

Name: __JAMES MERRILL__
No. and Street: __225 CEDAR HILL ST SUITE 200__   State: __MA__   Zip: __01752__   Country: __USA__
City or Town: __MARLBOROUGH__

5. Street address of the corporation's principal office:
No. and Street: __225 CEDAR HILL ST SUITE 200__   State: __MA__   Zip: __01752__   Country: __USA__
City or Town: __MARLBOROUGH__

6. Provide the name and addresses of the corporation's board of directors and its president, treasurer, secretary, and if different, its chief executive officer and chief financial officer.

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code |
|---|---|---|
| PRESIDENT | JAMES MERRILL | 4705 S DURANDO DR # 100 - J51<br>LAS VEGAS, NV 89147 USA |
| TREASURER | CARLOS WANZELER | 4705 S DURANDO DR # 100 - J51<br>LAS VEGAS, NV 89147 USA |
| SECRETARY | JAMES MERRILL | 4705 S DURANDO DR # 100 - J51<br>LAS VEGAS, NV 89147 USA |
| DIRECTOR | JAMES MERRILL | 4705 S DURANDO DR # 100 - J51<br>LAS VEGAS, NV 89147 USA |
| DIRECTOR | CARLOS WANZELER | 4705 S DURANDO DR # 100<br>LAS VEGAS, NV 89147 USA |

7. Briefly describe the business of the corporation:

__SALES OF COMMUNICATION SERVICES__

8. Capital stock of each class and series:

| Par Value Per Share | Total Authorized by Articles | Total Issued |
|---|---|---|

9. Check here if the stock of the corporation is publicly traded: ___

10. Report is filed for fiscal year ending: 12/31/ 2013

Signed by   JAMES MERRILL , its   PRESIDENT
on this 15 Day of November, 2013

© 2001 - 2013 Commonwealth of Massachusetts
All Rights Reserved



**William Francis Galvin**
Secretary of the Commonwealth of Massachusetts



# Corporations Division

## Business Entity Summary

### ID Number: 001105166

Request certificate    New search

#### Summary for: TELEXFREE LLC

| | |
|---|---|
| **The exact name of the Foreign Limited Liability Company (LLC):** | TELEXFREE LLC |

**Entity type:** Foreign Limited Liability Company (LLC)

**Identification Number:** 001105166          **Old ID Number:**

**Date of Registration in Massachusetts:**
04-18-2013

**Last date certain:**

**Organized under the laws of: State:** NV **Country:** USA **on:** 07-19-2012

**The location of the Principal Office:**

Address: 4705 S. DURANGO DR., #100-J51

City or town, State, Zip code, Country:          LAS VEGAS,  NV  89147  USA

**The location of the Massachusetts office, if any:**

Address: 225 CEDAR HILL ST., STE 200

City or town, State, Zip code, Country:          MARLBOROUGH,  MA  01742  USA

**The name and address of the Resident Agent:**

Name:  JAMES M. MERRILL

Address: 225 CEDAR HILL ST., SUITE 200

City or town, State, Zip code, Country:          MARLBOROUGH,  MA  01742  USA

**The name and business address of each Manager:**

| Title | Individual name | Address |
|---|---|---|
| MANAGER | CARLOS COSTA | 225 CEDAR HILL ST. STE. 200 MARLBOROUGH, MA 01742 USA |
| MANAGER | JAMES M. MERRILL | 225 CEDAR HILL ST. STE. 200 MARLBOROUGH, MA 01742 USA |
| MANAGER | CARLOS N. WANZELER | 225 CEDAR HILL ST. STE. 200 MARLBOROUGH, MA 01742 USA |

1/25/2016

**The name and business address of the person(s) authorized to execute, acknowledge, deliver, and record any recordable instrument purporting to affect an interest in real property:**

| Title | Individual name | Address |
|---|---|---|
| REAL PROPERTY | CARLOS COSTA | 225 CEDAR HILL ST. STE. 200 MARLBOROUGH, MA 01742 USA |
| REAL PROPERTY | JAMES M. MERRILL | 225 CEDAR HILL ST. STE. 200 MARLBOROUGH, MA 01742 USA |
| REAL PROPERTY | CARLOS WANZELER | 225 CEDAR HILL ST. STE. 200 MARLBOROUGH, MA 01742 USA |

|  | Confidential | Merger |  |
|---|---|---|---|
| Consent | Data | Allowed | Manufacturing |

**View filings for this business entity:**

ALL FILINGS
Annual Report
Annual Report - Professional
Application For Registration
Certificate of Amendment

View filings

**Comments or notes associated with this business entity:**

New search

  

**William Francis Galvin**
Secretary of the Commonwealth of Massachusetts

# Corporations Division

## Business Entity Summary

[ Request certificate ]    [ New search ]

### ID Number: 000832397

### Summary for: TELEXFREE, INC.

| | |
|---|---|
| **The exact name of the Domestic Profit Corporation:** | TELEXFREE, INC. |

**The name was changed from:** COMMON CENTS COMMUNICATIONS, INC. **on** 02-15-2012

**Entity type:** Domestic Profit Corporation

**Identification Number:** 000832397

**Date of Organization in Massachusetts:**
12-31-2002

**Last date certain:**

**Current Fiscal Month/Day:** 12/31

**The location of the Principal Office:**

Address: 225 CEDAR HILL ST SUITE 200

City or town, State, Zip code,     MARLBOROUGH,   MA   01752   USA
Country:

**The name and address of the Registered Agent:**

Name:   JAMES MERRILL

Address: 225 CEDAR HILL ST SUITE 200

City or town, State, Zip code,     MARLBOROUGH,   MA   01752   USA
Country:

**The Officers and Directors of the Corporation:**

| Title | Individual Name | Address |
|---|---|---|
| PRESIDENT | JAMES MERRILL | 4705 S DURANDO DR # 100 - J51 LAS VEGAS, NV 89147 USA |
| TREASURER | CARLOS WANZELER | 4705 S DURANDO DR # 100 - J51 LAS VEGAS, NV 89147 USA |
| SECRETARY | JAMES MERRILL | 4705 S DURANDO DR # 100 - J51 LAS VEGAS, NV 89147 USA |
| DIRECTOR | JAMES MERRILL | 4705 S DURANDO DR # 100 - J51 LAS VEGAS, NV 89147 USA |
| DIRECTOR | CARLOS WANZELER | 4705 S DURANDO DR # 100 LAS VEGAS, |

THE COMMONWEALTH OF MASSACHUSETTS

I hereby certify that, upon examination of this document, duly submitted to me, it appears

that the provisions of the General Laws relative to corporations have been complied with,

and I hereby approve said articles; and the filing fee having been paid, said articles are

deemed to have been filed with me on:

November 15, 2013 05:00 PM

WILLIAM FRANCIS GALVIN

*Secretary of the Commonwealth*

(8) The name and business address of each person authorized to execute, acknowledge, deliver and record any recordable instrument purporting to affect an interest in real property recorded with a registry of deeds or district office of the land court:

| NAME | ADDRESS |
|------|---------|
| Carlos Costa | Av Hugo Musso, 2042 Condominio Cote Azzur Ed: Cannes Apt 404 Vitoria, ES, CEP 29101936, Brazil |
| Carlos Wanzeler | 41 A Mount Ave Worcester, MA 01606 |
| James M. Merrill | 1 Coburn Dr Ashland, MA 01606 |

(9) The name and street address of the resident agent in the Commonwealth:

| James M. Merrill | 1 Coburn Dr Ashland, MA 01606 |

(10) The latest date of dissolution, if specified: **perpetual**

(11) Additional matters:

Signed by (*by at least one authorized signatory*):

I, _____ resident agent of the above limited liability company, consent to my appointment as resident agent pursuant to G.L. c156C § 48 (or attach resident agent's consent hereto).

\* *Attach a certificate of existence or good standing issued by an officer or agency properly authorized in home state.*

☑003/004

7. the amendment to the certificate.

*Changing the Address of each of the Managers for this entity as follows below:*

*Carlos Costa*
*225 Cedar Hill Street, Ste 200*
*Marlborough, MA  01742*

*Carlos Wanzeler*
*225 Cedar Hill Street, Ste 200*
*Marlborough, MA  01742*

*James M. Merrill*
*225 Cedar Hill Street, Ste 200*
*Marlborough, MA  01742*

Signed by authorized officer: _____ *James Merrill* _____     Date: 11/19/13
Printed Name:  James M. Merrill

## Certificate of Amendment for

## TELEXFREE LLC

1. the federal employer identification number; 46-0650853

2. the name of the limited liability company; TELEXFREE LLC

3. the date of filing of the original certificate; July 19, 2013

4. the name and business address, if different from its office location, of each manager;

Carlos Costa
AV Hugo Musso, 2042 condomino Cote
Azzur, Vitoria, ES CEP 29101936 Brazil

Carlos Wanzeler
41 A Mount Ave
Worchester, MA 01606

James Merrill
1 Coburn Dr
Ashland, MA 01721

5. the name and business address, if different from the office location, of each person authorized to execute documents to be filed with the Corporations Division, and at least one person shall be named if there are no managers;

Carlos Costa
225 Cedar Hill Street, Ste 200
Marlborough, MA 01742

Carlos Wanzeler
225 Cedar Hill Street, Ste 200
Marlborough, MA 01742 .

James Merrill
225 Cedar Hill Street, Ste 200
Marlborough, MA 01742

6. the name and business address, if different from the office location, of each person authorized to execute, acknowledge, deliver and record any recordable instrument purporting to affect an interest in real property whether to be filed with the registry of deeds or a district office of the land court, if any; and

Carlos Costa
225 Cedar Hill Street, Ste 200
Marlborough, MA 01742

Carlos Wanzeler
225 Cedar Hill Street, Ste 200
Marlborough, MA 01742

James Merrill
225 Cedar Hill Street, Ste 200
Marlborough, MA 01742

MA SOC   Filing Number: 201334236260   Date: 4/18/2013 2:34:00 PM
04/18/2013 13:31 FAX                                                      ☑003

# The Commonwealth of Massachusetts

**William Francis Galvin**
Secretary of the Commonwealth
One Ashburton Place, Room 1717, Boston, Massachusetts 02108-1512

## Foreign Limited Liability Company
## Application for Registration
### (General Laws Chapter 156C, Section 48)

Federal Identification No.: **46-0650853**

(1a) The exact name of the limited liability company:

**TELEXFREE LLC**

(1b) If different, the name under which it proposes to do business in the Commonwealth of Massachusetts:

(2) The jurisdiction* where the limited liability company was organized:

**Nevada**

(3) The date of organization in that jurisdiction: **July 19, 2012**

(4) The general character of the business the limited liability company proposes to do in the Commonwealth:

**Direct Selling**

(5) The business address of its principal office:

4705 S Durango Dr #100-J51
Las Vegas, NV  89147

(6) The business address of its principal office in the Commonwealth, if any:

225 Cedar Hill Street, Suite 200
Marlborough, MA  01752

(7) The name and business address, if different from principal office location, of each manager:

Carlos Costa
Av Hugo Musso, 2042 condominio Cote
Azzur, Vitoria, ES CEP 29101936 Brazil

Carlos N Wanzeler
41 A Mount Ave
Worcester, MA  01606

James M Merrill
1 Coburn Dr
Ashland, MA  01721

# DF The Commonwealth of Massachusetts

### William Francis Galvin
Secretary of the Commonwealth
One Ashburton Place, Room 1717, Boston, Massachusetts 02108-1512

## Limited Liability Company
## Statement of Change of
## Resident Agent/Resident Office
### (General Laws Chapter 156C Section 5A and Section 51)

(1) Exact name of limited liability company:

**TELEXFREE LLC**

(2) Current resident agent office address:

1 COBURN DR
ASHLAND, MA 01606

(3) New resident agent office address:

225 CEDAR HILL ST., STE 200
MARLBOROUGH, MA 01742

Current resident agent:   **JAMES M. MERRILL**

Resident agent will *(check appropriate box)*:

☐ change to _____
*(name of new resident agent)*

☒ remain the same.

This certificate is effective at the time and on the date approved by the Division.

Signed by *(signature of authorized person)*:   *James Merrill*

on this __11th__ day of __November__, __2013__

Consent of resident agent:

I, __James M Merrill__
resident agent of the above limited liability company, consent to my appointment as resident agent pursuant to G.L. Chapter
156C Section 5A and Section 51.

☑ 006

04/18/2013 13:32 FAX

LETTER OF CONSENT

I, James Merrill, hereby being the President of TelexFree, Inc, in the State of Massachusetts, give my permission to use the name TelexFree, LLC for my foreign filing request of my Nevada LLC, TelexFree, LLC.

Dated: 4/18/13

Printed: James M. Merrill

LETTER OF CONSENT

I, James Merrill, hereby being a Manager of TelexFree, LLC, which was incorporated in the State of Nevada give my permission to use the same name (TelexFree, LLC) in my filing in the state of Massachusetts.

Dated: 4/5/2013

Printed: James M. Merrill

MA SOC   Filing Number: 201334236260   Date: 4/18/2013 2:34:00 PM

# THE COMMONWEALTH OF MASSACHUSETTS

I hereby certify that, upon examination of this document, duly submitted to me, it appears

that the provisions of the General Laws relative to corporations have been complied with,

and I hereby approve said articles; and the filing fee having been paid, said articles are

deemed to have been filed with me on:

April 18, 2013 02:34 PM

WILLIAM FRANCIS GALVIN

*Secretary of the Commonwealth*

## THE COMMONWEALTH OF MASSACHUSETTS

I hereby certify that, upon examination of this document, duly submitted to me, it appears

that the provisions of the General Laws relative to corporations have been complied with,

and I hereby approve said articles; and the filing fee having been paid, said articles are

deemed to have been filed with me on:

November 19, 2013 01:18 PM

WILLIAM FRANCIS GALVIN

*Secretary of the Commonwealth*

04/18/2013 13:31 FAX                                                    ☑005



# SECRETARY OF STATE



STATE OF NEVADA

# CERTIFICATE OF EXISTENCE
# WITH STATUS IN GOOD STANDING

I, ROSS MILLER, the duly elected and qualified Nevada Secretary of State, do hereby certify that I am, by the laws of said State, the custodian of the records relating to filings by corporations, non-profit corporations, corporation soles, limited-liability companies, limited partnerships, limited-liability partnerships and business trusts pursuant to Title 7 of the Nevada Revised Statutes which are either presently in a status of good standing or were in good standing for a time period subsequent of 1976 and am the proper officer to execute this certificate.

I further certify that the records of the Nevada Secretary of State, at the date of this certificate, evidence, **TELEXFREE, LLC**, as a limited liability company duly organized under the laws of Nevada and existing under and by virtue of the laws of the State of Nevada since July 19, 2012, and is in good standing in this state.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Great Seal of State, at my office on April 5, 2013.

ROSS MILLER
Secretary of State

Electronic Certificate
Certificate Number: C20130405-1839
You may verify this electronic certificate
online at http://www.nvsos.gov/

**Business entity stock is publicly traded:**

**The total number of shares and the par value, if any, of each class of stock which this business entity is authorized to issue:**

| Class of Stock | Par value per share | Total Authorized | | Total issued and outstanding |
| --- | --- | --- | --- | --- |
| | | No. of shares | Total par value | No. of shares |
| CNP | $ 0.00 | 275,000 | $ 0.00 | 0 |

| | Consent | Confidential Data | Merger Allowed | Manufacturing |
| --- | --- | --- | --- | --- |

**View filings for this business entity:**

ALL FILINGS
Administrative Dissolution
Annual Report
Application For Revival
Articles of Amendment

[ View filings ]

**Comments or notes associated with this business entity:**

[ New search ]

# ATTACHMENT 2



**2013 Schedule C, pg. 2**
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 MA1301121024

| | | | |
|---|---|---|---|
| 18. | Rent or lease    a. vehicles, machinery and equipment | | |
| | b. other business property | a + b = | 18 |
| 19. | Repairs and maintenance | | 19 |
| 20. | Supplies | | 20 |
| 21. | Taxes and licenses | | 21 |
| 22. | Travel | | 22 |
| 23. | a. Total meals and entertainment | | |
| | b. Enter 50% of 23a subject to limitations | a - b = | 23 |
| 24. | Utilities | | 24 |
| 25. | Wages | | 25 |
| 26. | Other expenses    **Statement #2** | | 26    1150 |
| 27. | Total expenses. Add lines 6 through 26 | | 27    5410 |
| 28. | Tentative profit or loss. Subtract line 27 from line 5 | | 28    228835 |
| 29. | Expenses for business use of your home | | 29 |
| 30. | Abandoned Building Renovation Deduction | | 30 |
| 31. | Net profit or loss. Subtract total of line 29 and line 30 from line 28 | | 31    228835 |
| 32. | Is interest (other than from Massachusetts banks) or dividend income reported on U.S. Schedule C, lines 1 and/or 6 or Schedule C-EZ, line 1? | | |
| | Yes    X   No. If "yes," see instructions | | 32 |
| 33. | If you have a loss, you must check the statement that describes your investment in this activity. | | 33a. All investment at risk |
| | | | 33b. Some investment is not at risk |

## Schedule C-1.   Cost of Goods Sold and/or Operations

Method(s) used to value closing inventory:    X  Cost    Lower of cost or market    Other

Was there any change in determining quantities, costs or valuations between opening & closing inventory? If "yes," encl. explanation    Yes   X  No

| | | | |
|---|---|---|---|
| 1. | Inventory at beginning of year | | 1 |
| 2. | a. Purchases | | |
| | b. Items withdrawn for personal use | a - b = | 2 |
| 3. | Cost of labor | | 3 |
| 4. | Materials and supplies | | 4    1292050 |
| 5. | Other costs | | 5 |
| 6. | Add lines 1 through 5 | | 6    1292050 |
| 7. | Inventory at end of year | | 7 |
| 8. | Cost of goods sold and/or operations. Subtract line 7 from line 6 | | 8    1292050 |

08-22-2014 10:00:26



## 2013 Schedule C    MA1301111024

Massachusetts Profit or Loss From Business

JOSE ARANTES        NETO                                9443

INTERNET MARKETING                    541800
49 RODNEY STREET            WORCESTER              MA 01605

Accounting method:    X   Cash        Accrual        Other (specify)                          No. of employees

Did you materially participate in the operation of this business during 2013?        Yes   X   No

Did you claim the small business exemption from the sales tax on purchase of taxable energy or heating fuel during 2013?        Yes      No   X

Exclude interest (other than from Massachusetts banks) and dividends from lines 1 and 4 and enter the result in line 32 and in Schedule B, line 3

Caution:  If this income was reported to you on Form W-2 and the "statutory employee" box on that form was checked, fill in here:

| | | | | |
|---|---|---|---|---|
| 1. | a. Gross receipts or sales | 1526295 | | |
| | b. Returns and allowances | | a - b =  1 | 1526295 |
| 2. | Cost of goods sold and/or operations | | 2 | 1292050 |
| 3. | Gross profit. Subtract line 2 from line 1 | | 3 | 234245 |
| 4. | Other income | | 4 | |
| 5. | Total income. Add line 3 and line 4 | | 5 | 234245 |
| 6. | Advertising | | 6 | |
| 7. | Bad debts from sales or services | | 7 | |
| 8. | Car and truck expenses | | 8 | |
| 9. | Commissions and fees | | 9 | |
| 10. | Depletion | | 10 | |
| 11. | Depreciation and Section 179 deduction | | 11 | |
| 12. | Employee benefit programs | | 12 | |
| 13. | Insurance | | 13 | |
| 14. | Interest | | | |
| | a. mortgage interest paid to financial institutions | | | |
| | b. other interest | | a + b =  14 | |
| 15. | Legal and professional services | | 15 | 3280 |
| 16. | Office expense | | 16 | 980 |
| 17. | Pension and profit-sharing | | 17 | |

08-22-2014 10:00:26

**SCHEDULE C**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service (99)

OMB No. 1545-0074

# Profit or Loss From Business

(Sole Proprietorship)

▶ For information on Schedule C and its instructions, go to www.irs.gov/schedulec.
▶ Attach to Form 1040, 1040NR, or 1041; partnerships generally must file Form 1065.

**2013**

Attachment
Sequence No. **09**

Name of proprietor **Jose Arantes Neto**

Social security number (SSN) **)443**

| | |
|---|---|
| **A** Principal business or profession, including product or service (see instructions) **Internet Marketing** | **B** Enter code from instructions ▶ **541800** |
| **C** Business name. If no separate business name, leave blank. | **D** Employer ID number (EIN), (see instr.) |

**E** Business address (including suite or room no.) ▶ **49 Rodney Street**
City, town or post office, state, and ZIP code **Worcester MA  01605**

**F** Accounting method:  (1) [X] Cash  (2) ☐ Accrual  (3) ☐ Other (specify) ▶

**G** Did you "materially participate" in the operation of this business during 2013? If "No," see instructions for limit on losses . . [X] Yes ☐ No

**H** If you started or acquired this business during 2013, check here . . . . . . . . . . . . . . . ▶ ☐

**I** Did you make any payments in 2013 that would require you to file Form(s) 1099? (see instructions) . . . . . . ☐ Yes ☐ No

**J** If "Yes," did you or will you file required Forms 1099? . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

## Part I  Income

| | | |
|---|---|---:|
| 1 | Gross receipts or sales. See instructions for line 1 and check the box if this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked . . . . . . . . . . ▶ ☐  **1** | 1,526,295 |
| 2 | Returns and allowances . . . . . . . . . . . . . . . . . . . . . . . . . . . **2** | 0 |
| 3 | Subtract line 2 from line 1 . . . . . . . . . . . . . . . . . . . . . . . . . **3** | 1,526,295 |
| 4 | Cost of goods sold (from line 42) . . . . . . . . . . . . . . . . . . . . . . **4** | 1,292,050 |
| 5 | **Gross profit.** Subtract line 4 from line 3 . . . . . . . . . . . . . . . . . . . **5** | 234,245 |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund (see instructions) . . **6** | |
| 7 | **Gross income.** Add lines 5 and 6 . . . . . . . . . . . . . . . . . . . . ▶ **7** | 234,245 |

## Part II  Expenses    Enter expenses for business use of your home only on line 30.

| | | | | | |
|---|---|---:|---|---|---:|
| 8 | Advertising . . . . . . . | **8** | | 18 Office expense (see instructions) **18** | 980 |
| 9 | Car and truck expenses (see instructions) . . . . . . . . | **9** | | 19 Pension and profit-sharing plans **19** | |
| 10 | Commissions and fees . . . | **10** | | 20 Rent or lease (see instructions): | |
| 11 | Contract labor (see instructions) | **11** | | a Vehicles, machinery, and equipment **20a** | |
| 12 | Depletion . . . . . . . . | **12** | | b Other business property . . . **20b** | |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see instructions) . . . . | **13** | | 21 Repairs and maintenance . . . . **21** | |
| | | | | 22 Supplies (not included in Part III) **22** | |
| | | | | 23 Taxes and licenses . . . . . **23** | |
| | | | | 24 Travel, meals, and entertainment: | |
| 14 | Employee benefit programs (other than on line 19) . . . | **14** | | a Travel . . . . . . . . . **24a** | |
| 15 | Insurance (other than health) | **15** | | b Deductible meals and entertainment (see instructions) **24b** | |
| 16 | Interest: | | | 25 Utilities . . . . . . . . . **25** | |
| a | Mortgage (paid to banks, etc.) | **16a** | | 26 Wages (less employment credits) **26** | |
| b | Other . . . . . . . . . | **16b** | | 27 a Other expenses (from line 48) **27a** | 1,150 |
| 17 | Legal and professional services | **17** | 3,280 | b Reserved for future use . . . **27b** | |

| | | | |
|---|---|---|---:|
| 28 | **Total expenses** before expenses for business use of home. Add lines 8 through 27a . . . . . . . . ▶ | **28** | 5,410 |
| 29 | Tentative profit or (loss). Subtract line 28 from line 7 . . . . . . . . . . . . . . . . | **29** | 228,835 |
| 30 | Expenses for business use of your home. Do not report these expenses elsewhere. Attach Form 8829 unless using the simplified method (see instructions). **Simplified method filers only:** enter the total square footage of: (a) your home: _____ and (b) the part of your home used for business: _____ . Use the Simplified Method Worksheet in the instructions to figure the amount to enter on line 30 . . . . . . . . | **30** | |
| 31 | **Net profit or (loss).** Subtract line 30 from line 29. | | |
| | • If a profit, enter on both **Form 1040, line 12** (or **Form 1040NR, line 13**) and on **Schedule SE, line 2.** (If you checked the box on line 1, see instructions). Estates and trusts, enter on **Form 1041, line 3.** | **31** | 228,835 |
| | • If a loss, you **must** go to line 32. | | |

| | | |
|---|---|---|
| 32 | If you have a loss, check the box that describes your investment in this activity (see instructions). | |
| | • If you checked 32a, enter the loss on both **Form 1040, line 12,** (or **Form 1040NR, line 13**) and on **Schedule SE, line 2.** (If you checked the box on line 1, see the line 31 instructions). Estates and trusts, enter on **Form 1041, line 3.** | **32a** ☐ All investment is at risk. **32b** ☐ Some investment is not at risk. |
| | • If you checked 32b, you **must** attach **Form 6198.** Your loss may be limited. | |

For Paperwork Reduction Act Notice, see the separate instructions.

Schedule C (Form 1040) 2013

EEA

Profit or Loss From Business

Schedule C (Form 1040) 2013

Page **2**

Name(s)

Jose Arantes Neto

SSN

## Part III    Cost of Goods Sold (see instructions)

33  Method(s) used to
value closing inventory:   **a** [X] Cost        **b** [ ] Lower of cost or market        **c** [ ] Other (attach explanation)

34  Was there any change in determining quantities, costs, or valuations between opening and closing inventory?
If "Yes," attach explanation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [ ] Yes   [X] No

| | | | |
|---|---|---|---|
| 35 | Inventory at beginning of year. If different from last year's closing inventory, attach explanation . . . . | 35 | |
| 36 | Purchases less cost of items withdrawn for personal use . . . . . . . . . . . . . . . | 36 | |
| 37 | Cost of labor. Do not include any amounts paid to yourself . . . . . . . . . | 37 | |
| 38 | Materials and supplies . . . . . . . . . . . . . . . . . . . . . . . . | 38 | 1,292,050 |
| 39 | Other costs . . . . . . . . . . . . . . . . . . . . . . . . . . . | 39 | |
| 40 | Add lines 35 through 39 . . . . . . . . . . . . . . . . . . . . . | 40 | 1,292,050 |
| 41 | Inventory at end of year . . . . . . . . . . . . . . . . . . . . . | 41 | |
| 42 | **Cost of goods sold.** Subtract line 41 from line 40. Enter the result here and on line 4 . . . . . . . | 42 | 1,292,050 |

## Part IV    Information on Your Vehicle. Complete this part **only** if you are claiming car or truck expenses on line 9
and are not required to file Form 4562 for this business. See the instructions for line 13 to find out if you must
file Form 4562.

43  When did you place your vehicle in service for business purposes? (month, day, year)    ▶ _____

44  Of the total number of miles you drove your vehicle during 2013, enter the number of miles you used your vehicle for:

**a**  Business _____   **b** Commuting (see instructions) _____   **c** Other _____

45  Was your vehicle available for personal use during off-duty hours? . . . . . . . . . . [ ] Yes   [ ] No

46  Do you (or your spouse) have another vehicle available for personal use? . . . . . . . . [ ] Yes   [ ] No

47 a  Do you have evidence to support your deduction? . . . . . . . . . . . . . . . . [ ] Yes   [ ] No

   **b**  If "Yes," is the evidence written? . . . . . . . . . . . . . . . . . . . . . . [ ] Yes   [ ] No

## Part V    Other Expenses. List below business expenses not included on lines 8-26 or line 30.

| | |
|---|---|
| Telephone | 1,150 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| 48    Total other expenses. Enter here and on line 27a . . . . . . . . . . . . . . . . 48 | 1,150 |

EEA

Schedule C (Form 1040) 2013

Schedule SE (Form 1040) 2013        Attachment Sequence No. **17**                 Page **2**

| Name of person with **self-employment** income (as shown on Form 1040) | Social security number of person |
|---|---|
| Jose Arantes Neto | with self-employment income ▶ |

## Section B—Long Schedule SE

**Part I**    **Self-Employment Tax**

**Note.** If your only income subject to self-employment tax is **church employee income,** see instructions. Also see instructions for the definition of church employee income.

**A**    If you are a minister, member of a religious order, or Christian Science practitioner **and** you filed Form 4361, but you had $400 or more of **other** net earnings from self-employment, check here and continue with Part I   . . . . . . . . . . ▶ ☐

| | | | |
|---|---|---|---|
| **1a** | Net farm profit or (loss) from Schedule F, line 34, and farm partnerships, Schedule K-1 (Form 1065), box 14, code A. **Note.** Skip lines 1a and 1b if you use the farm optional method (see instructions) . . . | **1a** | |
| **b** | If you received social security retirement or disability benefits, enter the amount of Conservation Reserve Program payments included on Schedule F, line 4b, or listed on Schedule K-1 (Form 1065), box 20, code Z | **1b** | ( ) |
| **2** | Net profit or (loss) from Schedule C, line 31; Schedule C-EZ, line 3; Schedule K-1 (Form 1065), box 14, code A (other than farming); and Schedule K-1 (Form 1065-B), box 9, code J1. Ministers and members of religious orders, see instructions for types of income to report on this line. See instructions for other income to report. **Note.** Skip this line if you use the nonfarm optional method (see instructions) . . . . . . . . . | **2** | 242,555 |
| **3** | Combine lines 1a, 1b, and 2 | **3** | 242,555 |
| **4a** | If line 3 is more than zero, multiply line 3 by 92.35% (.9235). Otherwise, enter amount from line 3 . . . . . | **4a** | 224,000 |
| | **Note.** If line 4a is less than $400 due to Conservation Reserve Program payments on line 1b, see instructions. | | |
| **b** | If you elect one or both of the optional methods, enter the total of lines 15 and 17 here . . . . | **4b** | |
| **c** | Combine lines 4a and 4b. If less than $400, **stop;** you do not owe self-employment tax. **Exception.** If less than $400 and you had **church employee income,** enter -0- and continue ▶ | **4c** | 224,000 |
| **5a** | Enter your **church employee income** from Form W-2. See instructions for definition of church employee income . . . . . . . . . . | **5a** | | |
| **b** | Multiply line 5a by 92.35% (.9235). If less than $100, enter -0- | **5b** | |
| **6** | Add lines 4c and 5b . . . . . . . . . . . . . . . . . . . . . | **6** | 224,000 |
| **7** | Maximum amount of combined wages and self-employment earnings subject to social security tax or the 6.2% portion of the 7.65% railroad retirement (tier 1) tax for 2013 . . . . . . . . . . . | **7** | 113,700.00 |
| **8a** | Total social security wages and tips (total of boxes 3 and 7 on Form(s) W-2) and railroad retirement (tier 1) compensation. If $113,700 or more, skip lines 8b through 10, and go to line 11 . . . . . . . | **8a** | | |
| **b** | Unreported tips subject to social security tax (from Form 4137, line 10) . . . | **8b** | |
| **c** | Wages subject to social security tax (from Form 8919, line 10) . . . . . . | **8c** | |
| **d** | Add lines 8a, 8b, and 8c . . . . . . . . . . . . . . . . | **8d** | |
| **9** | Subtract line 8d from line 7. If zero or less, enter -0- here and on line 10 and go to line 11 . . . . . . ▶ | **9** | 113,700 |
| **10** | Multiply the **smaller** of line 6 or line 9 by 12.4% (.124) . . . . . . . . . . . | **10** | 14,099 |
| **11** | Multiply line 6 by 2.9% (.029) . . . . . . . . . . . . . . . . . . . | **11** | 6,496 |
| **12** | **Self-employment tax.** Add lines 10 and 11. Enter here and on **Form 1040, line 56,** or **Form 1040NR, line 54** | **12** | 20,595 |
| **13** | **Deduction for one-half of self-employment tax.** Multiply line 12 by 50% (.50). Enter the result here and on **Form 1040, line 27,** or **Form 1040NR, line 27** . . . . | **13** | 10,298 | |

## Part II    Optional Methods To Figure Net Earnings (see instructions)

| | | | |
|---|---|---|---|
| **Farm Optional Method.** You may use this method only if **(a)** your gross farm income[1] was not more than $6,960, **or (b)** your net farm profits[2] were less than $5,024. | | | |
| **14** | Maximum income for optional methods . . . . . . . . . . . . . . . . . | **14** | 4,640.00 |
| **15** | Enter the **smaller** of: two-thirds (2/3) of gross farm income[1] (not less than zero) or $4,640. Also include this amount on line 4b above . . . . . . . . . . . . | **15** | |
| **Nonfarm Optional Method.** You may use this method **only if (a)** your net nonfarm profits[3] were less than $5,024 and also less than 72.189% of your gross nonfarm income,[4] **and (b)** you had net earnings from self-employment of at least $400 in 2 of the prior 3 years. **Caution.** You may use this method no more than five times. | | | |
| **16** | Subtract line 15 from line 14 . . . . . . . . . . . . . . . . . . | **16** | |
| **17** | Enter the **smaller** of: two-thirds (2/3) of gross nonfarm income[4] (not less than zero) **or** the amount on line 16. Also include this amount on line 4b above . . . . . . . | **17** | |

[1] From Sch. F, line 9, and Sch. K-1 (Form 1065), box 14, code B.

[2] From Sch. F, line 34, and Sch. K-1 (Form 1065), box 14, code A - minus the amount you would have entered on line 1b had you not used the optional method.

[3] From Sch. C, line 31; Sch. C-EZ, line 3; Sch. K-1 (Form 1065), box 14, code A; and Sch. K-1 (Form 1065-B), box 9, code J1.

[4] From Sch. C, line 7; Sch. C-EZ, line 1; Sch. K-1 (Form 1065), box 14, code C; and Sch. K-1 (Form 1065-B), box 9, code J2.

EEA                                                           Schedule SE (Form 1040) 2013

# ATTACHMENT 3

## AFFIDAVIT OF JOSE ARANTES NETO IN SUPPORT OF ANSWER ON ADVERSARY PROCEEDING 16-04006

I, Jose Arantes Neto, hereby swear and affirm the following:

1. My name is Jose Arantes Neto. I am writing this affidavit to explain to the Court the reasons why "I should not be a defendant/case should be dismissed against me, etc"., to request that this court xxxx.

2. In 2012 I heard about TelexFree for the first time through Carlos Wanzeler, for whom I had been working as an image cleaner for the last 8 years. Back then, TelexFree was only operating in Brazil.

3. That same year, Carlos Wanzeler invited me to be part of TelexFree. I accepted his invitation and he signed me up. However, I had no contact with its operations until months later. This is because I was working as an organogold representative and spent most of my time attending trainings and conferences.

4. When Carlos Wanzeler invited me to be part of TelexFree, he showed me that it was registered with the Secretary of State and that it was Certified by the Federal Communications Commission to resell switched and private line services of authorized U.S. carriers for the provision of international service as well as other documents proving that TelexFree was legally authorized to operate within the United States.

5. Carlos Wanzeler explained to me that TelexFree would be in charge of marketing the services of VOIP, a international phone service that he owned along with "Disk A Vontade", another international phone service with whom I had worked as a salesperson in the past.

6. The first month after the services began to operate in Massachusetts, I went on YouTube and watched tutorials about how to post the VOIP advertisements through TelexFree on websites that would not charge for the posting of the advertisement. Soon I started to notice that the more advertisements I posted, the more money I made.

7. Carlos Wanzeler then told me that if I recruited more people to advertise the VOIP products, I would received 10% of how much they made with their advertisements.

8. I started telling some of my friends about this company that was paying me to announce their services on websites, and that everything was really simple. In the total, I recruited 24 friends.

9. After you recruited your friends, you had no control over the people that they recruited. Some recruited dozens and others recruited hundreds of people. I recruited 24, namely: (1) Nelio Morelli, (2) Dalva Siqueira, (3) Nilson Machado, (4) Hugo Alvarado, (5) Edson Souza, (6) Edmar Fogaça, (7) Alan Takabata, (8) Romulo Zarour, (9) Washington Conceição, (10) Tadeu Passos, (11) Adriana Alonso, (12) Ricardo Gomes, (13) Izabella Louise, (14) Paulo Machado, (15) Jamilson Conceição, (16) Junior Nascimento, (17) Antonio Raab, (18) Antonio Muniz, (19) Carlos Pessoni, (20) Jose Casino, (21) Francisco Leoncio, (22) Hervey Afiune, (23) Marcos Nobrega, (24) Marcos Thies.

10. After recruiting the 24 friends, I stopped recruiting and would help them manage their accounts and teach them how to post the VOIP advertisements online, for I would receive 10% of their productions. After three months working for TelexFree, all of them received their investment in the company back. However, of the people that they recruited, I had no responsibility whatsoever.

11. To be an advertisement agent for VOIP through TelexFree, the person herself had to create an online account, enter her information, her bank account information, and pay $1,375 plus $50 with a credit card to be considered a Partner of the business and receive 50 VOIP shares. After a while, TelexFree would accept payment with Paypal. Then, TelexFree started to require the person to go to the TelexFree headquarters in Marlborough personally with a Money Order or Cashier Check.

12. After the payment, the person would have to post VOIP advertisements uninterruptedly for a week on various websites. If she did so, she would receive $100 that week. If she forgot to post advertisements for one day, she would receive nothing that week. If you posted VOIP advertisements uninterruptedly for one week and no VOIP sales resulted through no fault of your own, TelexFree would buy back your 50 VOIP shares for $100 and credit this amount on your account ("back office" as we called it).

13. Every Tuesday, you could log into your account and withdrawal the money that was accumulated concerning the shares the TelexFree had bought back from you that week. The e-wallet system would then deposit this amount directly on your bank account.

14. Every "partnership share" of $1,375 would give you back $100 weekly through the shares that TelexFree would buy back from you every week in case none of your advertisements were sold through no fault of your own. So people started to realize that the more "partnership shares" they bought, the more money they would make when TelexFree bought their shares back weekly.

15. Also, you would get $100 (one time payment) for each binary formed by people recruited under you up to the 6th level. Therefore, people started to buy more "partnership shares" under themselves to get the extra $100.

16. The TelexFree company said that we could buy as many shares as we wanted to, and I would buy "partnership shares" under my own name and IT number, and state them on my IRS tax returns.

17. In March 2014 at the International Love Event in Boston (ON YOUTUBE), TelexFree announced that it would be launching its own credit card, and people could no longer use money order or cashier's check to buy more "partnership shares", but solely the "TelexFree Card". On this same, held for over four thousand people, Carlos Wanzeler and James Merrill asserted to us once again that the company was 100% in compliance with the laws and  along with the Herba Life personnel, he showed us on a PowerPoint presentation the certificates from the Secretary of State.

18. While waiting for the "TelexFree Card" to be launched, instead of withdrawing the money (the e-Wallet service stopped working), they would use their account balance to buy more "partnership shares". I did the same: after I realized that it would be more profitable to reinvest in the company using my account balance and that I had no means to withdraw the amount showing on my balance, I used my account balance to buy more "partnership shares" under my name, as this option was available at the user account.

19. Three months later, I typed (www.telexfree.com) on my browser, and the website showed a message stating that the company was in Bankruptcy proceedings. I called Carlos Wanzeler and he would tell me that it was a misunderstanding, that the company would be back and strong soon, that everything was fine.

20. Even so, we were locked out of our accounts, and all the balance that had been accumulated in the last three months. That was when I started to notice that there was something wrong.

21. Of the money that I have received from TelexFree, everything is stated on my IRS tax returns. Everything else never left the system. It was all account balance that was used to my more "partnership shares" that were then turned into more account balance and so on.

22. From what I have received and declared to the government, I used most of it to buy more "partnership shares" of the TelexFree company, and the rest was spent with family and daily expenses.

23. Now, I still pay rent to live.

Signed under the penalties of perjury on _02_ of ___12___, 2016.
                                              12th        February

Jose Arantes Neto

## CERTIFICATE OF ACKNOWLEDGMENT OF NOTARY PUBLIC

### State of Massachusetts

On this _12th_ day of _February_, 2016, before me, the undersigned Notary Public, personally appeared _Jose Arantes da Silva Neto_ who proved to me through satisfactory evidence of identification, which was _BRA Passport_, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

Notary Public: _Gabriella Benjim_

My Commission Expires: _04/01/2022_



GABRIELLA BONFIM MORAES
Notary Public
Commonwealth of Massachusetts
My Commission Expires
April 1, 2022