UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>TELEXFREE, LLC,<br>TELEXFREE, INC. and<br>TELEXFREE FINANCIAL, INC., | Chapter 11 Cases<br><br>14–40987–MSH<br>14–40988–MSH<br>14–40989–MSH<br><br>Jointly Administered |
| STEPHEN B. DARR, CHAPTER 11 TRUSTEE OF THE DEBTORS,<br><br>             Plaintiff,<br><br>    v.<br><br>BENJAMIN ARGUETA, ALEXANDRO ROCHA, JOSE NETO, JULIO C. PAZ, EUZEBIO SUDRE NETO, HUGO ALVARADO, ANA R. RAMOS, LINDA SUZANNE HACKETT, RUDDY ABREAU, MARCO ALMEIDA, RODRIGO MONTEMOR, LAUREANO ARELLANO, AARON ATAIDE, ROSANE CRUZ, OMAR QUINONEZ, CARLOS C. DEJESUS, BILKISH SUNESARA, ANDRES BOLIVAR ESTEVEZ, JOSE LOPEZ, ANA ROSA LOPEZ, FRANTZ BALAN, MARCELO DASILVA, GLADYS ALVARADO, MARIA TERESA MILAGRES NEVES, MARCOS LANA, LUIZ ANTONIO DA SILVA, BRUNO GRAZIANI, EDUARDO N. SILVA, MICHEL CHRISTIANO SANTOLIN DE ARRUDA, FRANCISDALVA SIQUEIRA, ALEXANDER N. AURIO, AMILCAR LOPEZ, RENATO SACRAMENTO, JULIO SILVA, DAVIDSON R. TEIXEIRA, JOSE CARLOS MACIEL, JESUS OSUNA, CHAI HOCK NG, EDILENE STORCK NAVARRO, SORAYA FERREIRA, EDSON F. SOUZA, VAMING SERVICES, JORGE ANTONIO MEJIA SEQUEIRA, RODRIGO CASTRO, DAVID REIS, ANA SANTOS, WESLEY DIAS, TIMEX RESEARCH CONSULTING, INC., CELSO ROBERTO SILVA FILHO, TEAM GLOBAL ADVERTISING LLC, LWC MARKETING, INC., BARTOLO CASTLLO, GASPAR JESUS, LUISA E. LOPEZ, MARCIO SOUZA NERY, DEBORA C. BRASIL, JOELITO SOUZA CALDAS JUNIOR, UNITED GROUP USA, JEAN 2004, | Adversary Proceeding<br>No. 16–04006 |

ENTERPRISE CORP., RUDMAR GENTIL, NEW GENERATION MED SUPPLY, INC., DANEUNG XIONG, CARLOS ALFARO, LUSETTE BALAN, TECHNOVIA, INC., FAITH SLOAN, MARIZA S. MORINELLI, NUBIA R. GLOULART, ROBERTO NUNEZ, GILSON NASSAR, BINGJIAN PAN, YUE CHEN, RODRIGO R. BREDA, PAULO GIULIANO DIOGENES DE BESSA ROSADO, JOSE MIGUEL FILHO, LAN LAN JI, VENERANDO CONTRERAS, JAP INTERNATIONAL NETWORK, LLC, WALACE AUGUSTO DA SILVA, EZAU SOARES FERREIRA, EDDIT ALBERTO DUVERGE, GLOBAL MARKETING STRATEGIES, CAROL VANTERPOOL, DEVENDRA SHAH, PAT JACKSON, SILVERIO REYES, FABIANA ACACIA DA CRUZ DOS SANTOS, GERALD AGNEW, DWAYNE JONES, JOSEPH PIETROPAOLO, JAMILSON MARCO CONCEICAO, SONYA CROSBY, RANDY CROSBY, WESLEY NASCIMENTO ALVESBY, ANTONIO OLIVEIRA, RONEIL BARRETO, MILAGROS ADAMES, LM DAVAR, INC., PARROT BAY HOMES, INC., EDGAR BORELLI, RICHARDO FABIN, DANIEL CHAVEZ, FAUSTINO TORRES, HELIO BARBOSA, GELALIN-3377, LLC AND A DEFENDANT CLASS OF NET WINNERS,

Defendants.

## DECLARATION OF ILYAS J. RONA
## IN SUPPORT OF MOTION TO DESIGNATE CLASS REPRESENTATIVE, APPOINT MILLIGAN RONA DURAN & KING LLC AS CLASS COUNSEL, AND CREATE DEFENSE FUND, ASSENTED-TO BY TRUSTEE IN ALL RESPECTS EXCEPT AS TO AMOUNT OF PROPOSED FUND

I, Ilyas J. Rona, hereby depose and state the following:

1. I am partner of the law firm Milligan Rona Duran & King LLC ("MRDK").

2. MRDK was founded in March 2015 and currently has five attorneys in both Massachusetts and Colorado. Its principal office in Massachusetts is at 50 Congress Street in Boston.

2

3.     I have been licensed to practice law in the Commonwealth of Massachusetts for 17 years.

4.     Throughout those 17 years, one of my main practice areas has been bankruptcy litigation, including multi-million dollar fraudulent transfer and preference actions. I have also been involved in large recoveries based on mismanagement of bankrupt companies, including a $7.4 million recovery involving claims of fraud and waste in the management of hazardous waste cleanup, a $5.3 million recovery involving claims of misuse of corporate funds by the management of a telecommunications company, and a $3.2 million recovery involving claims that management of a semiconductor inspection equipment company purposefully drove it into insolvency to avoid surrendering control. I am currently employed as special counsel in two bankruptcy cases pending in the District of Massachusetts: (a) *Braunstein v. Lewis*, Adv. Pro. No. 15–03003 (*In re Leslie B. Lewis*, Case No. 14–30096); and (b) *Agin v. Sam Hill, LLC*, Adv. Pro. No. 14–01061 (*In re Warren W. Hill Co., Inc.*, Case No. 13–11423).

5.     Another practice area of concentration for my practice is complex litigation, including class actions and multi-million dollar fraud claims. My experience includes being a member of the trial team in a $142 million jury verdict in a fraud case against a major pharmaceutical manufacturer and working on behalf of the Steering Committee in a related class action against the same manufacturer that resulted in a $325 million settlement. For more on my background, see ¶¶ 33–34 below and **Exhibit A**.

BACKGROUND ON TELEXFREE DEFENDANT CLASS ACTION

6.  On January 15, 2016, the Trustee initiated *Darr. v. Argueta*, Adv. Pro. No. 16–04006. The initial action named 23 individual defendants, which are referred to as "Named Defendants." On the same day, the Trustee filed a motion for class certification, which asked the Court to find that the Named Defendants "will adequately fairly and adequately [*sic*] represent the interest of the Class." (Doc. No. 2, ¶ 5.) The motion also asked the Court to appoint class counsel. (Doc. No. 2, ¶ 6.)

7.  On April 4, 2016, the Trustee filed a motion to amend the action to include 82 additional defendants. That motion was allowed on or about April 13, 2016.

8.  On April 14, 2016, the Trustee filed the Amended Complaint.

9.  In April and May of 2016, a large number of potential or actual defendants in the domestic class action case approached MRDK to inquire whether the firm would represent them either individually or as class counsel.

10.  A primary concern expressed by nearly every defendant contacting the firm was the lack of funds to defend the claims individually.

11.  MRDK conducted a preliminary review of the allegations in the case and spoke to dozens of alleged "Net Winners." MRDK also met with counsel for the Trustee and discussed the Trustee's proposal for class certification.

12.  MRDK recently conducted legal research into the mechanics of defendant class actions, in bankruptcy claw-back cases, and researched the funding approaches in defendant class actions in the bankruptcy context. MRDK has done a preliminary review into the availability of defenses, and whether defendants will be able to

challenge the Trustee's allegations using common proof. MRDK has also met with a forensic financial and data analysis firm in order to determine whether that firm could assist MRDK's efforts representing the class. This work has taken a significant amount of time, and MRDK has not received any compensation for this work.

13. Based on MRDK's review, MRDK believes that defendants and unnamed class members will benefit from class certification. MRDK is willing to serve as class counsel, provided that reasonable funds from the Estate are made available. MRDK is unwilling, however, to serve as class counsel if reasonably sufficient funds from the Estate are not made available.

14. Funding from the Estate is both necessary and appropriate, based in part on the following authority: (a) Judge Boroff's decision to approve funding for a defendant class in *Gray v. Shapiro (In re Dehon, Inc.)*, 298 B.R. 206, 217 (Bankr. D. Mass. 2003); (b) a decision from the Western District of North Carolina requiring a receiver to help fund a defendant class of 9,400 alleged Ponzi scheme "net winners" in *Bell v. Disner*, C.A. No. 3:14CV91, 2015 U.S. Dist. LEXIS 15815, *13 (W.D.N.C. Feb. 10, 2015); (c) the Tenth Circuit's decision in *Weinman v. Fid. Capital Appreciation Fund (In re Integra Realty Res., Inc.)*, 354 F.3d 1246, 1260 (10th Cir. 2004) finding no abuse of discretion to use settlement funds to offset litigation costs incurred by class defendants; and (d) commentary on the legal, economic, and practical justifications for fee-shifting in defendant class actions, including Francis X. Shen, *The Overlooked Utility of the Defendant Class Action*, 88 Denv. U. L. Rev. 73, 122-24 (2010) and Assaf Hamdani and Alon Klement, *The Class Defense*, 93 Cal. L. Rev. 685, 715-17 (2005).

15. There is a significant body of research describing the problems if a class defense cannot obtain funding. In conventional class actions, class attorneys typically receive a share of any settlement or judgment, which provides sufficient incentives to litigate the case and obtain a recovery. "In the class defense setting, however, this method is practically unworkable because when the class wins—*i.e.*, when the court determines that the defendants owe nothing to the plaintiff—no money changes hands." Hamdani & Klement, 93 Cal. L. Rev., at 691. There is thus nothing to tax.

16. What results is the classic free rider problem:

> defendant class members who are not litigating stand to benefit without cost from a successful class defense. Unlike plaintiff classes, where litigation costs can be subtracted out of a settlement, it is more difficult to extract money from passive defendants in the class.

Shen, 88 Denv. U. L. Rev., at 86.

17. While commentators have been "grappling with this problem—and how to correct it—for many years," a technique that has emerged in bankruptcy court cases is for the estate to provide limited funding. *See* paragraph 15, *supra*.

18. The only other practical option is having a well-heeled defendant who is properly incentivized (*i.e.* facing a potentially large judgment) step forward and shoulder the costs of the defense on behalf of the class. Such an outcome is unlikely in this case for two reasons. First, despite pending on the docket for 8 months, no

defendant has stepped forward and manifested an intent to litigate the case on behalf of the rest of class at his or her own personal expense.[1]

19. Second, aside from the Trustee's allegations concerning the existence of "net winnings," there is no evidence that any of the defendants are deep pockets that could afford to finance this litigation. The majority of the named defendants are working individuals and small business owners who are not independently wealthy and who appear in this matter *pro se*.

20. Based on the discussion with the Trustee, MRDK believes the scope of the class representation will include the following:

(a) Discovery:

    (i) Data collection, including production of data by Trustee and comparison to data from defendants;

    (ii) Data review and verification/repair, including retention of experts in data analysis; and

    (iii) Common issue discovery, including written discovery requests and a limited number of depositions;

(b) Retention of a common issue expert in the field of economics/accounting to determine the value of TelexFree credits, the value of goods and services provided by TelexFree, and the economic value of the work performed by defendants;

---

[1] The Trustee alleges that 1.9 million people around the world were involved with TelexFree. Of this, the Trustee alleges that roughly 15,000 individuals in the United States are "net winners." This suggests that there are more than 1 million "net losers." But as of September 21, 2016, only 80,000 people have filed proofs of claim, or less than 8% of the estimated total. If there is such a low rate of activity among "net losers," who are incentivized to file a proof of claim in order to recover money, it seems doubtful that a much higher proportion of "net winners" will step forward and pool resources to defend the litigation. Indeed, the overwhelming majority of named defendants in this case are listed as *pro se* on the docket.

    (c) Determination of the methodology to be used to determine a "net winner" and the factors to be considered in such a process, including various issues such as the appropriateness of aggregating payments and the proper way to analyze triangular transactions;

    (d) Assertion of class-wide defenses;

    (e) Filing of a class proof of claim; and

    (f) Determination of the procedures to be used to make binding findings as to individual liability and damages.

21. Because the scope and intensity of the class representation cannot be predicted easily, MRDK has attempted to make a rough estimate of the legal fees that reasonably could be projected based on our judgment and combined experience. Based on discussions with counsel for the Trustee on the expected scope of the representation, MRDK believes that its fees and non-expert costs could be as much as $250,000.

22. MRDK believes expert costs may be significant based on information recently obtained regarding the problems with the data used to determine who is a "Net Winner" and the extent of his or her liability. MRDK believes the most appropriate way to proceed is to engage an expert who can inspect the data and then make an estimate as to the amount of work needed to evaluate the data for accuracy.

23. MRDK has met with members StoneTurn Group LLC, a forensic financial and data analysis firm, to discuss the scope of a potential engagement. StoneTurn Group then met with members of the Trustee's data analysis effort met on August 29, 2016 to present and summarize their data recovery and analysis efforts in order to aid StoneTurn Group in estimating its fees. Based on this meeting, but without an opportunity to see the actual data, StoneTurn Group has estimated that a limited

8

critique of the Trustee's data analysis could be performed for roughly $100,000. A formal expert report and trial testimony was not included in this estimate.

24. Accordingly, MRDK requests that the Court create a fund of $250,000 for reasonable attorney's fees and non-expert costs for MRDK and $100,000 in reasonable expert fees and costs for forensic financial and data analysis. This request is contingent on the creation of such a fund. If the Court declines to establish a fund as set forth above, then MRDK will not consent to serving as class counsel and will most likely withdraw the instant motion.

## PROPOSED CLASS REPRESENTATIVE

25. Defendant Frantz Balan ("Mr. Balan") is a named defendant in this matter. (Amended Complaint, ¶¶ 22, 36.) The Trustee alleges that Mr. Balan is a net winner in the amount of $516,875.00 and the recipient of $315,572.00 in net preference payments. *Id*. While Mr. Balan disputes these allegations, he undoubtedly has a significant financial stake in the outcome of this litigation.

26. At this time, MRDK is not aware of any circumstance that would make Mr. Balan atypical or inadequate as a class representative in this litigation.

27. Mr. Balan appears to be knowledgeable and experienced in various aspects of business, fluent in English, and capable of understanding the issues that will likely be raised in this matter with the assistance of MRDK. Mr. Balan also has general knowledge of TelexFree and the ways in which people who participated in the sales and marketing of TelexFree services were compensated for their efforts.

28. Mr. Balan is currently represented by MRDK for the purposes of becoming a class representative, and for moving forward with a class defense. Mr. Balan has agreed to have MRDK represent him in class proceedings, and he seeks to have MRDK appointed class counsel.

29. The Trustee and MRDK have agreed to the creation of a defense fund, although they do not agree on the precise amounts of the fund.[2] Based on its review of the case, MRDK requests a fund of $250,000.00 be created for the purposes of paying legal fees and non-expert costs associated with Mr. Balan's defense of the class. MRDK also proposes a fund of $100,000 to pay for reasonable expert costs as outlined above. If such a fund is approved, there will be adequate funds available to pay for Mr. Balan's defense as class representative.

PROPOSED CLASS COUNSEL

30. Milligan Rona Duran & King LLC is a law firm which focuses on trial and appellate advocacy.

31. The attorneys of MRDK have experience in a number of relevant areas, including bankruptcy litigation, fraudulent transfer and preference actions, Ponzi scheme cases, class action litigation, and fraud claims.

32. The firm's attorneys include experienced litigators, with extensive trial and appellate experience.

---

[2] Although the two sides are not far apart in the amount of their proposals, it is my understanding that the Trustee intends to file a counter-proposal.

33. I am a founding partner of Milligan Rona Duran & King LLC, along with Leonard E. Milligan III, Michael J. Duran, and Jin-Ho King. Attached as **Exhibit A** is a true and accurate copy of my professional biography.

34. I have more than 17 years of experience in complex civil litigation. I have been involved in several adversary proceedings that have led to multimillion dollar recoveries. This includes Molten Metal Technology, Inc. (filed in Massachusetts), CTC Communications Corp. (filed in Delaware), Robotic Vision Systems, Inc. (filed in New Hampshire). I have extensive class action experience, including most notably the Neurontin class action which resulted in a $325 million settlement between health plans and Pfizer.

35. Leonard Milligan is a partner of MRDK and a trial attorney who has tried more than 50 cases to verdict. Attached as **Exhibit B** is a true and accurate copy of his professional biography.

36. Michael Duran is a partner of MRDK who manages the firm's Colorado practice. While Mr. Duran is not licensed in Massachusetts, he focuses on commercial and bankruptcy litigation, and business and real estate transactions. Attached as **Exhibit C** is a true and accurate copy of his professional biography.

37. Jin-Ho King is a partner of MRDK and focuses on appellate advocacy and briefing of complex issues at both the trial court and appellate level. Attached as **Exhibit D** is a true and accurate copy of his professional biography.

38. Gregory N. Corbin is an associate of MRDK and practices complex civil litigation, including claims involving bankruptcy and fraud. He is licensed in both

11

Colorado and Massachusetts. He also has litigated cases involving federal and state wage acts and employment laws, and worked on numerous real estate transactions. Attached as **Exhibit E** is a true and accurate copy of his professional biography.

39.    MRDK understands that its scope of representation will be limited to the Court's order(s) on class certification, and that it cannot be reimbursed with Estate funds for any work done outside the scope of class certification. MRDK also understands that all work must be reasonable, necessary, and done for the benefit of all class members.

40.    MRDK understands that all fees it receives from the Estate are subject to Court approval. MRDK keeps contemporaneous time records and will do so in this case. All time will be recorded in tenth-of-hour increments using the ABA's UTBM billing code system. MRDK will not "block bill."

41.    MRDK also understands that any settlement in the case is subject to notice and approval by the Bankruptcy Court.

42.    I declare under penalty of perjury that the foregoing is true and correct.

SUBMITTED UNDER THE PAINS AND PENALTIES OF PERJURY, THIS 26th DAY OF SEPTEMBER 2016

/s/ Ilyas J. Rona
Ilyas J. Rona, Esq. (BBO# 642964)

## CERTIFICATE OF SERVICE

I, Ilyas J. Rona, hereby certify that I have caused a copy of the **Declaration of Ilyas J. Rona in Support of Motion to Designate Class Representative, Appoint Milligan Rona Duran & King LLC as Class Counsel, And Create Defense Fund, Assented-To By Trustee in All Respects Except as To Amount of Proposed Fund** to be served on counsel for the Trustee by email as follows and all registered electronic filers appearing in this case via the Court's CM/ECF system:

Charles R. Bennett, Jr.
MURPHY & KING P.C.
One Beacon Street, 21st Floor
Boston, MA 02108
cbennett@murphyking.com

Dated: September 26, 2016

/s/ Ilyas J. Rona
Ilyas J. Rona, Esq.