**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS - WORCESTER**

IN THE MATTER OF:                    :      Case No. 14-40987
                                            14-40988, 14-40989
TELEXFREE, LLC, TELEXFREE    :      (Jointly Administered)
INC., and TELEXFREE
FINANCIAL, INC.,                     :      Boston, Massachusetts
                                            **December 21, 2016**
     Debtors,                        :      10:21:59 a.m.


: : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

STEPHEN B. DARR,                     :      AP 15-04055

     Plaintiff,                      :

             v.                      :

RITA DOS SANTOS, ETC., ET AL.,:

     Defendants,                     :


: : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

STEPHEN B. DARR,                     :      AP 16-04006

     Plaintiff,                      :

             v.                      :

BENJAMIN ARGUETA, ET AL.,            :

     Defendants.                     :


: : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

**CASE NO. 14-40987**
**TRANSCRIPT OF HEARING ON:**
**[#827] EXPEDITED MOTION OF CHAPTER 11 TRUSTEE**
**TO EXTEND TIME TO FILE PROOF OF CLAIM**

**CASE NO. 15-04055**
**STATUS CONFERENCE**

**CASE NO. 16-04006**
**[#62] PLAINTIFF'S MOTION**
**FOR ENTRY OF DEFAULT**
**BEFORE THE HONORABLE MELVIN S. HOFFMAN, J.U.S.B.C.**

1  **APPEARANCES:**

2  For Stephen Darr,                Murphy & King, P.C.
   Chapter 11 Trustee:             BY:  ANDREW G. LIZOTTE, ESQ.
3                                        CHARLES BENNETT, JR., ESQ.
                                    One Beacon Street, 21st Floor
4                                   Boston, MA  02108

5  For the Plaintiffs'             Brown Rudnick LLP
   Interim Executive Committee:    BY:  WILLIAM R. BALDIGA, ESQ.
6                                        JILL WEXLER, ESQ.
                                    One Financial Center
7                                   Boston, MA  02111

8
   ALSO PRESENT:
9
                                    STEPHEN DARR
10                                  Chapter 11 Trustee
                                    265 Franklin Street
11                                  Boston, MA  02210

12                                  ILYAS J. RONA, ESQ.
                                    50 Congress Street, Suite 600
13                                  Boston MA  02109

14

15  Audio Operator:                 YVONNE WOODBURY, ECRO

16
   Transcript prepared by:         JANICE RUSSELL TRANSCRIPTS
17                                  1418 Red Fox Circle
                                    Severance, CO  80550
18                                  (757) 422-9089
                                    trussell31@tdsmail.com
19

20
   Proceedings recorded by electronic sound recording; transcript
21  produced by transcription service.

22

23

24

25

   **#14-40987/AP 15-04055, AP 16-04066**                    **12-21-2016**

1                      P R O C E E D I N G S

2              THE COURT:  Morning, everyone.  Be seated, please.

3              THE COURTROOM DEPUTY:  Calling Case No. 14-40987,

4    TelexFree, LLC., and Adversary Proceeding 15-4055, Darr v. Dos

5    Santos, and 16-4066, Darr v. Argueta.

6              Could you please identify yourself for the record?

7              MR. LIZOTTE:  Andrew Lizotte for the trustee.

8              MR. BENNETT:  Charles Bennett on behalf of the

9    trustee.

10             MR. BALDIGA:  Good morning, Your Honor.  William

11   Baldiga and Jill Wexler, Brown Rudnick, for the PIEC.

12             Thank you.

13             THE COURT:  Morning.

14             So we have a few things on.  Does anybody have a, an

15   agenda that, that they prefer to follow?

16      (No response)

17             THE COURT:  Well --

18             MR. BENNETT:  I'm happy -- I'm happy --

19             THE COURT:  -- why don't we start with the, with the

20   motion to extend time to file proof of claim, Mr. Lizotte?

21             MR. LIZOTTE:  Thank you, Your Honor.  Andrew Lizotte

22   for the trustee.

23             By this motion, we have asked to extend the bar date

24   for approximately 75 days to March 15, Your Honor.  As set

25   forth in the pleadings, we've been in active discussions with

 1  the U. S. Attorney's Office.  They have reached a plea

 2  agreement with Mr. Merrill.

 3       THE COURT:  Uh-huh (indicating an affirmative

 4  response).

 5       MR. LIZOTTE:  They anticipate some forfeiture of

 6  assets and a restitution order arising from that.  There is a

 7  sentencing hearing coming up in early March.  It was the

 8  consensus that the publicity surrounding that may provide an

 9  opportunity for some people who have been reluctant or not

10  paying attention to file a claim to do so at this time.

11       We have 120,000 claims, approximately, filed to date.

12  They're still trickling in.  The trustee thinks that this one

13  final opportunity to, for people to file claims makes good

14  sense to make sure that we're capturing as many victims as we

15  can and there have been no objections to the motion, Your

16  Honor.

17       THE COURT:  This -- these are claims that have been

18  filed through the portal that was set up?

19       MR. LIZOTTE:  Yes, Your Honor.  That, that excludes

20  claims that have been filed with the Court, which we do reach

21  out to those folks intermittently to advise them to go through

22  the, the electronic portal.

23       THE COURT:  Do you -- do you have -- does the trustee

24  have a sense of the demographics?  Are these claims coming from

25  around the world or primarily in the United States?

1      MR. LIZOTTE:  They're definitely beyond the United

2  States.

3      THE COURT:  Mr. Darr?

4      AUDIO OPERATOR:  Could you just come up to the

5  microphone and identify yourself?

6      MR. DARR:  Stephen Darr, trustee.

7      Your Honor, although we haven't done a detailed

8  analysis of where they're coming from, I do review them on a

9  regular basis and I would say that somewhere around 70 percent

10  of them are from outside the United States and 30 percent are

11  from inside the United States.

12      THE COURT:  Thank you.

13      Does anyone want to be heard on the trustee's motion

14  to extend the bar date?

15      Mr. Baldiga.

16      MR. BALDIGA:  Just very briefly, Your Honor.  William

17  Baldiga.

18      We certainly support the motion.  We -- it would be

19  good to have more of the victims share in whatever the

20  Government makes available.  Right now, something in the order

21  of 15 percent or so of the victims would seem to share in the

22  bankruptcy estate.  It would be, it would be good if it were

23  more than that and if more time helps, all the more.

24      THE COURT:  Thank you.

25      That certainly makes sense to me.  So I'm going to

1   grant the motion and will extend the, the bar date to March 15.

2           MR. LIZOTTE:  Thank you, Your Honor.

3           THE COURT:  Why don't we take up the, the Darr-Argueta

4   motion for default next, please.

5           MR. BENNETT:  Morning, Your Honor.  Charles Bennett on

6   behalf of the trustee, Stephen Darr.

7           Your Honor, that motion can be withdrawn.  The class

8   action counsel has now been appointed, approved.  There was an

9   answer filed this morning on behalf of the class action

10  defendants.

11          So the matter can proceed and the default, motion for

12  default can be withdrawn.

13          THE COURT:  Very well.  Thank you.

14          MR. BENNETT:  Thank you.

15          THE COURT:  Where does that case stand at this point?

16          MR. BENNETT:  We now, we now have an answer.  We have

17  met periodically with Mr. Rona even prior to the final approval

18  of him as counsel.  We have met with his proposed expert last

19  week.  We discussed with the expert and representatives of

20  Huron how the system worked and what materials they need to

21  look at.  The two, Huron and the class actions expert, are

22  going to get together.  They're going to kind of review the

23  documentation, the electronic system, how the claims were filed

24  and really look at the processes employed.  As -- so that's

25  going on.  We expect there'll be a couple of months of needed

1   exchange of information.  Hopefully, they can arrive at some

2   conclusion as to the reasonableness of the procedures followed.

3          As to the litigation itself, the answer's filed.  We

4   will file an appropriate discovery schedule order and we would

5   hope to have crystalized most of the issues within the next

6   month or so.

7          There is an issue that is outstanding that I, Mr. Rona

8   has raised with us on behalf of the -- Mr. Rona has raised with

9   us with respect to the preference claims that are included

10  within the class action and whether or not those claims are

11  subsumed within the fraudulent conveyance and should there be

12  some, should we address those separately or should they be

13  dismissed or how we're going to treat those preference claims.

14  I have looked at that issue and I will meet and discuss it

15  further with Mr. Rona and we'll try to come up with some kind

16  of mutual resolution with respect to the preference claims and

17  how they should be treated within the class action itself.

18         THE COURT:  This is a -- this is the domestic class

19  action?

20         MR. BENNETT:  This is the domestic.

21         THE COURT:  So just -- because it -- there are so

22  often these long gaps between hearings on these, in these cases

23  -- how does the Argueta causes, how do those causes of action,

24  how are they distinguished from the claims in the Dos Santos,

25  the next adversary we're going to be discussing?

1          MR. BENNETT:  The class, the class action claims

2    directly, directly assert a fraudulent conveyance action

3    against all the Net Winners and seek an affirmative recovery.

4          The Dos Santos action was an action that was brought

5    by the trustee in substance seeking an injunction and/or an

6    order that there, that Dos Santos as a representative plaintiff

7    was violating the stay by bringing unjust enrichment claims.

8    Subsumed -- the issue underneath the Dos Santos case is whether

9    or not the trustee -- those -- the triangular transaction

10   claims that the trustee asserts as part of his fraudulent

11   conveyance action are actually property of the estate.

12         THE COURT:  Uh-huh (indicating an affirmative

13   response).

14         MR. BENNETT:  So they intersect on the issue of

15   property of the estate dealing with the triangular

16   transactions.  A ruling in the Dos Santos case clearly would

17   have an impact on the fraudulent conveyance claims and at some

18   point we have to have sort of a decision.  I think Mr. Rona has

19   to -- is -- is considering and looking at all the papers as to

20   his position on it.

21         And one of the things I was going to suggest as part

22   of the Dos Santos hearing is maybe we set some time schedule

23   for Mr. Rona on behalf of the class action defendants to take a

24   position either that he wants to be heard as part of the

25   decision on the class, part of the decision on whether it's

1  property of the estate and then what that position is or

2  whether he will simply stand on the sidelines and, and preserve

3  whatever rights he may have since, technically, there would be

4  no privity if the decision was found in the trustee's favor as,

5  as applies to his clients.

6          THE COURT:  Say that last thing, again.  If the

7  trustee --

8          MR. BENNETT:  If the trustee prevails on the property

9  of the estate claim and the class actions are not participating

10  in it, the Court's decision on that would not necessarily be

11  binding on the class action defendants because there would be

12  no privity, there is no privity between them and the Dos Santos

13  parties and if they don't participate, there'd be --

14          THE COURT:  Hmm.

15          MR. BENNETT:  -- no res judicata effect.  There's a

16  practical effect, I assume, since the same judge would be

17  hearing the same issue but as a matter of law he would not

18  necessarily be bound by a decision that was favorable to the

19  trustee.  Obviously, if the trustee loses that case, the

20  trustee is bound by it and that would carry over into the class

21  action.

22          THE COURT:  But going back to the, to the first

23  alternative where they're not bound, what's -- would that mean

24  that we'd have to litigate it all over again in the, in that

25  case?  Is that, is that where it's heading?

 1          MR. BENNETT:  Tech --

 2          THE COURT:  Is there any --

 3          MR. BENNETT:  No, I don't think it's heading there.  I

 4    -- I -- as I discussed with Mr. Rona, we've, we've discussed

 5    what view the class action counsel is going to take.  He needs

 6    time to absorb all the papers.  Particularly, there was just --

 7    PIC just filed their response today.  I'm hoping at the end of

 8    the day Mr. Rona will at least go, take the position that he

 9    will be bound by, the class action defendants will be bound by

10    whatever decision the Court makes, but we don't have that

11    commitment yet, Your Honor.

12          THE COURT:  And there's no way that you can structure

13    these proceedings so that you don't need his permission and we

14    could just figure out a way to get the ruling to be binding on

15    all these parties?

16          MR. BENNETT:  Oh, yes, there are, Your Honor.  And I

17    could simply file a motion for summary judgment within the

18    class action case and it would parallel the summary judgment

19    that's filed here and then Mr. Rona would respond.

20          What we're trying to do is, is, hopefully, economize,

21    not have to file it in two separate proceedings --

22          THE COURT:  Right.

23          MR. BENNETT:  -- and it's just something that Mr. Rona

24    needs, in all fairness, needs some opportunity to absorb it.

25    He really was only approved, I think, within the last couple of

1  weeks as counsel.

2         THE COURT:  I got it.

3         MR. BENNETT:  I think I accurately stated.  Mr. Rona

4  is here.  I'm sure he can state his own position on that, Your

5  Honor.

6         MR. RONA:  Yeah.  Ilyas Rona on behalf of class

7  representative, Frantz Balan.

8         I -- I don't have -- I think Mr. Bennett accurately

9  summarized sort of the big picture and, and I would just

10 suggest that our review is not based on any procedural gimmick,

11 meaning we're not looking to save, win today just to have

12 another fight tomorrow.

13        So we're looking at the, our understanding of the law

14 and also our understanding of the facts as to these

15 transactions and whether, if there wasn't title in money,

16 whether that was still, nevertheless, the estate had an

17 interest in the money and our view, preliminary view is that

18 this is how participants in TelexFree got paid.  So this, this

19 was a cog in the system, in fact, the only real cog in the

20 system.

21        So we're still looking at it and we have not, I have

22 not wrapped my, my hands around the issue of res judicata and

23 all that sort of thing.  So that's sort of last in my

24 consideration.  I'm just trying to figure out what seems to be

25 the most accurate position to take based on the facts as I'm

1   coming to understand them and understanding the law, which is a

2   little bit slippery in the area of what, what it means to have

3   an interest by the estate in something that's not titled, just

4   an interest.

5        So I don't mean to be hopelessly vague, but we are

6   looking at it and it's, I will say, it's our, it's our highest

7   priority to formulate our position and we expect to have one

8   soon.

9        THE COURT:  Thanks.

10        Well, I guess that gets us to the Dos Santos case with

11   a status conference to talk about where things stand there.

12        Mr. Baldiga?

13        MR. BALDIGA:  Sure.  Thank you, Your Honor.

14        So the, the two parts of the other matter are the

15   preference actions, which is not our concern, and the

16   fraudulent conveyance actions or the so-called triangular

17   transactions in the trustee's parlance and the direct victim

18   payments in, in ours.

19        That matter has now been fully briefed for summary

20   judgment and as you've heard from us for about a year, we, we

21   think we need a -- the case cries out for a ruling on that

22   issue because we do think that it needs to move forward and if

23   the victims themselves have standing to recover their own

24   amounts, then the trustee doesn't need to go forward and you

25   don't have to worry about the issues of Mr. Ronas being bound

1  and so forth.

2         I don't think we need to hear from Mr. Ronas on that

3  for a couple of reasons.  One, he's being paid by the same

4  people that are paying Mr. Bennett's firm.

5         So the fact that they would weigh in, it doesn't

6  really add anything to the, to the debate.  You have before you

7  and you have had before you for some time the parties to that.

8  One of them have standing.  One of them does not.  I don't --

9  none of us see any way that that baby gets split absent

10  agreement.  And now we've pursued to exhaustion the possibility

11  of agreement and that did not happen.

12         So I think very simply you have before you a question

13  of law.  I think both parties, while you can -- there are some

14  disputes as to what facts are agreed and so forth.  I think

15  everyone has seen and I think you've, you mentioned at prior

16  hearings that it does seem to be a legal dispute, seems to be

17  one without direct precedent.  There's some very good law from

18  the Madoff case, but no one has found a, another Ponzi scheme

19  case that emanated from these facts where most of the ill-

20  gotten gains were passed from one victim to a promoter as

21  opposed to the criminal enterprise itself.  And, you know, to,

22  to allow this to go forward, I think we just need a decision.

23  It's been fully briefed.  And so from our perspective what we

24  need is a hearing date, if there, if you do wish to have a

25  hearing, for argument, we'd complete the argument, and get our

1 ruling.

2          THE COURT:  Thank you.

3          MR. BALDIGA:  Thank you.

4          MR. BENNETT:  Your Honor, with respect to Mr. Rona's

5 class action, I have two points to make.  The first is I've

6 already made with respect to res judicata and whether or not

7 this Court really wants to hear the issue twice.  That, that is

8 why I suggested that maybe we should have Mr. Rona at least

9 weigh in as to whether or not he wants to participate, even if

10 it's through his own case.

11          The implication that somehow because of the court

12 orders that allowed Mr. Rona to receive some compensation from

13 the estate is anything other than diligently representing his

14 client I think is an unfair comment with respect that Mr. Rona

15 has standings and his independence in making his own

16 determination with respect to the merits of the claims and how

17 those, merits of the claims and his views with respect to how

18 this matter should proceed.  I just think that's an absolutely

19 unfair statement by Mr. Baldiga and an unfounded statement and,

20 quite frankly, an uncalled-for statement.

21          With respect to the issue of whether this matter is

22 ready for a hearing on summary judgment, I thought it was going

23 to be.  I thought that once we received the reply from the PIEC

24 we would have joined all the legal issues.  I now have some

25 concern with, with respect to the response which was filed by

1   the PIEC and whether or not they are creating a issue of fact

2   that may somehow interfere with the final, would interfere with

3   the ability of this Court to make a determination.

4          I don't know if the Court has any of the papers that

5   were just filed last night, but in the --

6          THE COURT:  I haven't read them, but I see them here.

7   I have, I have them.

8          Go ahead.

9          MR. BENNETT:  Particularly, what I would draw the

10  Court's attention to, it's Document 77.  It's their response to

11  the trustee's Statements of Facts --

12         THE COURT:  Uh-huh (indicating an affirmative

13  response).

14         MR. BENNETT:  -- and Paragraph 7 of that response.

15  Paragraph 7 is the statement with respect to what, what the

16  trustee asserts was the mechanics for how the triangular

17  transaction worked, what the steps were, what each person did

18  with respect to that transaction.  It forms the factual basis

19  for the ultimate legal conclusions as to whether or not it's

20  property of the estate or not.  The response by the PIEC is,

21  "Denied," which I take to mean denied the whole paragraph;

22  therefore, denying all the underlying facts with respect to how

23  the transaction proceeded.  That denial is not premised upon

24  any reference to the record, any supporting affidavit, or other

25  document, which I'd submit is somewhat in, which I'd submit is

1    inappropriate.  If you're going to deny the fact, under the

2    Rule you're supposed to set a statement to the record as to the

3    basis for the denial.

4           But beyond that point, we now are denying the basic

5    terms of the participant triangular transaction and, therefore,

6    I'm not sure we can proceed with summary judgment if, in fact,

7    how the transaction operated is being denied and contested.  We

8    either need to have the reason for that, the basis, or we need

9    some other statement from PIEC's counsel with respect to the

10   denial of how the transaction worked.

11          So that's my concern with proceeding on summary

12   judgment.  I don't want to get there and then find out we have

13   a material issue of fact as to the nature of the transaction.

14          THE COURT:  Let me see.  Your, your statement that

15   they're responding to is where?

16          MR. BENNETT:  It's Paragraph 7 on Page 4.  It's

17   Document 77.

18          THE COURT:  Oh.  That's their response.  Where is your

19   -- where is the statement by the trustee?

20          MR. BENNETT:  It's, it's the numbered Paragraph 7.  It

21   starts with, "Pursuant to this."  That's the paragraph.  That

22   is the trustee's statement.

23          THE COURT:  Oh, I see.  Okay.

24          MR. BENNETT:  And then the response is the --

25          THE COURT:  Forgive me.

1          MR. BENNETT:  -- PIC's response.

2          THE COURT:  Let me just finish reading it,

3    Mr. Baldiga.

4          MR. BALDIGA:  Of course.

5       (Pause)

6          THE COURT:  Okay.  Go ahead.

7          MR. BALDIGA:  Certainly, Your Honor.

8          Our response to this is fairly simple.  We're here

9    today because the trustee filed a complaint and we filed a

10   motion for summary judgment.  We think we're entitled to

11   summary judgment because even if what the trustee pleads is

12   accepted as fact, we're entitled to summary judgment as a

13   matter of law.  We thought that from the outset.

14         I think I might agree with Mr. Bennett that the

15   trustee's cross-motion for summary judgment could not be

16   allowed because they haven't proved up the facts that they

17   would need for that.  However, the fact that they have a, you

18   may find their own motion to be factually or legally

19   insufficient doesn't mean that we can't move forward on our

20   motion for summary judgment because on ours you simply have to

21   find as a matter of law that there, there is no such thing as

22   what they're alleging.

23         So everything that Mr. Bennett said doesn't apply to

24   the primary motion that, that has been brought.

25         THE COURT:  Your motion for summary --

1      MR. BALDIGA:  Our motion.  Ours, ours was the motion

2  that was filed.  The fact that they chose to also lob in their

3  own motion for summary judgment doesn't mean that we're not

4  ready to proceed on ours.  We've been ready to proceed on ours

5  for months and, and we need a ruling on it.  They can

6  proceed -- they can choose to go forward with their motion for

7  summary judgment or not, but it's not a reason to delay ours.

8  And there are no -- I mean, we -- no one thinks that there are

9  material issues of fact as to ours and we're ready to proceed.

10 We think the case law is absolutely clear.  I'm not going to

11 turn this into a mini hearing on summary judgment.  I think

12 you'll probably set a hearing for that, but we think that the

13 law is clear and the facts as alleged by the trustee feed into

14 a ruling in our favor.  It doesn't have to be more complicated

15 than that.

16      THE COURT:  But, but getting to your, to your

17 response, the trustee's Statement of Undisputed Material Facts

18 -- it's No. 7 --

19      MR. BALDIGA:  Yes.

20      THE COURT:  -- as I, as I read it, what you're denying

21 is what is said in the sentence after the word, "Denied."  It's

22 limited to that explanation.  You're denying the reference --

23 the -- the implication that the word "redeemed" means redeemed

24 for cash.  I don't find that to be a problem in terms of a

25 dispute over facts.

**#14-40987/AP 15-04055, AP 16-04066**                    **12-21-2016**

1      Can you, can you comment on what the meaning of that

2  response is, Mr. Baldiga?

3      MR. BALDIGA:  Certainly.  Two things.  First, just

4  that in the sentence that you just referred to, we, there was

5  no redemption for cash and in our, all of our legal papers this

6  so-called credit was just a phony thing that was dreamed up as

7  part of a criminal enterprise.  There was no property of the

8  estate involved and no property of the debtor.  It was just

9  part of a criminal enterprise.  It was -- you know, they could

10 -- the debtor could manufacture as many of those as they wanted

11 to.  They were just slips of paper without meaning other than

12 as a way to entice more people to give up their cash.

13     THE COURT:  Uh-huh (indicating an affirmative

14 response).

15     MR. BALDIGA:  On the -- more generally, and the reason

16 we denied this is that the trustee would have this Court accept

17 that this thing was some sort of well-oiled machine and that

18 the allegation in Paragraph 7 applied to tens of, or millions,

19 or tens of millions of transactions in some sort of commercial

20 sense.  That's just not the case, certainly not what we're

21 hearing from our clients.  The facts are all over the place.

22 If the trustee intends to go forward with his theory of the

23 case, it's a criminal enterprise, now admittedly so.  They did

24 whatever they needed to do to pull in as much cash as they

25 wanted to.  They created a, some sort of construct where things

1    looked to the outside world, especially to uneducated

2    consumers, that there was some sort of commercial activity

3    going on, but that was just a, a construct.  It had nothing to

4    do with reality and for the trustee to come in and sort of

5    pretend that for millions of transactions there was some sort

6    of way that this operated consistently that would apply

7    uniformly to a million victims, we deny that.  That's just --

8    that doesn't comport with the reality here.

9            THE COURT:  And -- and how -- that -- that -- the

10   trustee's description of the, of the construct, as you call it,

11   or of this methodology is, is alleged by him as -- as -- as the

12   underlying fact to which you are now saying in your motion for

13   summary judgment you're entitled to judgment as a matter of

14   law.

15           So you're accepting that construct for your purposes,

16   aren't you?

17           MR. BALDIGA:  We're saying even if that were true,

18   we're entitled to judgment --

19           THE COURT:  Okay.

20           MR. BALDIGA:  -- in any event.

21           THE COURT:  Right.

22           MR. BALDIGA:  However, if we're not entitled to

23   judgment, we'd reserve the right to dispute that.

24           THE COURT:  Uh-huh (indicating an affirmative

25   response).

1        MR. BALDIGA:  We certainly don't recognize the

2    trustee's entitled to, entitlement to summary judgment if the

3    law were to go the other way.

4        THE COURT:  Uh-huh (indicating an affirmative

5    response).

6        MR. BALDIGA:  Because we don't think there's one set

7    of facts that would apply to all the millions of transactions

8    here.  That's taken from TelexFree's advertising or promotional

9    materials, which was a way to drag in $3 billion of, of cash

10   from unsuspecting victims.  It's not a description of reality.

11       But in any event, that's what a trial is for, if we

12   don't get summary judgment as a matter of law.

13       THE COURT:  Uh-huh (indicating an affirmative

14   response).  Thank you.

15       MR. BALDIGA:  Thank you.

16       MR. BENNETT:  Your Honor, just so I'm --

17       THE COURT:  So, Mr. Bennett, what's, what's the

18   problem here?

19       MR. BENNETT:  Well, I just -- I'm -- I'm -- I want to

20   make sure that I understand what Mr. Baldiga either just

21   admitted to or didn't admit it, admit to.

22       With respect to Paragraph 7, the trustee's description

23   of how the triangular transactions occurred, if Mr. Baldiga is

24   admitting for the purposes of summary judgment --

25       THE COURT:  Of his summary judgment.

1        MR. BENNETT:  His summary judgment, our summary

2   judgment, either way, it's the same underlying set of facts.

3   If he's admitting for the purposes of hearing summary judgment

4   that that's the construct --

5        THE COURT:  Yeah.

6        MR. BENNETT:  -- then fine.  There's no issue of fact.

7   If he's denying that is the construct and that there's some,

8   something else was in play here, then we have an issue of fact.

9        So if, if what I heard, I thought I just heard him say

10  was even if those facts as alleged in Paragraph 7 are true,

11  then he's still entitled to summary judgment.

12       So if we admit, if the response reads admitted for the

13  purpose of summary judgment only, then I'm, I'm, I'm fine.  We

14  can go forward 'cause now we have the factual basis.  If he's

15  saying, "No.  I want to be able to argue that's not what, how

16  the transaction occurred," then we have an issue of fact.

17       THE COURT:  Well, why can't he, why can't he admit it

18  for purposes of his motion and then if he loses and we turn to

19  your motion, he says, "You got to prove it.  I don't agree to

20  it"?  I think that's what you're saying, right?

21       MR. BALDIGA:  Exact -- I know how to say "admitted"

22  when that's what I need to say.  So it's -- it's -- it is that

23  simple.  I, I used the words that I used.

24       THE COURT:  Why can't -- it is what it is,

25  Mr. Bennett, I, I think.  We have to, we have to move forward

1   on this and if we get to that, you're right.  It's a problem on

2   your motion for summary judgment that's going to --

3          MR. BENNETT:  Well --

4          THE COURT:  -- have to be addressed.

5          MR. BENNETT:  -- it's, it's also a problem on his

6   motion for summary judgment unless that, at least for the

7   purpose of his motion for summary judgment, that's, that's an

8   agreed-upon statement.

9          THE COURT:  Well, I think we heard that it is.

10         MR. BENNETT:  Is it so?  I don't think I heard the --

11         MR. BALDIGA:  I -- our papers say exactly what we mean

12  them to say.  We've alleged facts in our motion for summary

13  judgment and in our answer and in the trustee's complaint that

14  are sufficient and undisputed for purposes of our motion for

15  summary judgment to go forward and get a ruling in our favor.

16  We don't think the trustee has done the same with his motion

17  for summary judgment, but those are two separate motions.  Not

18  every case is subject to dueling motions for summary judgment

19  that they either both are sufficient or insufficient.  Ours is,

20  but we need many fewer facts because we think there, the law

21  doesn't support the trustee's case.  But so be it.  I mean, it

22  is, as you say, it is what it is.

23         THE COURT:  Yeah.

24         MR. BALDIGA:  And I'm not going to be backed into

25  admitting something because it's more convenient to the trustee

1   if we don't think that those are the facts.

2        MR. BENNETT:  Your Honor, we've alleged the -- the

3   same allegations were alleged in our Statement of Material

4   Facts in response to their motion for summary judgment.

5   They're identical.  There's no difference.

6        So that's either the basis we're going to go forward

7   or it's not the basis.

8        THE COURT:  Well, I -- I -- I think we're going to

9   leave this for the argument on summary judgment.  But I, I

10  think I understand and we'll play it out.

11       MR. BENNETT:  Just one other point.

12       THE COURT:  Yeah.

13       MR. BENNETT:  To the extent that we do have the

14  response, I would submit -- and I don't know if we have to go

15  through motion practice -- when you deny a fact in the

16  Statement of Facts you have to state to the record as to the

17  basis for the denial.  There is no support for his denial.

18       So at a minimum, he has to state, the PIEC has to

19  state where in the record we find support for the denial, Your

20  Honor.  That's not been done in any of his pleadings.

21       THE COURT:  Okay.

22       Mr. Rona, did you want to be heard?

23       MR. RONA:  Just briefly, Your Honor.

24       On, on the issue of our position, I think Mr. Bennett

25  suggested that we might submit something or be given the

1   opportunity.  I think we'd like that opportunity.

2           THE COURT:  How long do you need?

3           MR. RONA:  Well, I would -- I don't know -- I'm not

4   familiar with the timetable that's been set already on, on

5   summary judgment, but if we could have at least 21 days.  I

6   don't know if that's enough time, I mean, too much time.  I'm

7   just worried with holidays doing it less than that.

8           THE COURT:  Well, I'm going to set a hearing on -- for

9   -- for oral argument on the, the cross-motions and I'll, I'll

10  set it for after 21 days.  That should give you enough time to,

11  then you can participate if you want to.

12          MR. RONA:  Thank you, Your Honor.

13          And I would just say I've known Mr. Baldiga for many

14  years.  I don't think he was implying that I'm in any way

15  biased in this proceeding and I'm not -- I think our biggest

16  consideration is what's in the best interest not only of our

17  clients, but of, of sorting out this mess.

18          THE COURT:  Uh-huh (indicating an affirmative

19  response).

20          MR. RONA:  And I would suggest that the district court

21  approach, I think, is, is, is almost certain to fail because of

22  the -- you'll just end up getting a lot of default judgments.

23          So the advantage -- and this is a consideration.  It's

24  not the only consideration, but it is a consideration -- there

25  are huge advantages of, of bankruptcy court, of having a class,

1   of having counsel who's plugged in and able to sort through the

2   issues not just on behalf of one client at a time, but based

3   on, on the overarching issues.  And, and I've already been able

4   to see some of the trustee's data and I've already been able to

5   identify what would be lines of attack.  And that's only going

6   to happen in bankruptcy court.  So that is another

7   consideration.  I just throw that out there.

8       So I think we're looking at this from the standpoint

9   of, of, of the class and what's in the class' best interest and

10  not, you know, any other consideration.

11      Thank you.

12      MR. BALDIGA:  Your Honor, both on timing and what you

13  just heard, if Mr. Ronas is going to file papers, I'd like to

14  understand and have you dictate sort of whether it's an amicus

15  brief, which I guess anybody is free to do, or he's going to

16  intervene.  If he's going to intervene, he has to intervene as

17  a plaintiff or a defendant and I suggest neither is possible.

18  This is a lawsuit to enforce the stay at its heart.  Only the

19  trustee can enforce the stay.

20      We represent victims who are Net Losers.  Mr. Ronas

21  represents the promoters who are defendants in the trustee's

22  action and, frankly, in many of our actions.

23      So we don't need Mr. Ronas to help enforce the stay.

24  That's the trustee's job and Murphy & King could do that just

25  fine.  And he certainly doesn't belong on the other side of the

1   "V."  To have the Net Winners' counsel jump in purportedly on

2   behalf of our clients to say what's best for them is the exact

3   opposite of justice.

4         So that's the problem with someone who comes lately to

5   litigation and would like to be heard, including saying things

6   like he just said.  Who is he talking for?  He has no clients

7   that are involved in this other than the people we're suing and

8   the trustee is suing.

9         So who cares, frankly, what his view is?  I -- now

10  that being, if he wants to file papers and if it helps to have

11  him be bound by something --

12        THE COURT:  That's what I think we're dealing with --

13        MR. BALDIGA:  -- who cares?

14        THE COURT:  -- Mr. Baldiga.

15        MR. BALDIGA:  But I don't want there to be any

16  misconception right from the beginning, including from comments

17  like he has now, some form to judgment on behalf of people that

18  he cannot represent because he represents the defendants.

19  That, that's totally inappropriate and I didn't want to start

20  now creeping to where the bad guys here, the promoters, are

21  starting to tell the Court what they think is best for the

22  victims who were fleeced by these promoters.  We don't need

23  that.  We, we get enough problems with those people than having

24  now the trustee paying victim money to have someone come in to

25  do what he just did.

1          And it's a further waste of that money for him to come

2    in and try to intervene or to other, file amicus or other

3    briefs.  Those are the people who fleeced the victims.  That's

4    not the victims talking.  And I just didn't want to creep into

5    it where something that he says has some importance or

6    relevance to this.

7          Now Mr. Bennett got into it by saying it'd be nice if

8    he were bound somehow.  I agree with that, but not if it comes

9    with a price that, that his words are given some credence.

10          And I do go back a long time with Mr. Ronas.  I think

11   he's a very good lawyer and I have no personal animus, but to

12   be paid victim money to come in here and say what's best for

13   victims is offensive.  And I just don't want to start that now

14   and I want to in the most vociferous way say if he's gotten a

15   chance to sit with the trustee and look at things and now he's

16   going to come in and tell the Court what's best for victims,

17   that's -- we don't accept that one whit.

18          Thank you.

19          MR. BENNETT:  Your Honor, not to belabor the point,

20   but it was Mr. Baldiga and the victims that raised the issue

21   with respect to whether or not the-trustee has standing to

22   pursue the triangular transactions.  That's the exact -- one of

23   -- certainly a defense, if he was right, that would be

24   available to the class action.

25          So as --

1          THE COURT:  Right.

2          MR. BENNETT:  -- much as --

3          THE COURT:  I understand that.

4          MR. BENNETT:  -- Mr. Baldiga --

5          THE COURT:  But -- but --

6          MR. BENNETT:  -- Mr. Baldiga tries to separate

7   himself, he is arguing maybe for the victims, but he's also

8   arguing for all the Net Winners to the extent that he can, he's

9   arguing the trustee can't pursue the Net Winners on triangular

10  transactions.  That's a problem he's created, not the trustee,

11  Your Honor, and the trustee doesn't want to get whipsawed here,

12  argue with Mr. Baldiga, and then have to face and argue with

13  the class action.

14         THE COURT:  So, so let's move this towards some

15  resolution.

16         What is it that Mr. Rona can file that would bind his,

17  his defendant class to a ruling on summary judgment here in

18  this adversary proceeding?

19         MR. BENNETT:  I think he should be permitted to

20  intervene in the action for the limited purposes of arguing on

21  the property of the estate.  Submit a brief one way or the

22  other.  Otherwise, if he's not in the case, he can't be bound

23  by the case, Your Honor.  Amicus doesn't bind him.

24         THE COURT:  And intervene on which side of the "V"?

25         MR. BENNETT:  I guess that would depend upon which

1   side of the decision he makes.  I mean, he's either going to

2   support Mr. Baldiga -- I hate to speak for him.  He is sitting

3   here.  I kind of hate to speak for him -- but he's either going

4   to come in and support Mr. Baldiga and say that the victims are

5   right and we can't pursue any claims against the Net Winners or

6   he'll come in with the trustee and say, "No, I agree that this

7   is property of the estate," and not have to defend the

8   fraudulent conveyance actions here.

9          But one way or the other, it's, it's the same issue.

10  We can't proceed on a fraudulent conveyance if it's not

11  property of the estate.  That's the issue the victims have

12  raised.  The beneficiary of that argument will be the class

13  action defendants.

14         MR. BALDIGA:  The odds of him coming in on our side

15  are nil.  We'll just start from that.  But in any event, he

16  doesn't represent any of the clients-on that side of the "V."

17         So if the trustee wants him to join in with the

18  trustee, so be it.  Adds a few minutes to oral argument.

19  You'll have the same papers.  Can't believe they're any better

20  than what the trustee has done.  The trustee has tried every

21  possible argument here over the last year and we're at the end

22  of them, I think.  Mr. Ronas can think of more, throw them in.

23  But he doesn't represent any clients on the other side of the

24  "V."  He represents the people that we're suing.

25         So we don't need or want him to help us with our

1  position.  We, we know how to do that.  If the trustee wants

2  him in, fine.  We don't.

3           THE COURT:  But you don't have -- you don't -- you

4  don't control that, that, that result, Mr. Baldiga.  If he --

5  if his clients choose to argue that there -- that this issue --

6  that they support your version of, of the law on this issue and

7  want to be bound by the ruling, then more power to them.

8  What's the difference?

9           MR. BALDIGA:  Absolutely.  That's called an amicus

10 brief because --

11          THE COURT:  How --

12          MR. BALDIGA:  You, you can only intervene as a party.

13 Lawyers aren't entitled to intervene.  Clients are.

14          THE COURT:  Uh-huh (indicating an affirmative

15 response).

16          MR. BALDIGA:  His clients are not on our side of the

17 "V."  Now he can go find a client who's a victim, I guess, and

18 do it.

19          THE COURT:  They're not, they're not on any side of

20 the "V" in this adversary proceeding, right?  The fact that

21 they happen to be --

22          MR. BALDIGA:  That's right.

23          THE COURT:  -- they happen to be adverse in a separate

24 lawsuit doesn't preclude them from being on your side.  You

25 know, my, my, my enemy's enemy is my friend.

1    So they can choose to be on your side for this

2    particular adversary proceeding, if that gets them what they

3    want.

4    MR. BALDIGA:  Well, I think we're talking --

5    THE COURT:  But how -- are you saying that an amicus

6    brief, if they file an amicus brief, then they're bound by the

7    ruling?

8    MR. BALDIGA:  No.  I, I don't know how an amicus --

9    that, that's why they've been talking for however many months

10   and don't have a solution to this problem yet.  It's not

11   because Charlie Bennett is not a clever lawyer.  They, they

12   have a real problem and I'm not sure this Court can solve it.

13   But in any event, that's for them to figure out.

14   We don't want them talking for people that they don't

15   represent.  If they choose to file a brief, that's fine, but I

16   don't want them for one second to get up and talk about the

17   people who are suing their clients.  That's not their job.

18   THE COURT:  But I don't want to hear about what you

19   want.  What's the law?  What -- what -- is there a legal

20   obstacle to them seeking to intervene for a sole purpose of

21   taking a position on this issue as --

22   MR. BALDIGA:  Yes.  They have to --

23   THE COURT:  -- as a party plaintiff?

24   MR. BALDIGA:  -- have an interest in it.

25   THE COURT:  Okay.

1        MR. BALDIGA:  And if they, if they choose to intervene

2   on the plaintiffs' side, that's, I have no problem.  If they

3   choose to intervene --

4        THE COURT:  I mean, on the defendants' side.

5        MR. BALDIGA:  On the defendants' side, they have no

6   interest in that.

7        THE COURT:  If -- why do you say that?  If -- if -- if

8   they believe that the, that the trustee does not have a claim

9   against them because of the arguments that you're raising about

10  there being no property interest in what was transferred, then

11  they do have an interest in, in that argument.

12       MR. BALDIGA:  No.  There is other litigation, the one

13  that you first heard today, Argueta, whatever the --

14       THE COURT:  Argueta, yeah.

15       MR. BALDIGA:  They can answer in that proceeding.

16       THE COURT:  Right.

17       MR. BALDIGA:  We denied because you guys, "Trustee,

18  you don't have standing to sue us."

19       THE COURT:  Right.

20       MR. BALDIGA:  There's already a proceeding before this

21  Court for the resolution of that and that's -- I agree with

22  Mr. Bennett.  It's very simple.  They file the same response we

23  did.  They can take our papers.  I told -- I sent our papers to

24  Mr. Ronas six months ago and I said, "Here's, your, here's your

25  response."  It's actually pretty simple law.  They've chosen

1   not to do that.

2          I don't want to infect a stay violation proceeding

3   with a proceeding that they can easily join forces to and/or

4   butt heads with that's already been there.  They've had six

5   months to file a simple motion to dismiss that proceeding.  You

6   could order right now in that proceeding.

7          It's going to be very simple, Mr. Ronas.  Here's what

8   you do.  And you are getting paid by the estate to do it.  File

9   by 10 days, 20 days, whatever time he needs -- because it's no

10  more complicated, right -- the same papers you were going to

11  file in the Trustee versus Dos Santos.  Just put the other

12  caption on it.  File a motion to dismiss and I'm going to hear

13  that at the same time that I'm going to hear summary judgment

14  in this one.

15         Perfect.  He's bound by the papers he files.  He

16  either believes what he says or he doesn't and the Court has

17  the whole thing done without amicus, without this cockamamie

18  intervention, or anything else.  It's perfectly before the

19  Court.  You can resolve them both in one fell swoop.  It's

20  going to be a little odd because he's going to file a motion to

21  dismiss, if he follows the Court's order, and then he'll get up

22  and say, "But I don't think we should win."  Because otherwise,

23  I mean, he wouldn't be here today.  But so be it.  It'll then

24  be -- the Court will enter a simple decision on this and it

25  will in the proper proceeding determine the rights of all

1   parties.

2          So there is, actually, a very straightforward,

3   accepted procedural way to get to the end of this.  It takes no

4   longer time.  The papers are not more involved.  In fact, the

5   papers are much less involved because you don't need to hold

6   the intervention thing.  And that proceedings has been pending

7   for, I don't know, 6 months, 12 months.  And he's been in the

8   case long enough to do it.  But in any event, same papers.  And

9   we'll just set them both.

10          THE COURT:  Thank you.

11          What's wrong with that idea, Mr. Rona?

12          MR. RONA:  We, we certainly have actually thought

13   about that.  And, and Mr. Bennett referenced the issue of

14   preferences.  I mean, there's other considerations that we

15   have.  And so nothing in this case, unfortunately, is binary.

16   And so one of the proposals that we've had is to drop the

17   preference claim so that at least now we can start answering

18   some of these questions in a yes/no fashion.

19          The problem with the preference claim is it does push

20   the defense or the positions of some Net Winners, actually,

21   probably more into Mr. Baldiga's camp because of the nature of,

22   of the payments and whether that constitutes a transfer that's

23   recognized as a preference on account of antecedent debt

24   without contemporaneous exchange, subsequent, all those things.

25          So there is a different analysis with preference and I

1   would suggest the transactions themselves are not any different

2   than the ones that occurred prior to 90 days.  It's the same

3   stream of transactions and whether they work like clockwork, as

4   the trustee's paper sort of generally suggest, or whether they

5   were haphazard the way Mr. Baldiga is suggesting, it doesn't

6   matter.  That was consistent across both periods, prepreference

7   and, and during the  preference window.  If we could eliminate

8   that, then I think it makes our position easier.

9        So we did look at doing a motion to dismiss.  And

10  again, the decision wasn't formed by what's best for our

11  clients, who -- many of -- many of whom -- if, if the case is

12  dismissed and Mr. Baldiga then proceeds in district court, the

13  clients are there.  Whether I represent them or not is not the

14  issue.  They're, they're going to be there, many of them.  They

15  have sued -- Mr. Baldiga has sued the largest promoters.  And,

16  and so it's a question of -- and I don't believe he's prevented

17  from adding more promoters and I don't believe that there would

18  be any orderly resolution of that case, as I've already said.

19  But we're still looking at what would be best for everybody,

20  what's in their best interest.

21        So it's not based on any, any convenience on my part.

22  And we have looked at doing the motion to dismiss.  We did

23  answer and I think part of it is to try to move this case

24  forward and to see if we can knock out the preference because I

25  don't think that adds anything to the estate.  Now you have a

1   fraudulent transfer analysis that the class can do and then we

2   can decide based on the way fraudulent transfer claims are

3   structured versus unjust enrichment is this an interest of the

4   estate in the property that the Net Winners are alleged to have

5   received, by the way, from Mr. Baldiga's clients, who probably

6   in their mind thought that they would, if given enough time,

7   themselves be Net Winners.

8           So there's an irony in this case that the victims that

9   we're hearing about were actually trying to emulate the people

10  that they're now suing.  It was the same thought process in all

11  of them.  That's getting to the merits and I don't want to do

12  that.

13          THE COURT:  Why -- why don't -- why can't you move for

14  relief whether it's dismissal or summary judgment on narrower,

15  you know -- when you say "preferences," are you identifying the

16  direct transfers as opposed to triangular transfers, is that

17  what you're --

18          MR. RONA:  The preferences --

19          THE COURT:  -- you're calling the preferences?

20          MR. RONA:  -- as I understand the claim, is the same

21  triangular transactions that are alleged throughout against the

22  Net Winners except that if they occurred within 90 days, that's

23  deemed a preference.

24          Now I think the law is a little shakier on that claim,

25  but it's still a claim.  I mean, it states a claim and I'd have

1   to convince you that either we, they have alleged -- and we can

2   do this on a 12(c).  We could, we could file a motion to say

3   they have alleged ordinary course, for example.  This was the

4   ordinary course.  Whatever it was, it was alleged in their own

5   complaint continuous throughout the entire operation of

6   TelexFree, less than two years, and nothing changed during the

7   90-day preference period.

8         So we've -- they have actually alleged the ordinary

9   course defense.  So that could jettison that claim, but our

10  view is that would probably take too long.  So we'd be happy to

11  do it if we can't reach a resolution.  And I have discussed

12  this with Mr. Bennett, so I'm not suggesting that the trustee

13  is not open to any discussion to try to move this case along.

14  But that's where, what we're looking at.

15        So I appreciate Mr. Baldiga's desire to, to have this

16  train move quickly.  The problem is that we have a lot of other

17  considerations that don't necessarily apply to him.  And so

18  that's, that's what we've been looking at.

19        So I'm happy to, to style it however the Court wishes

20  and, and try to take a position that I think is clear and

21  consistent with the facts.  I mean, that's what -- I -- the law

22  is one thing.  It's understanding the facts and how they would

23  apply in this case.  And I would agree that the answer is

24  probably somewhere between the trustee's view and Mr. Baldiga's

25  view as to consistency of the transactions.  And so it does --

1   some of these details do matter, but I think there's also

2   fundamental questions as to if you take these allegations as

3   true -- and both sets allege similar things -- is this, was

4   this actually an interest in the estate when this is how you

5   got paid if you participated in TelexFree?  That's how you got

6   paid.

7           And so we haven't looked at the argument with the

8   benefit of knowing where we're going to be procedurally.  We're

9   looking at -- we've been looking at it as we have massive

10  claims from the trustee, hundreds of millions of dollars at

11  stake.  Mr. Baldiga is looking for the same hundreds of

12  millions of dollars in recovery and we're trying to sift

13  through one allegation at a time and decide are we alleged to

14  have, is this a fraudulent transfer?.  Is this unjust

15  enrichment?  Is this a preference?  And our -- can our clients

16  agree that this was an interest in the estate, given liability

17  consequences that, that will arise?

18          So I'm happy to style it however the Court wants.

19          THE COURT:  Well, I -- I -- I think I'm going to keep

20  these cases separate and to the extent that you want to raise

21  this issue or to take a position on this issue, you'll do it in

22  your, in your adversary proceeding.

23          MR. RONA:  Okay.  And if don't file --

24          THE COURT:  We'll keep it separate.

25          MR. RONA:  -- a motion to dismiss or something along

```
 1   those lines, would it be a just a statement of interest or some

 2   briefing for the Court?

 3              THE COURT:  You mean in this case?

 4              MR. RONA:  Yes.

 5              THE COURT:  Sure.  If you want to, if you want to file

 6   an amicus or some, some sort of position and assistance, you're

 7   welcome to do that.

 8              MR. RONA:  Okay.

 9              THE COURT:  But I think we're going to, in terms of

10   trying to officially or formally bind you to what happens here,

11   we'll leave it in the other adversary proceeding to take place

12   there.

13              MR. RONA:  Okay.

14              THE COURT:  All right?

15              MR. RONA:  Thank you, Your Honor.

16              THE COURT:  Okay.

17              Anything else we need to talk about today, Gentlemen,

18   Ladies?

19              MR. BALDIGA:  Just, just the date, Your Honor, if you

20   want to set that now or if not --

21              THE COURT:  I'll, I'll issue it after I get off the

22   bench.

23              MR. BALDIGA:  Thank you.

24              THE COURT:  Yeah, that's it.

25              MR. BALDIGA:  Thank you, Your Honor.
```

1       THE COURT:  Thank you, all.

2       THE COURTROOM DEPUTY:  Court is in recess.

3       THE COURT:  Good holidays.

4       MR. BENNETT:  Thank you, Your Honor.

5       MR. RONA:  Thank you, Judge.

6    (Proceedings concluded at 11:13:02 a.m.)

7

8

9

10

11                        CERTIFICATE

12       I, court approved transcriber, certify that the

13  foregoing is a correct transcript from the official electronic

14  sound recording of the proceedings in the above-entitled

15  matter.

16  /s/ *Janice Russell*                    December 23, 2016

17  Janice Russell, Transcriber                 Date

18

19

20

21

22

23

24

25