UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>TELEXFREE, LLC,<br>TELEXFREE, INC. and<br>TELEXFREE FINANCIAL, INC.,<br><br>Debtors. | Chapter 11 Cases<br><br>14-40987-MSH<br>14-40988-MSH<br>14-40989-MSH<br><br>Jointly Administered |
| STEPHEN B. DARR AS HE IS TRUSTEE OF<br>THE CHAPTER 11 ESTATES OF<br>TELEXFREE, LLC,<br>TELEXFREE, INC. and<br>TELEXFREE FINANCIAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BENJAMIN ARGUETA, ET AL<br>Defendant(s). | Adversary Proceeding<br>No.16-4006 |

MOTION BY TRUSTEE TO APPROVE STIPULATION OF SETTLEMENT BETWEEN
CHAPTER 11 TRUSTEE AND RANDY CROSBY AND SONYA CROSBY

Stephen Darr, the duly appointed Chapter 11 Trustee (the "Trustee") of TelexFree, LLC,

TelexFree, Inc. and TelexFree Financial, Inc. ("TelexFree" or the "Debtors"), respectfully

requests that the Court approve the stipulation ("Stipulation") attached hereto by and between the

Trustee and Randy Crosby ("R Crosby") and Sonya Crosby ("S Crosby" and, together with R

Crosby, the "Crosbys"), pursuant to Federal Rule of Bankruptcy Procedure 9019. The

Stipulation is anticipated to result in a recovery for the estates (the "Estates") of cash and other

property having an estimated value of approximately $250,000 in settlement of claims against

the Crosbys, who were higher level participants in the TelexFree scheme. In support of this

motion, the Trustee states as follows:

## BACKGROUND

1.      On April 13, 2014 (the "Petition Date"), the Debtors filed voluntary Chapter 11 petitions with the United States Bankruptcy Court for the District of Nevada.

2.      By order dated May 6, 2014, the Nevada Bankruptcy Court approved a motion to change venue filed by the Securities and Exchange Commission (the "SEC"). The cases were transferred to this Court on May 9, 2014.

3.      On May 30, 2014, the Court approved the motion of the Office of the United States Trustee to appoint a Chapter 11 trustee, and the Trustee was appointed on June 6, 2014.

4.      The Debtors ostensibly operated a "multi-level marketing" company with its headquarters in Marlborough, Massachusetts. It represented itself as being in the business of selling telephone service plans that use "voice over internet protocol" ("VoIP") technology. The sale of VoIP, however, constituted only a minor portion of their business; the Debtors' actual business was the recruitment of participants ("Participants") and the use of membership fees paid by new Participants to compensate earlier Participants. The Debtors operated a massive Ponzi and pyramid scheme which involved more than a million Participants from multiple countries.

5.      On November 25, 2015, the Court, on motion by the Trustee and after notice, entered an Order, as amended on December 21, 2015, finding that the Debtors were engaged in a Ponzi scheme and that this ruling was the law of the case in each of the jointly administered cases.

6.      On January 26, 2016, the Court entered an order approving a process for the determination of Participant claims based upon their involvement in the TelexFree scheme. The order approved the use of the "Net Equity" formula in determining a Participant's claim against

the Estates. Specifically, in determining whether a Participant was a Net Winner or Net Loser, the Court would consider amounts invested by a Participant, including amounts invested pursuant to Triangular Transactions,[1] less amounts received by the Participant from involvement in the scheme, including amounts received through Triangular Transactions.

I.     **The Crosbys' Involvement in TelexFree**

7.     R Crosby joined TelexFree in December 2012 and become a prominent Participant.

8.     R Crosby made daily marketing presentations and appeared in promotional videos for TelexFree. He also touted TelexFree through a website called "everybodygetspaidweekly.biz". S Crosby was also an active Participant in the scheme.

9.     According to the Debtors' records of Participant activity, R Crosby was allegedly a Net Winner in the aggregate amount of $487,620.61 resulting from both direct transactions with TelexFree and Triangular Transactions, and S Crosby was allegedly a Net Winner in the aggregate amount of $541,450.34 resulting from both direct transactions with TelexFree and Triangular Transactions.

II.     **Trustee Litigation**

10.     The Crosbys are named defendants in the domestic class action suit: (Adversary Proceeding Number 16-4006), in which the Trustee seeks the recovery of fraudulent and preferential transfers from all Net Winners located in the United States (the "Domestic Class Action").

---

[1] "Triangular Transactions" refer generally to transactions where a Participant purchased a TelexFree membership plan or phone package from the Debtors and paid the associated fee to the recruiting Participant, rather than directly to the Debtors, and the recruiting Participant satisfied the new recruit's invoice through the application of accumulated credits "earned" from involvement in the TelexFree program.

3

11.     The defendant class has been certified and class counsel has been retained in the Domestic Class Action.

### III.    SEC Litigation

12.     On April 15, 2014, the SEC commenced an action in the United States District Court for the District of Massachusetts against the Debtors and several high-level promoters, including R Crosby, styled as case no. 1:14-cv-11858-DJC (the "SEC Action"). The SEC Action seeks a determination that the defendants violated Section 10(b) of the Exchange Act, Rule 10(b)-5 thereunder, Section 17(a) of the Securities Act, and Section 5(a) and 5(c) of the Securities Act.

13.     On April 16, 2014, the District Court entered a Temporary Restraining Order, Order Freezing Assets and for Other Equitable Relief ("TRO"). The TRO ordered the defendants to hold and retain all funds and other assets in their direct or indirect control. The TRO also restrained the defendants from taking any action to dissipate such funds and other assets.

14.     On April 30, 2014, the District Court entered a Preliminary Injunction, Order Freezing Assets, and Order for Other Equitable Relief as to R Crosby ("Injunction"). The Injunction was modified by order dated November 7, 2014.

15.     The SEC has asserted claims against R Crosby in the amount of $530,009.11, with prejudgment interest thereon in the amount of $75,273.82, and a civil penalty in an undetermined amount (the "SEC Obligation").

16.     The Trustee, the SEC, and the Crosbys have entered into negotiations to resolve the SEC Obligation and the Trustee's claims against the Crosbys in the Domestic Class Action.

17.     As a result of these negotiations, the SEC has accepted R Crosby's proposal of settlement in the SEC Action (the "SEC Settlement"), subject to the entry of a proposed final judgment by the District Court.

18.     The SEC Settlement provides for the turnover of certain assets owned by the

Crosbys to the Trustee, as further described below.  The SEC Settlement further provides for R

Crosby to disgorge to the SEC the additional sum of $38,435 in twenty (20) installments, payable

quarterly, which funds will be paid into a Fair Fund established and operated by the SEC.  The SEC

Settlement contains other nonmonetary provisions including without limitation prohibition on R

Crosby's further involvement in the securities industry.

19.     The SEC brought suit against R Crosby only.  Because the SEC Settlement will

result in payment of less than the full amount of the SEC Obligation, the SEC has requested and

obtained personal financial statements from both R Crosby and S Crosby and the SEC Settlement

was based upon the representations made therein.

20.     As noted, the Stipulation provides for the turnover to the Trustee of most, but not all,

of the assets subject to the SEC Settlement.  Upon Bankruptcy Court approval of the Stipulation,

the SEC will present a proposed judgment ("Judgment") to the District Court for entry in the

SEC Action.

21.     The Stipulation between the Trustee and the Crosbys provides essentially as

follows:[2]

### Settlement

A.     Within thirty (30) days of entry of the judgment against R Crosby in the SEC

Action (the "Judgment"), the following institutions shall transfer to the Trustee the assets held in

the following accounts as noted below, and the Crosbys shall provide any cooperation required

to effectuate the transfer of such assets:

---

[2] To the extent of any inconsistencies between the Stipulation and this motion, the terms of the Stipulation shall govern.

| # | Name(s) on Account | Bank | Account No. | Amount |
|---|---|---|---|---|
| 1 | Randy Crosby | SunTrust Bank | xxx2437 | All funds in account |
| 2 | Randy Crosby and Sondra (Sonya) Crosby | SMC Management | xxw23 | $50,000 |

B.      Within sixty (60) days of entry of the Judgment, the Crosbys shall endorse and deliver titles and physical possession of the following motor vehicles ("Vehicles") to the Trustee at a time and place specified by the Trustee, but to be located within the State of Florida, and to be no sooner than 30 days after the transfer of the assets described in Section (A) above: (i) 2014 Porsche Cayenne Diesel, VIN WP1AF2A29ELA32898; and (ii) 2014 Porsche Panamera S Hybrid, VIN WP0AD2A79EL044276.

C.      The Crosbys release and waive any right, claim, interest, or exemption they may have in the Vehicles and the foregoing financial accounts in the amounts indicated above.

D.      Upon full compliance by the Crosbys with the terms set forth above, the Trustee shall have released the Crosbys, their successors, heirs and attorneys of any and all claims that the Trustee may have against the Crosbys.

E.      The Crosbys release and waive any and all claims they may have against the Trustee or the TelexFree estates, their successors, heirs, and attorneys.

F.      Nothing herein is intended to grant a release by the Trustee to any party other than R Crosby and S Crosby.

G.      The effectiveness of the Stipulation shall be contingent upon, and subject to, the entry of the Judgment.

### Basis for Approval of Stipulation

22.     Bankruptcy Rule 9019(a) provides, in relevant part, that "On the motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

Settlements and compromises are normal parts of the process of reorganization. While the decision to approve a particular settlement lies within the sound discretion of the Bankruptcy Court, the Court should give some deference to the business judgment of the estate representative. Jeffrey v. Desmond, 70 F.3d 183 (1st Cir. 1995).

23.     The Court of Appeals has described the test to be used by Bankruptcy Courts called upon to approve or reject proposed compromises and settlements as follows:

The bankruptcy judge has the authority to approve a compromise of a claim pursuant to Bankruptcy Rule 9019(a). The ultimate issue on appeal is whether the bankruptcy court abused its discretion when it approved the compromise, which is a process requiring the bankruptcy court to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." In re GHR Cos., 50 B.R. 925, 931 (Bankr. D. Mass. 1985) (quoting In re Boston & Providence R.R., 673 F.2d 11, 12 (1st Cir. 1982)). The specific factors which a bankruptcy court considers when making this determination include: (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise. In re Anolik, 107 B.R. 427, 429 (D. Mass. 1989). Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995).

24.     In determining whether the proposed settlement is fair and equitable, two principles should guide the court. First, "[c]ompromises are favored in bankruptcy[.]" 10 Lawrence P. King, *Collier on Bankruptcy*, ¶ 9019.01, at 9019-2 (15th ed. Rev. 1997) (citing *Marandas v. Bishop (In re Sassales)*, 160 B.R. 646, 653 (D. Ore. 1993)). *See also In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986) ("The law favors compromise and not litigation[.]"). Second, settlements should be approved if they fall above the lowest point on the continuum of reasonableness. "[The] responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised . . . but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2nd Cir. 1983); *In re Planned Protective*

*Services, Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991). Thus, the question is not whether a better settlement might have been achieved, or a better result reached if litigation pursued. Instead, the court should approve settlements that meet a minimal threshold of reasonableness. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994); 10 *Collier on Bankruptcy*, ¶ 9019.02, at 9019-4.

25.     The Trustee asserts that the Stipulation is fair and reasonable and should be approved by the Court. The Stipulation, in conjunction with the Judgment in the SEC Action, calls for the Crosbys to transfer and/or release any interest in substantially all of their known assets. The Crosbys will surrender both of their Vehicles. The SunTrust Bank account has an estimated balance of $131,000, and all of these funds will be turned over to the Trustee. The SMC Management account has an estimated balance of $88,000. Pursuant to the Stipulation and the SEC Settlement, $50,000 of these funds will be turned over to the Trustee. The balance of the funds in the SMC Management account will be retained by the Crosbys, partially in recognition of the fact that they are surrendering their Vehicles and will be without transportation. R Crosby, however, will be required to repay the $38,000 to the SEC over a five (5) year period. The Crosbys have no other known assets of any materiality, according to the financial statements provided to the SEC.

26.     The Stipulation provides for a substantial recovery for the estates, without the necessity of litigation or collection activity.

27.     Under the circumstances, the Trustee has concluded that the settlement is favorable to the Estates and should be approved.

Wherefore, the Trustee prays that this Court:

1.  Approve the Stipulation for the reasons set forth; and

2.  Grant such other relief as is just and proper.

STEPHEN DARR, TRUSTEE OF THE
CHAPTER 11 ESTATES OF EACH OF
THE DEBTORS
By his attorneys,

Andrew G. Lizotte (BBO #559609)
Murphy & King, Professional Corporation
One Beacon Street
Boston, MA  02108
(617) 423-0400
ALizotte@murphyking.com

Dated: March 21, 2018
739691

9