**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re: | Chapter 11 Cases |
| TELEXFREE, LLC, | 14-40987-MSH |
| TELEXFREE, INC. and | 14-40988-MSH |
| TELEXFREE FINANCIAL, INC., | 14-40989-MSH |
| Debtors. | Jointly Administered |
| STEPHEN B. DARR AS HE IS TRUSTEE OF THE CHAPTER 11 ESTATES OF TELEXFREE, LLC, TELEXFREE, INC. and TELEXFREE FINANCIAL, INC., | Adversary Proceeding No.16-4006 |
| Plaintiff, v. | |
| BENJAMIN ARGUETA, ET AL Defendant(s). | |

**MOTION BY TRUSTEE TO APPROVE STIPULATION OF SETTLEMENT BETWEEN CHAPTER 11 TRUSTEE AND SANTIAGO DE LA ROSA AND MADELYN GUERRERO**

Stephen Darr, the duly appointed Chapter 11 Trustee (the "Trustee") of TelexFree, LLC,

TelexFree, Inc. and TelexFree Financial, Inc. ("TelexFree" or the "Debtors"), respectfully

requests that the Court approve the stipulation ("Stipulation") attached hereto by and between the

Trustee and Santiago de la Rosa ("de la Rosa") and Madelyn Guerrero ("Guerrero" and, together

with de la Rosa, the "Defendants"), pursuant to Federal Rule of Bankruptcy Procedure 9019.

The Stipulation is anticipated to result in a recovery for the estates (the "Estates") having an

estimated value of approximately $1,100,000 in settlement of claims against the Defendants,

who were higher level participants in the TelexFree scheme.  In support of this motion, the

Trustee states as follows:

## BACKGROUND

1.      On April 13, 2014 (the "Petition Date"), the Debtors filed voluntary Chapter 11 petitions with the United States Bankruptcy Court for the District of Nevada.

2.      By order dated May 6, 2014, the Nevada Bankruptcy Court approved a motion to change venue filed by the Securities and Exchange Commission (the "SEC").  The cases were transferred to this Court on May 9, 2014.

3.      On May 30, 2014, the Court approved the motion of the Office of the United States Trustee to appoint a Chapter 11 trustee, and the Trustee was appointed on June 6, 2014.

4.      The Debtors ostensibly operated a "multi-level marketing" company with its headquarters in Marlborough, Massachusetts.  It represented itself as being in the business of selling telephone service plans that use "voice over internet protocol" ("VoIP") technology.   The sale of VoIP, however, constituted only a minor portion of their business; the Debtors' actual business was the recruitment of participants ("Participants") and the use of membership fees paid by new Participants to compensate earlier Participants.  The Debtors thereby operated a massive Ponzi and pyramid scheme which involved more than a million Participants from multiple countries.

5.      On November 25, 2015, the Court, on motion by the Trustee and after notice, entered an Order, as amended on December 21, 2015, finding that the Debtors were engaged in a Ponzi scheme and that this ruling was the law of the case in each of the jointly administered cases.

6.      On January 26, 2016, the Court entered an order approving a process for the determination of Participant claims based upon their involvement in the TelexFree scheme.  The

order approved the use of the "Net Equity" formula in determining a Participant's claim against

the Estates. Specifically, in determining whether a Participant was a Net Winner or Net Loser,

the Court would consider amounts invested by a Participant, including amounts invested

pursuant to Triangular Transactions,[1] less amounts received by the Participant from involvement

in the scheme, including amounts received through Triangular Transactions.

7.      According to the Debtors' records of Participant activity, de la Rosa was allegedly

a Net Winner in the aggregate amount of $543,175 on account of both direct transactions with

TelexFree and Triangular Transactions. Guerrero, the spouse of de la Rosa, was allegedly a Net

Winner in the aggregate amount of $42,556 on account of both direct transactions with

TelexFree and Triangular Transactions.

### I.      Trustee Litigation

8.      The Defendants are unnamed defendants in the domestic class action suit:

(Adversary Proceeding Number 16-4006), in which the Trustee seeks the recovery of fraudulent and

preferential transfers from all Net Winners located in the United States (the "Domestic Class

Action").

9.      The defendant class has been certified and class counsel has been retained in the

Domestic Class Action.

### II.     SEC Litigation

10.     On April 15, 2014, the SEC commenced an action in the United States District Court

for the District of Massachusetts (the "District Court") against the Debtors and several high-level

promoters, including de la Rosa, styled as case no. 1:14-cv-11858-DJC (the "SEC Action"). The

---

[1] "Triangular Transactions" refer generally to transactions where a Participant purchased a TelexFree
membership plan or phone package from the Debtors and paid the associated fee to the recruiting
Participant, rather than directly to the Debtors, and the recruiting Participant satisfied the new recruit's
invoice through the application of accumulated credits "earned" from involvement in the TelexFree
program.

SEC Action seeks a determination that the defendants violated Section 10(b) of the Exchange Act,

Rule 10(b)-5 thereunder, Section 17(a) of the Securities Act, and Section 5(a) and 5(c) of the

Securities Act.

11.     On April 16, 2014, the District Court entered a Temporary Restraining Order, Order

Freezing Assets and for Other Equitable Relief ("TRO") in the SEC Action.  The TRO ordered the

defendants to hold and retain all funds and other assets in their direct or indirect control.   The TRO

also restrained the defendants from taking any action to dissipate such funds and other assets.

12.     On April 30, 2014, the District Court entered a Preliminary Injunction, Order

Freezing Assets, and Order for Other Equitable Relief as to de la Rosa ("Injunction").  The

Injunction was modified by order dated June 12, 2014.

13.     On November 10, 2017, de la Rosa filed a motion to dismiss the SEC Action as to

him, which was denied by order of the District Court dated March 16, 2018.

14.     The SEC has asserted claims against de la Rosa in the amount of $1,527,770, with

prejudgment interest thereon in the amount of $218,264.91, for a total of $1,746,034.91 (the "SEC

Obligation").

15.     The SEC and the Trustee have identified certain personal property and real property

in which the Defendants, or entities controlled by the Defendants, maintain an interest, as further set

forth herein.

16.     The Trustee, the SEC, and the Defendants have entered into negotiations respecting

a settlement of the SEC Obligation and the claims asserted by the Trustee against the Defendants in

the Domestic Class Action.  As a result of these negotiations, the SEC has accepted de la Rosa's

proposal of settlement, subject to the entry of a proposed final judgment by the District Court, and

the Trustee and the Defendants have entered into the Stipulation.

17.    The SEC brought suit against de la Rosa only.  Because the SEC settlement will result in payment of less than the full amount of the SEC Obligation, the SEC has requested and obtained personal financial statements from both Defendants and the SEC settlement was based upon the representations made therein.

18.    Upon Bankruptcy Court approval of the Stipulation, the SEC will present a proposed judgment to the District Court for entry in the SEC Action.

19.    The Stipulation between the Trustee and the Defendants provides essentially as follows:[2]

### Settlement

A.    Within thirty (30) days of entry of the judgment against de la Rosa in the SEC Action (the "Judgment"), the following institutions shall transfer to the Trustee the assets held in the following accounts as noted below, and the Defendants shall provide any cooperation required to effectuate the transfer of such assets:

| # | Name(s) on Account | Bank | Account No. | Amount |
|---|---|---|---|---|
| 1 | Santiago de la Rosa | East Boston Savings Bank | xxxxxx5995 | All funds in account |
| 2 | Santiago de la Rosa | East Boston Savings Bank | xxxxx7974 | All funds in account |
| 3 | Magica Media Corp. | SMC Management | xxw23 | All funds in account |

B.    Within sixty (60) days of entry of the Judgment, the Defendants shall transfer the additional sum of $100,000 to the Trustee.

---

[2] To the extent of any inconsistencies between the Stipulation and this motion, the terms of the Stipulation shall govern.

C.      The Defendants release and waive any right, claim, interest, or exemption they may have in the foregoing financial accounts.

D.      Upon full compliance by the Defendants with the terms set forth above, the Trustee shall have released the Defendants, their successors, heirs and attorneys of any and all claims that the Trustee may have against the Defendants.

E.      The Defendants release and waive any and all claims they may have against the Trustee or the TelexFree Estates, their successors, heirs, and attorneys.

F.      Nothing herein is intended to grant a release by the Trustee to any party other than Santiago de la Rosa and Madelyn Guerrero.

G.      The effectiveness of the Stipulation shall be contingent upon, and subject to, the entry of the Judgment.

### Basis for Approval of Stipulation

20.     Bankruptcy Rule 9019(a) provides, in relevant part, that "On the motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Settlements and compromises are normal parts of the process of reorganization.  While the decision to approve a particular settlement lies within the sound discretion of the Bankruptcy Court, the Court should give some deference to the business judgment of the estate representative. Jeffrey v. Desmond, 70 F.3d 183 (1st Cir. 1995).

21.     The Court of Appeals has described the test to be used by Bankruptcy Courts called upon to approve or reject proposed compromises and settlements as follows:

The bankruptcy judge has the authority to approve a compromise of a claim pursuant to Bankruptcy Rule 9019(a).  The ultimate issue on appeal is whether the bankruptcy court abused its discretion when it approved the compromise, which is a process requiring the bankruptcy court to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal."  In re GHR Cos., 50 B.R. 925, 931 (Bankr. D. Mass. 1985) (quoting In re Boston & Providence R.R., 673 F.2d. 11, 12 (1st Cir.

1982)).  The specific factors which a bankruptcy court considers when making this determination include: (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise.  In re Anolik, 107 B.R. 427, 429 (D. Mass. 1989).  Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995).

22.    In determining whether the proposed settlement is fair and equitable, two principles should guide the court.  First, "[c]ompromises are favored in bankruptcy[.]" 10 Lawrence P. King, *Collier on Bankruptcy*, ¶ 9019.01, at 9019-2 (15th ed. Rev. 1997) (citing *Marandas v. Bishop (In re Sassales)*, 160 B.R. 646, 653 (D. Ore. 1993)).  *See also In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986) ("The law favors compromise and not litigation[.]").  Second, settlements should be approved if they fall above the lowest point on the continuum of reasonableness.  "[The] responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised  . . .  but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2nd Cir. 1983); *In re Planned Protective Services, Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991).  Thus, the question is not whether a better settlement might have been achieved, or a better result reached if litigation pursued. Instead, the court should approve settlements that meet a minimal threshold of reasonableness. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994); 10 *Collier on Bankruptcy*, ¶ 9019.02, at 9019-4.

23.    The Trustee asserts that the Stipulation is fair and reasonable and should be approved by the Court.  The Stipulation provides for a recovery in excess of the Defendants' net winnings, as determined by the Trustee, without the necessity of litigation or collection activity.

24.    The Stipulation, in conjunction with the Judgment in the SEC Action, provides for the Defendants to transfer and/or release to the Trustee any interest they have in substantially all of

their known liquid assets.  The Defendants have an interest in motor vehicles but these assets appear to have little or no value in excess of encumbrances.  The Defendants jointly own real property located at 233 Judge Road in Lynn, Massachusetts that was purchased for $500,000 approximately four to five years ago that is unencumbered.  The Defendants would likely assert, however, that their interest in the real property is subject to a claim of homestead exemption.   Despite the likely claim of exemption, the Defendants have agreed to pay an additional sum of $100,000, which funds are expected to be derived from a borrowing secured by the real property. The Defendants have no other known assets of any materiality, according to the financial statements provided to the SEC.

25.    Under the circumstances, the Trustee has concluded that the settlement is favorable to the Estates and should be approved.

Wherefore, the Trustee prays that this Court:

1.  Approve the Stipulation for the reasons set forth; and

2.  Grant such other relief as is just and proper.


STEPHEN DARR, TRUSTEE OF THE
CHAPTER 11 ESTATES OF EACH OF
THE DEBTORS
By his attorneys,

 /s/ Andrew G. Lizotte
Andrew G. Lizotte (BBO #559609)
Murphy & King, Professional Corporation
One Beacon Street
Boston, MA  02108
(617) 423-0400
ALizotte@murphyking.com

Dated: June 29, 2018
744077