**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re: | Chapter 11 Cases |
| TELEXFREE, LLC, | 14-40987-MSH |
| TELEXFREE, INC. and | 14-40988-MSH |
| TELEXFREE FINANCIAL, INC., | 14-40989-MSH |
| Debtors. | Jointly Administered |
| STEPHEN B. DARR AS HE IS TRUSTEE OF THE CHAPTER 11 ESTATES OF TELEXFREE, LLC, TELEXFREE, INC. and TELEXFREE FINANCIAL, INC., | Adversary Proceeding No.16-4032 |
| Plaintiff, v. | |
| CARLOS WANZELER, ET AL, Defendant(s). | |
| STEPHEN B. DARR AS HE IS TRUSTEE OF THE CHAPTER 11 ESTATES OF TELEXFREE, LLC, TELEXFREE, INC. and TELEXFREE FINANCIAL, INC., | Adversary Proceeding No.16-4006 |
| Plaintiff, v. | |
| BENJAMIN ARGUETA, ET AL Defendant(s). | |

**MOTION BY TRUSTEE TO APPROVE SETTLEMENT AGREEMENT AMONG UNITED STATES OF AMERICA, CHAPTER 11 TRUSTEE, PRISCILA COSTA AND CARLOS COSTA**

Stephen Darr, the duly appointed Chapter 11 Trustee (the "Chapter 11 Trustee") of

TelexFree, LLC, TelexFree, Inc. and TelexFree Financial, Inc. ("TelexFree" or the "Debtors"),

respectfully requests that the Court approve the Settlement Agreement ("Agreement") attached hereto by and among the United States of America ("United States"), the Chapter 11 Trustee, Carlos Costa ("C Costa") and Priscila Costa ("P Costa"), pursuant to Federal Rule of Bankruptcy Procedure 9019. The Agreement provides for the transfer of eight (8) condominiums by P Costa to the Chapter 11 Trustee in satisfaction of the trustee's asserted claims against P Costa, and resolves a dispute with P Costa as to her alleged interest in property subject to forfeiture proceedings commenced by the United States. C Costa is a party to the Agreement only to confirm that he has no interest in the properties being transferred to the Chapter 11 Trustee and will not receive any release or discharge as part of the settlement. In further support of this motion, the Chapter 11 Trustee states as follows:

## BACKGROUND

1. On April 13, 2014 (the "Petition Date"), the Debtors filed voluntary Chapter 11 petitions with the United States Bankruptcy Court for the District of Nevada.

2. By order dated May 6, 2014, the Nevada Bankruptcy Court approved a motion to change venue filed by the Securities and Exchange Commission (the "SEC"). The cases were transferred to this Court on May 9, 2014.

3. On May 30, 2014, the Court approved the motion of the Office of the United States Trustee to appoint a trustee, and the Chapter 11 Trustee was appointed on June 6, 2014.

4. The Debtors ostensibly operated a "multi-level marketing" company with its headquarters in Marlborough, Massachusetts. It represented itself as being in the business of selling telephone service plans that use "voice over internet protocol" ("VoIP") technology. The sale of VoIP, however, constituted only a minor portion of their business; the Debtors' actual business was the recruitment of participants ("Participants"). The Debtors operated a massive

Ponzi and pyramid scheme which involved upwards of a million Participants from multiple countries.

5.  On November 25, 2015, the Court, on motion by the Chapter 11 Trustee and after notice, entered an Order, as amended on December 21, 2015, finding that the Debtors were engaged in a Ponzi scheme and that this ruling was the law of the case in each of the jointly administered cases.

6.  On January 26, 2016, the Court entered an order approving a process for the determination of Participant claims based upon their involvement in the TelexFree scheme. The order approved the use of the "Net Equity" formula in determining a Participant's claim against the estates. Specifically, in determining whether a Participant was a Net Winner or Net Loser, the Court would consider amounts invested by a Participant, including amounts invested pursuant to Triangular Transactions,[1] less amounts received by the Participant from involvement in the scheme, including amounts received through Triangular Transactions.

## I. Costa's Involvement in TelexFree

7.  P Costa was a promoter of TelexFree and is the daughter of C Costa, a former principal of the Debtors. According to the Debtors' records of Participant activity that was reconstructed by the Chapter 11 Trustee, P Costa was a Net Winner in the aggregate amount of $542,298 on account of both direct transactions with TelexFree and Triangular Transactions.

## II. Trustee Litigation

8.  P Costa is the subject of two separate actions brought by the Chapter 11 Trustee (the "Adversary Proceedings").

---

[1] "Triangular Transactions" refer generally to transactions where a Participant purchased a TelexFree membership plan or phone package from the Debtors and paid the associated fee to the recruiting Participant, rather than directly to the Debtors, and the recruiting Participant satisfied the new recruit's invoice through the application of accumulated credits "earned" from involvement in the TelexFree program.

9. P Costa is a defendant in the domestic class action suit, adversary proceeding number 16-4006, in which the Chapter 11 Trustee seeks the recovery of fraudulent and preferential transfers from all Net Winners located within the United States (the "Domestic Class Action"). The defendant class has been certified and class counsel has been retained.

10. P Costa is one of many named defendants in adversary proceeding number 16-4032 (the "4032 Action"), which seeks recovery from P Costa for alleged fraudulent transfers and related claims in furtherance of the TelexFree scheme. This action had been stayed because of the pendency of the criminal proceedings against the Debtors' principals.

### III. District Court Litigation

11. On September 8, 2016, a federal grand jury sitting in the District of Massachusetts returned a seventeen-count First Superseding Indictment charging James Merrill and Carlos Wanzeler, with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349 (Count One); Wire Fraud, in violation of 18 U.S.C. § 1343 (Counts Two through Nine); and Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of 18 U.S.C. §§ 1957(a) and 2 (Counts Ten through Seventeen).

12. The First Superseding Indictment contained a Forfeiture Allegation, which gave notice that the United States sought forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of one or more of the offenses charged in Counts One through Nine of the First Superseding Indictment, of any property, real or personal, that constitutes, or is derived from, proceeds traceable to the commission of the offenses.

13. In addition, the First Superseding Indictment contained a Money Laundering Forfeiture Allegation, which gave notice that the United States sought forfeiture, pursuant to 18 U.S.C. § 982(a)(1), upon conviction of one or more of the offenses alleged in Counts Ten

through Seventeen of the First Superseding Indictment, of any property, real or personal, involved in the offenses, and any property traceable to such property.

14. On October 24, 2016, at a hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant James Merrill ("Merrill") pled guilty to Counts One through Nine of the First Superseding Indictment, pursuant to a written plea agreement signed by Merrill on October 24, 2016.[2]

15. In Section 8 of the written plea agreement, Merrill agreed to the forfeiture of the assets listed in Exhibit A to the plea agreement, which included the following real properties:

a. the real property described as Units 101, 102, 103, 201, 202, 301, 302, 303, 304, and 402 of the Beverly Condominiums located at 900 NW 45th Street, Pompano Beach FL 33064-1162 (the "Beverly Condominiums").

16. Merrill admitted that the assets listed in Exhibit A to the plea agreement, including the Beverly Condominiums, are subject to forfeiture on the grounds that they are property, real or personal, that constituted, or were derived from, proceeds traceable to the commission of the offenses charged in Counts One through Nine of the First Superseding Indictment, and Merrill consented to the entry of an order of forfeiture against such property.

17. On March 21, 2017, the United States filed an Assented-To Motion for Preliminary Order of Forfeiture in the United States District Court for the District of Massachusetts (the "District Court") seeking forfeiture of numerous assets, including the Beverly Condominiums.

18. On March 22, 2017, the District Court granted the Motion for Preliminary Order of Forfeiture. Upon entry of a final order of forfeiture, ownership of the Beverly Condominiums would vest in the United States.

---

[2] The United States agreed to dismiss Counts Ten through Seventeen of the First Superseding Indictment following the Court's imposition of Merrill's sentence.

5

19. On March 22, 2017, the District Court sentenced Merrill to 72 months imprisonment and three years' supervised release.

20. On July 11, 2017, the District Court entered a Restitution Order against Merrill, which provided that based upon the complexity and volume of restitution payments to victims in this case, the Chapter 11 Trustee shall administer and pay restitution to Participants holding allowed claims (the "Restitution Order").

21. Notice of the Preliminary Order of Forfeiture was sent to all interested parties and published on the government website www.forfeiture.gov for thirty (30) consecutive calendar days, beginning on May 16, 2017, and ending on June 14, 2017, and also beginning on June 16, 2017, and ending on July 15, 2017.

22. The Beverly Condominiums are titled in the name of P Costa and, on September 15, 2017, P Costa filed a verified claim asserting an interest in the Beverly Condominiums. C Costa has confirmed the absence of any past or current ownership interest in the Beverly Condominiums.

23. No other party has filed a petition claiming an interest in the Beverly Condominiums, and the time within which to do so has expired.

24. The United States, the Chapter 11 Trustee, and P Costa have entered into negotiations to resolve issues respecting the competing claims in the Beverly Condominiums and the disposition of any proceeds from the sale or refinance of such properties. As a result of such negotiations, the parties have entered into the attached Agreement, which provides in substance as follows:[3]

---

[3] To the extent of any inconsistencies between the Agreement and this motion, the terms of the Agreement attached as Exhibit A shall govern.

6

**Settlement**

25.	Upon execution by the Parties, the Agreement shall be filed with the District Court.  The District Court and the Bankruptcy Court shall retain jurisdiction to enforce the provisions of the Agreement.

26.	Upon execution of the Agreement by the Parties, the United States shall file an assented-to motion to modify the restraining order entered against the Beverly Condominiums to allow execution of a deed transferring ownership of Units 102, 103, 201, 202, 301, 302, 304, and 402 of the Beverly Condominiums to the Chapter 11 Trustee (the "Transferred Condominiums").  Within 10 days after the Court grants the modification to the restraining order, P Costa shall deliver to her attorney, to hold in escrow, the original executed deed signed by P Costa.

27.	Upon execution by the Parties and confirmation that the deed has been delivered to P Costa's counsel, the Chapter 11 Trustee shall file a motion in the Adversary Proceedings requesting that the Court approve a compromise of the claims asserted against P Costa in the Adversary Proceedings on the terms outlined in this Agreement.

28.	If the Bankruptcy Court denies the motion to approve, the Agreement shall be null and void.

29.	If the Bankruptcy Court grants the motion to approve, then within 10 days after the date of the Bankruptcy Court's order granting the motion, P Costa's attorney shall provide the original deed transferring ownership of the Transferred Condominiums to the Chapter 11 Trustee.  P Costa shall also provide documentation to the Chapter 11 Trustee regarding tenants, or lease agreements, or other property documents regarding the Transferred Condominiums as so requested by the Chapter 11 Trustee.  In providing the deed for the Transferred Condominiums, P

Costa releases and waives any right, claim, interest, or exemption in the Transferred Condominiums or their proceeds.

30. If the Bankruptcy Court grants the motion to approve, then upon delivery of the deed transferring ownership of the Transferred Condominiums to the Chapter 11 Trustee, the United States shall:

   a. file a motion with the District Court to vacate the Preliminary Order of Forfeiture as to the Beverly Condominiums, which shall expressly allow the return of Units 101 and 303 of the Beverly Condominiums (the "Retained Condominiums") to P Costa;

   b. file a motion with the District Court to vacate the Restraining Order as to the Beverly Condominiums;

   c. provide the Chapter 11 Trustee a release of *lis pendens* against the Transferred Condominiums;

   d. provide P Costa a release of *lis pendens* against the Retained Condominiums, which P Costa shall record.

31. If the Bankruptcy Court grants the motion to approve, then the Chapter 11 Trustee shall:

   a. Record the executed deed transferring ownership of the Transferred Condominiums to the Chapter 11 Trustee, and record the release of *lis pendens* executed by the United States as to the Transferred Condominiums;

   b. Liquidate the Transferred Condominiums, and utilize all net proceeds from the sale of the Transferred Condominiums to pay allowed administrative expenses of the Chapter 11 Trustee and his professionals and to pay the allowed claims of victims in accordance with the terms of the Restitution Order entered in the above-captioned

      criminal case.

      32.    The Parties agree that the settlement of this matter upon the terms and conditions set forth herein is in full, final, and complete satisfaction of any and all claims arising out of the forfeiture proceeding as to the Beverly Condominiums, and out of the claims asserted against P Costa in the Adversary Proceedings.

      33.    The settlement explicitly does not release or satisfy any claims that the Chapter 11 Trustee may have against C Costa.

      34.    P Costa unconditionally releases, indemnifies, and holds harmless the United States, and its officers, agents, employees, and representatives, both past and present, including, but not limited to, the United States Department of Justice, the United States Attorney's Office and Department of Homeland Security, including Homeland Security Investigations, as well as any state, county, or local law enforcement agencies whose personnel assisted in the forfeiture proceedings against the Beverly Condominiums, from any and all claims, demands, damages, causes of actions or suits, of whatever kind and/or description and wheresoever situated, which might now or ever exist by reason of, or grow out of or affect, directly or indirectly, the seizure, restraint, and forfeiture proceedings against the Beverly Condominiums or the provisions of the instant Agreement.

      35.    P Costa unconditionally releases and waives any claims she may have against the Chapter 11 Trustee or the bankruptcy estates of TelexFree.

      36.    P Costa unconditionally releases, indemnifies, and holds harmless the Chapter 11 Trustee and his agents, employees, and representatives, both past and present, from any and all claims, demands, damages, causes of actions or suits, of whatever kind and/or description and wheresoever situated, which might now or ever exist by reason of, or grow out of or affect, directly

or indirectly, the Beverly Condominiums or the provisions of the instant Agreement.

37. As set forth in the Agreement, the Parties acknowledge that the Agreement does not constitute an admission by P Costa of any facts or liability or wrongdoing, and P Costa asserts that she is an innocent owner of, or bona fide purchaser for value of, the Beverly Condominiums.

38. C Costa unconditionally releases and waives any right, claim, interest, or exemption in the Beverly Condominiums or their proceeds and denies any past or current ownership interest in the Beverly Condominiums.

39. The Chapter 11 Trustee agrees that the Agreement permanently resolves all claims against P Costa that were raised or could have been raised in the Adversary Proceedings. Within five (5) days of entry of a final, nonappealable order of the District Court and the Bankruptcy Court approving the Agreement and P Costa's full compliance with the terms of the Agreement, the Chapter 11 Trustee will file a Stipulation of Dismissal of Prejudice as to his claims against P Costa in the Adversary Proceedings.

**Basis for Approval of Agreement**

40. Bankruptcy Rule 9019(a) provides, in relevant part, that "On the motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Settlements and compromises are normal parts of the process of reorganization. While the decision to approve a particular settlement lies within the sound discretion of the Bankruptcy Court, the Court should give some deference to the business judgment of the estate representative. *Jeffrey v. Desmond*, 70 F.3d 183 (1st Cir. 1995).

41. The Court of Appeals has described the test to be used by Bankruptcy Courts called upon to approve or reject proposed compromises and settlements as follows:

> The bankruptcy judge has the authority to approve a compromise of a claim pursuant to Bankruptcy Rule 9019(a). The ultimate issue on appeal is whether the bankruptcy court abused its discretion when it approved the compromise, which is a process requiring the bankruptcy court to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." In re GHR Cos., 50 B.R. 925, 931 (Bankr. D. Mass. 1985) (quoting In re Boston & Providence R.R., 673 F.2d. 11, 12 (1st Cir. 1982)). The specific factors which a bankruptcy court considers when making this determination include: (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise. In re Anolik, 107 B.R. 427, 429 (D. Mass. 1989).

Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995).

42. In determining whether the proposed settlement is fair and equitable, two principles should guide the court. First, "[c]ompromises are favored in bankruptcy[.]" 10 Lawrence P. King, Collier on Bankruptcy, ¶ 9019.01, at 9019-2 (15th ed. Rev. 1997) (citing Marandas v. Bishop (In re Sassales), 160 B.R. 646, 653 (D. Ore. 1993)). See also In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986) ("The law favors compromise and not litigation[.]"). Second, settlements should be approved if they fall above the lowest point on the continuum of reasonableness. "[The] responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised . . . but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2nd Cir. 1983); In re Planned Protective Services, Inc., 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991). Thus, the question is not whether a better settlement might have been achieved, or a better result reached if litigation pursued. Instead, the court should approve settlements that meet a minimal threshold of reasonableness. Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994); 10 Collier on Bankruptcy, ¶ 9019.02, at 9019-4.

Document      Page 12 of 12

43. The Chapter 11 Trustee asserts that the Agreement is fair and reasonable and should be approved by the Court. The Agreement provides for the turnover by P Costa to the Chapter 11 Trustee of eight (8) condominiums in the Beverly Condominium complex. P Costa purchased the Beverly Condominiums in 2013 for an aggregate price of $730,000. Comparative market analysis suggests that the Transferred Condominiums have a value in the range of $100,000 each, such that the aggregate value is in excess of the alleged Net Winner claims against P Costa. Under the Agreement, P Costa will retain two of the Beverly Condominiums as well as a condominium located at 4311 Crystal Lake Drive in Pompano Beach, Florida in which she maintains a fifty percent (50%) interest.

44. The Chapter 11 Trustee submits that the Agreement represents a fair recovery for the estates given the claims asserted, and the settlement will resolve outstanding issues without the costs and delays associated with further litigation.

WHEREFORE, the Chapter 11 Trustee prays that this Court:

1. Approve the Agreement for the reasons set forth; and
2. Grant such other relief as is just and proper.

> STEPHEN DARR, TRUSTEE OF THE
> CHAPTER 11 ESTATES OF EACH OF
> THE DEBTORS
> By his attorneys,
>
> /s/ Andrew G. Lizotte
> Harold B. Murphy (BBO #362610)
> Andrew G. Lizotte (BBO #559609)
> Murphy & King, Professional Corporation
> One Beacon Street
> Boston, MA  02108
> (617) 423-0400
> ALizotte@murphyking.com

Dated: February 13, 2019
753783