# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: | Chapter 11 Cases |
| TELEXFREE, LLC, | 14-40987-MSH |
| TELEXFREE, INC. and | 14-40988-MSH |
| TELEXFREE FINANCIAL, INC., | 14-40989-MSH |
| Debtors. | Jointly Administered |
| | |
| STEPHEN B. DARR AS HE IS TRUSTEE OF THE CHAPTER 11 ESTATES OF TELEXFREE, LLC, TELEXFREE, INC. and TELEXFREE FINANCIAL, INC., | Adversary Proceeding No.16-4006 |
| Plaintiff, | |
| v. | |
| BENJAMIN ARGUETA, ET AL | |
| Defendant(s). | |

## MOTION BY TRUSTEE TO APPROVE STIPULATION OF SETTLEMENT BETWEEN CHAPTER 11 TRUSTEE AND FAITH SLOAN

Stephen Darr, the duly appointed Chapter 11 Trustee (the "Trustee") of TelexFree, LLC, TelexFree, Inc. and TelexFree Financial, Inc. ("TelexFree" or the "Debtors"), respectfully requests that the Court approve the stipulation ("Stipulation") attached hereto by and between the Trustee and Faith Sloan ("Sloan"), pursuant to Federal Rule of Bankruptcy Procedure 9019. The Stipulation is anticipated to result in a minimum recovery for the estates (the "Estates") of approximately $31,000, with the potential for additional recoveries on account of a judgment in favor of the Securities and Exchange Commission ("SEC") against Sloan. In further support of this motion, the Trustee states as follows:

## BACKGROUND

1. On April 13, 2014 (the "Petition Date"), the Debtors filed voluntary Chapter 11 petitions with the United States Bankruptcy Court for the District of Nevada.

2. By order dated May 6, 2014, the Nevada Bankruptcy Court approved a motion to change venue filed by the Securities and Exchange Commission (the "SEC"). The cases were transferred to this Court on May 9, 2014.

3. On May 30, 2014, the Court approved the motion of the Office of the United States Trustee to appoint a Chapter 11 trustee, and the Trustee was appointed on June 6, 2014.

4. The Debtors operated a "multi-level marketing" company with its headquarters in Marlborough, Massachusetts. It represented itself as being in the business of selling telephone service plans that use "voice over internet protocol" ("VoIP") technology. The sale of VoIP was, however, incidental. Revenues from the sale of VoIP plans, which was ostensibly the product being sold by TelexFree, constituted less than one percent of total revenues, and less than one percent of the minutes available on VoIP plans that were sold were actually used. The primary business of TelexFree was the sale of membership plans to persons who joined TelexFree ("Participants") and the use of membership fees paid by new Participants to make payments to earlier Participants.

5. On November 25, 2015, the Court, on motion by the Trustee and after notice, entered an Order, as amended on December 21, 2015, finding that the Debtors were engaged in a Ponzi scheme and that this ruling was the law of the case in each of the jointly administered cases.

6. On January 26, 2016, the Court entered an order approving a process for the determination of Participant claims based upon their involvement in the TelexFree scheme. The

order approved the use of the "Net Equity" formula in determining a Participant's claim against the Estates. Specifically, in determining whether a Participant was a Net Winner or Net Loser, the Court would consider amounts invested by a Participant, including amounts invested pursuant to Triangular Transactions,[1] less amounts received by the Participant, including amounts received through Triangular Transactions.

7. According to the Debtors' records of Participant activity, Sloan was allegedly a Net Winner in the aggregate amount of $710,319 on account of both direct transactions with TelexFree and Triangular Transactions.

### I. Trustee Litigation

8. Sloan is a named defendant in the domestic class action suit: (Adversary Proceeding Number 16-4006), in which the Trustee seeks the recovery of fraudulent and preferential transfers from all Net Winners located in the United States (the "Domestic Class Action").

9. The defendant class has been certified and class counsel has been retained in the Domestic Class Action.

### II. SEC Litigation

10. On April 15, 2014, the SEC commenced an action in the United States District Court for the District of Massachusetts (the "District Court") against the Debtors and several alleged high-level promoters, including Sloan, styled as case no. 1:14-cv-11858-DJC (the "SEC Action"). The SEC Action seeks a determination that the defendants violated Section 10(b) of the Exchange Act, Rule 10(b)-5 thereunder, Section 17(a) of the Securities Act, and Section 5(a) and 5(c) of the Securities Act.

---

[1] "Triangular Transactions" refer generally to transactions where a Participant purchased a TelexFree membership plan or phone package from the Debtors and paid the associated fee to the recruiting Participant, rather than directly to the Debtors, and the recruiting Participant satisfied the new recruit's invoice through the application of accumulated credits "earned" from involvement in the TelexFree program.

3

11. The SEC has asserted claims against Sloan in the amount of $650,334, with prejudgment interest thereon in the amount of $120,621, and a civil penalty in the amount of $7,500 for a total of $778,455 (the "SEC Obligation").

12. The SEC and the Trustee have identified certain personal property in which Sloan maintains an interest, as further set forth herein.

13. The Trustee, the SEC, and Sloan have entered into negotiations respecting a settlement of the SEC Obligation and the claims asserted by the Trustee against Sloan in the Domestic Class Action. As a result of these negotiations, the SEC has accepted Sloan's proposal of settlement, subject to the entry of a proposed final judgment by the District Court, and the Trustee and Sloan have entered into the Stipulation.

14. The SEC has requested and obtained a personal financial statement from Sloan and the SEC settlement was based upon the representations made therein.

15. Upon Bankruptcy Court approval of the Stipulation, the SEC will present a proposed judgment to the District Court for entry in the SEC Action.

16. The Stipulation between the Trustee and Sloan provides essentially as follows:[2]

**Settlement**

A. Within thirty (30) days of entry of the judgment against Sloan in the SEC Action (the "Judgment"), the following institutions shall transfer to the Trustee the assets held in the following account noted below, and Sloan shall provide any cooperation required to effectuate the transfer of such assets:

---

[2] To the extent of any inconsistencies between the Stipulation and this motion, the terms of the Stipulation shall govern.

| # | Name(s) on Account | Bank | Account No. | Amount |
|---|---|---|---|---|
| 1 | Faith Sloan | Bank of America | Xxx2437 | All funds in account |

B. Upon entry of the Judgment, counsel for Sloan shall turn over to the Trustee the sum of $30,000 presently held in escrow.

C. Sloan and her agents release and waive any right, claim, interest, or exemption they may have in the foregoing assets.

D. Upon full payment by Sloan of the SEC Obligation, the Trustee shall release Sloan, and her successors, heirs and attorneys of any and all claims that the Trustee may have against Sloan.

E. Sloan releases and waives any and all claims she may have against the Trustee or the TelexFree Estates, their successors, heirs, and attorneys.

F. The Trustee shall not assess any costs or expenses against the assets recovered pursuant to this settlement, other than the Trustee's commission and the fees and expenses associated with the liquidation and distribution of the assets and proceeds thereof recovered in the settlement, including reasonable attorneys' fees. No other administrative claims shall be charged against the funds attributable to the SEC Obligation.

G. The effectiveness of the Stipulation shall be contingent upon, and subject to, the entry of the Judgment.

**Basis for Approval of Stipulation**

17. Bankruptcy Rule 9019(a) provides, in relevant part, that "On the motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Settlements and compromises are normal parts of the process of reorganization. While the

decision to approve a particular settlement lies within the sound discretion of the Bankruptcy Court, the Court should give some deference to the business judgment of the estate representative. Jeffrey v. Desmond, 70 F.3d 183 (1st Cir. 1995).

18. The Court of Appeals has described the test to be used by Bankruptcy Courts called upon to approve or reject proposed compromises and settlements as follows:

The bankruptcy judge has the authority to approve a compromise of a claim pursuant to Bankruptcy Rule 9019(a). The ultimate issue on appeal is whether the bankruptcy court abused its discretion when it approved the compromise, which is a process requiring the bankruptcy court to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." In re GHR Cos., 50 B.R. 925, 931 (Bankr. D. Mass. 1985) (quoting In re Boston & Providence R.R., 673 F.2d. 11, 12 (1st Cir. 1982)). The specific factors which a bankruptcy court considers when making this determination include: (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise. In re Anolik, 107 B.R. 427, 429 (D. Mass. 1989). Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995).

19. In determining whether the proposed settlement is fair and equitable, two principles should guide the court. First, "[c]ompromises are favored in bankruptcy[.]" 10 Lawrence P. King, *Collier on Bankruptcy*, ¶ 9019.01, at 9019-2 (15th ed. Rev. 1997) (citing *Marandas v. Bishop (In re Sassales)*, 160 B.R. 646, 653 (D. Ore. 1993)). *See also In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986) ("The law favors compromise and not litigation[.]"). Second, settlements should be approved if they fall above the lowest point on the continuum of reasonableness. "[The] responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised . . . but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2nd Cir. 1983); *In re Planned Protective Services, Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991). Thus, the question is not whether a

better settlement might have been achieved, or a better result reached if litigation pursued. Instead, the court should approve settlements that meet a minimal threshold of reasonableness. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994); 10 *Collier on Bankruptcy*, ¶ 9019.02, at 9019-4.

20. The Trustee asserts that the Stipulation is fair and reasonable and should be approved by the Court.

21. Based upon the personal financial statement provided by Sloan, the settlement accounts for substantially all of Sloan's nonexempt, unencumbered assets. Moreover, upon information and belief, Sloan is subject to substantial claims of other creditors.

22. The Trustee's release of claims against Sloan is subject to Sloan's satisfaction of the SEC Obligation. In the event the SEC obtains additional recoveries in this matter, subject to appropriate internal approvals, the SEC anticipates that such funds will be distributed to the Trustee for payment to Participants consistent with the terms of this settlement.

23. Based upon the foregoing, the Trustee believes that the settlement is in the best interests of the Estates.

Wherefore, the Trustee prays that this Court:

1. Approve the Stipulation for the reasons set forth; and
2. Grant such other relief as is just and proper.

STEPHEN DARR, TRUSTEE OF THE
CHAPTER 11 ESTATES OF EACH OF
THE DEBTORS
By his attorneys,

 /s/ Andrew G. Lizotte
Andrew G. Lizotte (BBO #559609)
Murphy & King, Professional Corporation
One Beacon Street
Boston, MA  02108
(617) 423-0400
ALizotte@murphyking.com

Dated: April 22, 2019
757023