UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>TELEXFREE, LLC,<br>TELEXFREE, INC. and<br>TELEXFREE FINANCIAL, INC.,<br><br>    Debtors. | Chapter 11 Cases<br><br>14-40987-MSH<br>14-40988-MSH<br>14-40989-MSH<br><br>Jointly Administered |
| STEPHEN B. DARR, CHAPTER 11 TRUSTEE OF THE DEBTORS,<br><br>    Plaintiff,<br><br>v.<br><br>BENJAMIN ARGUETA, ALEXANDRO ROCHA, JOSE NETO, JULIO C. PAZ, EUZEBIO SUDRE NETO, HUGO ALVARADO, ANA R. RAMOS, LINDA SUZANNE HACKETT, RUDDY ABREAU, MARCO ALMEIDA, RODRIGO MONTEMOR, LAUREANO ARELLANO, AARON ATAIDE, ROSANE CRUZ, OMAR QUINONEZ, CARLOS C. DEJESUS, BILKISH SUNESARA, ANDRES BOLIVAR ESTEVEZ, JOSE LOPEZ, ANA ROSA LOPEZ, FRANTZ BALAN, MARCELO DASILVA, GLADYS ALVARADO, MARIA TERESA MILAGRES NEVES, MARCOS LANA, LUIZ ANTONIO DA SILVA, BRUNO GRAZIANI, EDUARDO N. SILVA, MICHEL CHRISTIANO SANTOLIN DE ARRUDA, FRANCISDALVA SIQUEIRA, ALEXANDER N. AURIO, AMILCAR LOPEZ, RENATO SACRAMENTO, JULIO SILVA, DAVIDSON R. TEIXEIRA, JOSE CARLOS MACIEL, JESUS OSUNA, CHAI HOCK NG, EDILENE STORCK NAVARRO, SORAYA FERREIRA, EDSON F. SOUZA, VAMING SERVICES, JORGE ANTONIO MEJIA SEQUEIRA, RODRIGO CASTRO, DAVID REIS, ANA SANTOS, WESLEY DIAS, TIMEX RESEARCH CONSULTING, INC., CELSO ROBERTO SILVA FILHO, TEAM GLOBAL ADVERTISING LLC, LWC MARKETING, | Adversary Proceeding<br>No. 16-04006 |

1

| |
|---|
| INC., BARTOLO CASTLLO, GASPAR JESUS, LUISA E. LOPEZ, MARCIO SOUZA NERY, DEBORA C. BRASIL, JOELITO SOUZA CALDAS JUNIOR, UNITED GROUP USA, JEAN 2004, ENTERPRISE CORP., RUDMAR GENTIL, NEW GENERATION MED SUPPLY, INC., DANEUNG XIONG, CARLOS ALFARO, LUSETTE BALAN, TECHNOVIA, INC., FAITH SLOAN, MARIZA S. MORINELLI, NUBIA R. GLOULART, ROBERTO NUNEZ, GILSON NASSAR, BINGJIAN PAN, YUE CHEN, RODRIGO R. BREDA, PAULO GIULIANO DIOGENES DE BESSA ROSADO, JOSE MIGUEL FILHO, LAN LAN JI, VENERANDO CONTRERAS, JAP INTERNATIONAL NETWORK, LLC, WALACE AUGUSTO DA SILVA, EZAU SOARES FERREIRA, EDDIT ALBERTO DUVERGE, GLOBAL MARKETING STRATEGIES, CAROL VANTERPOOL, DEVENDRA SHAH, PAT JACKSON, SILVERIO REYES, FABIANA ACACIA DA CRUZ DOS SANTOS, GERALD AGNEW, DWAYNE JONES, JOSEPH PIETROPAOLO, JAMILSON MARCO CONCEICAO, SONYA CROSBY, RANDY CROSBY, WESLEY NASCIMENTO ALVESBY, ANTONIO OLIVEIRA, RONEIL BARRETO, MILAGROS ADAMES, LM DAVAR, INC., PARROT BAY HOMES, INC., EDGAR BORELLI, RICHARDO FABIN, DANIEL CHAVEZ, FAUSTINO TORRES, HELIO BARBOSA, GELALIN-3377, LLC AND A DEFENDANT CLASS OF NET WINNERS, |
| Defendants. |

**CLASS-DEFENDANT DANIIL SHOYFER'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION (DKT. 320) AND MOTION FOR ATTACHMENT OF REAL PROPERTY (DKT. 321)**

Now comes Class-Defendant Daniil Shoyfer, by and through undersigned counsel, and hereby respectfully opposes (1) Motion by Stephen Darr as Trustee for Preliminary Injunction Against Daniil Shoyfer (Dkt. 320) and (2) Motion by Stephen Darr as Trustee for Attachment of Real Property of Daniil Shoyfer (Dkt. 321).

2

I. **Introduction and Background**

Mr. Shoyfer is one of the approximately 93,000 alleged "net winners" implicated in the Trustee's domestic and international defense-class litigation and is one of the approximately 15,000 Class-Defendants in the instant adversary proceeding, *see* Dkt. 113 at 16. His purported "net winnings" of $370,588.30 – a figure the defense respectfully contends rests on flawed and erroneous assumptions that vastly exaggerate the monetary benefits Mr. Shoyfer received as a result of his participation in Telexfree, *see infra* at pp. 7-9 – are a fraction of the total outstanding "net winnings" and less than all but one of the 105 Named-Defendants. *see* Dkt. 113 at 17-19. Despite not seeking an injunction or an attachment against any of the other, numerous class members since the January 15, 2016 inception of this litigation, the Trustee now seeks to continue to limit Mr. Shoyfer's access to almost all of his assets and an attachment of all of his real estate in New York and Florida. Such relief is extraordinary and unwarranted given that Mr. Shoyfer, through his counsel, has been actively defending himself against the allegations arising from his participation in TelexFree since 2015 (first in the Multi-District Litigation, *In re TelexFree Securities Litigation*, MDL No. 14-md-2566-TSH, and now here), has done nothing to dissipate or transfer his assets, and has engaged in no conduct that would warrant the extraordinary relief requested.

Mr. Shoyfer, like many American immigrants, fled to the United States at the young age of sixteen to avoid religious persecution. *See In re TelexFree Securities Litigation*, MDL No. 14-md-2566-TSH, Dkt. 252 at 2. Without an education or a stable career, he went deep into debt during the 2001 recession and was forced to declare bankruptcy. *Id.* In his late twenties, he went back to school hoping for a fresh start and a new career. *Id.* He took out in excess of $145,000 in student loans and became an occupational therapist – a profession that he practices today and one

3

that is his family's principal source of income. *Id.*

Mr. Shoyfer was first approached to join TelexFree during a trip to Florida on or about March 11, 2013. *Id.* at 4. He purchased TelexFree's Voice-Over-IP minutes, tested the service with a call to his father, and, after being impressed with the product, joined the MLM side of the business. *Id.* at 5. Mr. Shoyfer never suspected or knew that TelexFree was a pyramid scheme. *Id.* He, like many others, believed it was a legitimate company that offered a legitimate product that he had tested and used himself. *Id.* Following March of 2013, he purchased multiple TelexFree packages and started promoting the company. *Id.* He spent significant time and resources advocating for the business in his community. *Id.* at 5-6. Before TelexFree declared bankruptcy, Mr. Shoyfer withdrew, in total, without factoring in any costs, approximately $122,779.70 from his TelexFree account. He never earned the $370,588.30 that the Trustee's calculations attribute to him. *See infra* at pp. 7-9

Mr. Shoyfer was first implicated in the TelexFree litigation on or about November 23, 2014 in connection with the First Amended Consolidated Complaint in the Multi-District Litigation. *See In re TelexFree Securities Litigation*, MDL No. 14-md-2566-TSH, Dkt. 22. The Plaintiffs, who had no access to his TelexFree accounts, unfairly categorized him as one of the masterminds behind the TelexFree scheme who earned in excess of $5 million. *See Id.* On that basis and with the added fear that culpable individuals had left the United States with substantial sums of TelexFree money,[1] the Plaintiffs' sought and obtained a $5 million writ of attachment in

---

[1] *See e.g.,* Beth Healy & Nathan B. Thompson, TELEXFREE CO-OWNER FINDS REFUGE IN BRAZIL - THE BOSTON GLOBE BOSTONGLOBE.COM (2014), https://www.bostonglobe.com/business/2014/06/14/telexfree-owner-wanzeler-takes-refuge-brazilian-seaside-city-while-partner-awaits-trial-prison/UU1V6krOMLAH0gi2Z6f0NP/story.html (last visited Feb 22, 2020) ("***Wanzeler is a wealthy fugitive, separated by 4,800 miles from his wife and son in Northborough, Mass., but safely beyond the reach of US law…. All told, Wanzeler and his family received nearly $13.7 million from TelexFree through February***.");

4

December of 2014 and a Preliminary Injunction in January of 2016. *See In re TelexFree Securities Litigation*, MDL No. 14-md-2566-TSH, Dkt. 49 and 380.  Importantly, Mr. Shoyfer, unlike Carlos Wanzeler and others, is not a citizen of any country other than the United States and has no international bank accounts.  *See In re TelexFree Securities Litigation*, MDL No. 14-md-2566-TSH, Dkt. 382-1.  He has, for more than half a decade, done nothing but contest the allegations against him on principled grounds and has engaged in no conduct that would warrant a restraint of his assets.  Indeed, it's hard to imagine that Mr. Shoyfer, after years of hard work, would abandon his education, his career, his multiple real estate holdings, his wife, and his four children to avoid paying a potential judgment in this case – which the Trustee himself believes would not exceed $450,000.00.

## II.    Legal Standards

The standards for issuance of a preliminary injunction and pre-trial attachment of assets are well-rehearsed.  Faced with a request for a preliminary injunction, "trial courts must consider (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, *i.e.*, the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15 (1st Cir. 1996).  A preliminary injunctive is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter v. Natural*

---

Joshua Gardner, WIFE OF ACCUSED INTERNATIONAL PONZI SCHEMER ARRESTED AT AIRPORT AS SHE TRIED FLEEING THE U.S…AND HER FUGITIVE HUSBAND ALREADY ESCAPED TO BRAZIL DAILY MAIL ONLINE (2014), https://www.dailymail.co.uk/news/article-2629433/Wife-accused-international-Ponzi-schemer-arrested-airport-tried-fleeing-U-S-fugitive-husband-escaped-Brazil.html (last visited Feb 22, 2020);
Merrit Kennedy, FEDS FIND $20 MILLION HIDDEN UNDER A MATTRESS IN MASSACHUSETTS NPR (2017), https://www.npr.org/sections/thetwo-way/2017/01/24/511451628/feds-find-20-million-hidden-under-a-mattress-in-massachusetts (last visited Feb 22, 2020).

5

*Resources Defense Council, Inc.* 555 U.S. 7, 22 (2008), the "basis for [which] has always been *irreparable injury* and the *inadequacy of legal remedies.*" *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (emphasis added); *see also Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) ("plaintiffs seeking a preliminary injunction face a difficult task in proving that they are entitled to this 'extraordinary remedy.'").

The party seeking a preliminary injunction not only has to prove a likelihood of success on the merits, which the defense respectfully contends should include a likelihood of recovery in the amount of the Trustee's calculations, but also the likelihood of an irreparable injury that would occur absent the requested relief. Indeed, irreparable injury has been categorized as "the single most important prerequisite for the issuance of a preliminary injunction." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005); *see Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."). In addition to showing a likelihood of irreparable harm, the plaintiff must also show an "immediate threatened injury," *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988), and a "sufficient causal connection" between the alleged injury and the conduct sought to be enjoined. *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 982 (9th Cir. 2011). The harm must be such that it "cannot be redressed by a legal or an equitable remedy following a trial," meaning that "[t]he preliminary injunction [is] the *only way* of protecting the plaintiff from harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (emphasis in original).

Similarly, in order to obtain a pre-trial attachment of assets, the Trustee must prove "(1) a reasonable likelihood of success on the merits and (2) a reasonable likelihood of recovering a

6

judgment equal or greater than the amount of the attachment sought that is (3) over and above any liability insurance shown by the defendant to be available to satisfy the judgment." *Greenbriar Companies, Inc. v. Springfield Terminal Railway,* 477 F. Supp.2d 314,317 (D. Mass 2007); *see also ABCD Holdings, LLC. v. Hannon,* 2017 WL 6395727 (Mass. Super. Ct. 2017), ("To obtain an attachment, a plaintiff must demonstrate: 'that there is a reasonable likelihood that [it] will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance shown by the defendant to be available to satisfy the judgment.' Mass.R.Civ.P. 4.1(c).").

### III. The Trustee has failed to demonstrate the likelihood of a $450,000.00 recovery.

While Mr. Shoyfer does not contest the merits of whether the Trustee is entitled to recoup some asset transfers made by the Debtor while it was insolvent for the purposes of these motions, he does challenge the accuracy of the Trustee's calculations attributing him "net winnings" in the amount of $370,588.30, *see* Dkt. 322 at 6-21. The $370,588.30 figure, based on the defense's understanding, is an aggregate of two sums: (1) the funds that Mr. Shoyfer received directly from TelexFree subtracted by the amount of funds Mr. Shoyfer paid directly to TelexFree (hereinafter the "Direct Payments"); and (2) the funds that Mr. Shoyfer received from other TelexFree participants in exchange for funding their accounts subtracted by the amount of funds Mr. Shoyfer paid to TelexFree in connection with these transfers (hereinafter the "Triangular Payments"). The Trustee claims that Mr. Shoyfer received a net-benefit of $61,473.20 as a result of the Direct Payments and $309,915.10 as a result of the Triangular Payments.[2] *Id.* at 21. These calculations, however, are based on erroneous and unfounded presumptions.

---

[2] The Trustee's calculation also deducts the $800 worth of credits that Mr. Shoyfer purchased through his TelexFree account.

7

First, the Trustee incorrectly presumes that Mr. Shoyfer had no expenses associated with his participation in TelexFree other than direct payments to that entity. Mr. Shoyfer, like many others, believed TelexFree was a viable business opportunity and spent significant time and resources advocating for and recruiting new participants. He hosted numerous seminars throughout his community and, at times, rented conference space, including at JFK airport. He spent approximately 15 hours per week working on TelexFree during the first few months of his tenure and then 25 or more hours per week for the approximately nine months preceding TelexFree's bankruptcy. Furthermore, Mr. Shoyfer paid federal and state income tax on $114,800 he declared as income from TelexFree on his 2013 tax return – funds that he paid and has no way of recouping given the three-year IRS statute of limitations for amending returns.

Second, the Trustee's calculations erroneously assume that Mr. Shoyfer directly received, dollar-for-dollar, an equal amount of cash for the credits he transferred to other participants in connection with the Triangular Payments. At times, new participants had difficulty using their credit cards to fund their accounts. Mr. Shoyfer advanced his personal TelexFree credits so that these new participants could open and fund their accounts with the expectation that they would repay him once they accumulated enough of their own credits. Mr. Shoyfer benefitted by receiving a bonus from TelexFree (in the form of additional credits) for adding the new participants. Some down-line participants partially repaid their loans, mostly through the use of their credits, but many did not. Indeed, once TelexFree declared bankruptcy, no one had the incentive to repay a loan of essentially worthless credits. Again, the Trustee's calculations assume that Mr. Shoyfer directly received – dollar-for-dollar – cash for his credits. This, however, was not the case and such erroneous assumptions have vastly overinflated Mr. Shoyfer's "net-winnings."

In short, there are serious flaws with the Trustee's calculations and there are additional, significant expenses that the calculations fail to take into account. While the Trustee seeks, through this avoidance action, to put the Debtor and its participants back to their initial *status quo*, Mr. Shoyfer should not, after spending significant time and resources, be put into a position worse than he had been prior to his TelexFree participation. Accordingly, the Trustee has not and cannot establish a likelihood of a future judgment equal to or greater than $450,000.00 which would warrant the requested attachment or a freeze of Mr. Shoyfer's assets.

**IV.    The Trustee has failed to demonstrate an imminent, irreparable harm that warrants a freeze of Mr. Shoyfer's assets.**

Where, as here, the Plaintiff's seeks an injunction to protect against monetary harm – and it is self-evident that the Trustee's claims seek only a monetary recovery – such injury is generally not irreparable: "[i]t is [] well-established that an injury is irreparable only 'if it cannot be undone through monetary remedies.'" *Dennis Melancon, Inc. v. City of New Orleans*, 703 F. 3d 262, 279 (5th Cir. 2012) (internal citation omitted). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Moreover, where the requesting party seeks an asset freeze after damages have already been suffered, the court cannot issue a preliminary injunction to prevent the defendant "from transferring assets in which plaintiff claims no present lien or interest." *U.S. ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 496 (4th Cir. 1999); *see also Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 333 (1999) ("we hold that the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for

9

money damages."); *Dateline Exports, Inc. v. Basic Const., Inc.*, 306 F.3d 912, 914 (9th Cir. 2002) ("a district court lacks authority to issue a preliminary injunction that freezes a debtor's assets in cases involving unsecured creditors.").

Furthermore, as a factual matter, the Trustee has not put forth an iota of proof demonstrating an imminent likelihood of injury. Indeed, any claim of such irreparable injury is significantly undermined by the Trustee's failure to request similar relief with respect to any other Class-Defendants in the years this litigation has been pending. In his affidavit and motion papers, the Trustee posits that "unless a preliminary injunction is entered in favor of the Trustee, there is a reasonable likelihood that Mr. Shoyfer will transfer assets and that the Trustee will suffer substantial and irreparable harm." Dkt. 322 at 4. However, these are the sort of bare, speculative assertions that courts have long held as an insufficient predicate for the extraordinary relief the Trustee seeks. *See Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004) ("A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store."); *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996) ("a preliminary injunction is not warranted by a tenuous or overly speculative forecast of anticipated harm.").

It is true that the "Plaintiffs' in the Multi-District Litigation moved to file a Fifth Amended Complaint which dismisses Mr. Shoyfer as a Defendant, and [that] Mr. Shoyfer has moved to vacate the Preliminary Injunction" in that case. *Id.* As the defense pointed out in its motion to dismiss, a preliminary injunction is automatically terminated upon the dismissal of a defendant. *See e.g., Cypress Barn, Inc. v. W. Elec. Co.*, 812 F.2d 1363, 1364 (11th Cir. 1987) ("Since a preliminary injunction is interlocutory in nature, it cannot survive a final order of dismissal."). Thus, the preliminary injunction in that case will likely be vacated against Mr.

Shoyfer and at least five other dismissed promoter defendants. *See In re TelexFree Securities Litigation*, MDL No. 14-md-2566-TSH, Dkt. 375 and Dkt. 405 (granting preliminary injunction against Sanderley Rodrigues de Vasconcelos, Santiago De La Rosa, Randy Crosby, Faith Sloan, Daniil Shoyfer, and Scott Miller). The Trustee has not demonstrated why Mr. Shoyfer, in contrast to those defendants or the 93,000-other class-defendants, presents an imminent risk of dissipating or transferring his assets that would cause the Trustee "substantial and irreparable harm." Indeed, Mr. Shoyfer has done nothing evincing any intent to evade creditors and is certainly not in the same category of individuals as Carlos Wanzeler and others. He knew of the potential claims against him as early as November of 2014 and has done nothing to hide or dissipate his assets before or after the January 2016 injunction. Again, it's hard to imagine that Mr. Shoyfer, after years of hard work, would abandon his education, his career, his multiple real estate holdings, his wife, and his four children to avoid paying a potential judgment in this case.

**V.    The requested relief would continue an unnecessary hardship and the Trustee has not shown why less severe restrictions are not appropriate.**

Since the initial Temporary Restraining Order ("TRO") was issued by the District Court, Mr. Shoyfer has suffered and continues to suffer severe monetary harm. For instance, Mr. Shoyfer has been locked out of his security brokerage account since 2015. In that period, the account has dropped in value by nearly $136,000.00. *See* Exhibit 1.

Finally, the Trustee requests this Honorable Court to attach all of Mr. Shoyfer's real estate holdings in Florida and New York as well as to continue to freeze his assets in order to satisfy a potential judgment of $450,000.00. The Trustee, however, fails to explain why such extraordinary relief is necessary, in contrast to a much more limited, targeted restraint. Mr. Shoyfer's primary residence is valued at between $1.008 and $1.603 million, *see* Exhibits 2 and 3, with an outstanding mortgage balance of approximately $500,000, *see* Exhibit 4. The equity in

11

the family's residence alone would more than satisfy any potential judgment in this case.

Restraining far more assets than required is an abuse legal scholars have long warned about:

> A rule of procedure which allowed any prowling creditor, before his claim was definitely established by judgment, and without reference to the character of his demand, to file a bill to discover assets, or to impeach transfers, or interfere with the business affairs of the alleged debtor, would manifestly be susceptible of the grossest abuse. A more powerful weapon of oppression could not be placed at the disposal of unscrupulous litigants.

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999).  Such potential misuse should not be endorsed in this case.

### VI. Conclusion

For all of the foregoing reasons, the defense respectfully requests this Honorable Court to deny (1) Motion by Stephen Darr as Trustee for Preliminary Injunction Against Daniil Shoyfer (Dkt. 320) and (2) Motion by Stephen Darr as Trustee for Attachment of Real Property of Daniil Shoyfer (Dkt. 321), or, in the alternative, to consider a more limited, targeted remedy.

Respectfully Submitted,

**/s/ Maksim Nemtsev**
Maksim Nemtsev, Esq.
Mass. Bar No. 690826
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
menemtsev@gmail.com

Dated: February 24, 2020

12

## **CERTIFICATE OF SERVICE**

 I, Maksim Nemtsev, hereby certify that on this date, February 24, 2020, a copy of the foregoing documents has been served via Electronic Court Filing system on all registered participants.

        **/s/ Maksim Nemtsev**
        Maksim Nemtsev, Esq.