UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>TELEXFREE, LLC,<br>TELEXFREE, INC.,<br>TELEXFREE FINANCIAL, INC.,<br><br>Debtors. | Chapter 11 Cases<br>14-40987-MSH<br>14-40988-MSH<br>14-40989-MSH<br><br>Jointly Administered |
| STEPHEN DARR, CHAPTER 11 TRUSTEE OF THE ESTATES OF EACH OF THE DEBTORS,<br><br>Plaintiff,<br><br>v.<br><br>BENJAMIN ARGUETA, *et al.*, and a CLASS OF DOMESTIC NET WINNERS,<br><br>Defendants. | Adv. Proceeding No.: 16-04006 |
| STEPHEN DARR, CHAPTER 11 TRUSTEE OF THE ESTATES OF EACH OF THE DEBTORS,<br><br>Plaintiff,<br><br>v.<br><br>PAOLA ZOLLO ALECCI, *et al.*, and a CLASS OF INTERNATIONAL NET WINNERS,<br><br>Defendants. | Adv. Proceeding No.: 16-04007 |

**COMBINED OPPOSITION OF DOMESTIC CLASS
REPRESENTATIVE FRANTZ BALAN AND INTERNATIONAL
CLASS REPRESENTATIVEMARCO PUZZARINI AND SANDRO
PAULO FREITAS TO MOTION TO INTERVENE**

Four years into this litigation, and in the midst of an agreed-upon process for expert disclosures, proposed Intervenors seek to enter this litigation for reasons that are not entirely clear, and seeking relief that is best achieved through other, more traditional means. Attorney Jordan Shapiro, counsel on the motion to intervene, represents approximately one hundred claimants who possess a mix of interests. While all claimants have filed proofs of claim, some have had their claims allowed, some have had their claims conditionally allowed, some have settled their claims, and some have had their claims disputed by the Trustee. Although not explicit, Class Defendants assume that the proposed Intervenors are limited to the 48 claimants whose proofs of claim are disputed and remain unsettled.

The issue before this Court is whether the proposed Intervenors should be permitted at this late stage to intervene in this action for the "limited purpose" of "challenging the opinions and the records of Telex and its expert." (Motion, ¶ 19.) To this end, the proposed Intervenors seek (a) to receive "expert witness reports of both parties, (b) to attend any depositions relating to this matter, and (c) to attend and participate in any hearing involving the admissibility of the Martin expert opinion." (Motion, at 6) The proposed Intervenors insist that without intervention, "as a practical matter" their "ability to protect [their] interest" will be "impair[ed] or impede[d]." There is no further explanation of this assertion beyond reference to Rule 24. (Motion, ¶ 24.) Indeed, the motion fails to indicate under which section of Rule 24 intervention is sought. Thus, Class Defendants will address all potentially relevant avenues of intervention, as well as the attendant legal and practical considerations.

2

**ARGUMENT**

There are three possible ways that the proposed Intervenors could seek to intervene in this case under Rule 24 (made applicable to adversary proceedings by Fed. R. Bankr. P. 7024.) The first two involve mandatory intervention, either by statutory right under Rule 24(a)(1), or under Rule 24(a)(2), by claiming an interest relating to the property or transaction that is the subject of the action and without adequate representation by the current litigants.

If they are creditors, the proposed Intervenors could seek mandatory intervention under Rule 24 (a)(1) by citing the statutory right to be heard granted by 11 U.S.C. § 1109(b) to "a creditor" for Chapter 11 cases. *See*, *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico for Puerto Rico*, 872 F.3d 57, 59 (1st Cir. 2017). Even where a party has a statutory right of intervention, that right may be lost if the motion is not timely filed. *See Culbreath v Dukakis*, 630 F2d 15, 23 (1st Cir. 1980); *In re Lavallee*, No. 14-41386-MSH, 2015 WL 4978709, at *3 (Bankr. D. Mass. Aug. 20, 2015).

The second form of mandatory intervention occurs under Rule 24(a)(2) when a party's interest in the litigation is "so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." To intervene under Rule 24(a)(2), the moving party must satisfy four conjunctive prerequisites: (1) a timely application for intervention; (2) a demonstrated interest relating to the property or transaction that forms the basis of the ongoing action; (3) a satisfactory showing that the disposition of the action threatens to create a practical impairment or impediment to its ability to protect that interest; and (4) a satisfactory

showing that existing parties inadequately represent its interest. *Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998), *citing Conservation Law Found. v. Mosbacher*, 966 F.2d 39, 41 (1st Cir. 1992). An applicant for intervention as of non-statutory right must "run the table and fulfill all four of these preconditions." *Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998). The failure to satisfy any one of required elements, including timeliness, dooms intervention. *Id.*; *see also Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 637 (1st Cir. 1989).

The third form of intervention is permissive intervention under Rule 24(b). Like its mandatory counterparts, permissive intervention also requires a timely motion. *Lexington Luminance LLC v. Google, Inc.*, No. CIV.A. 12-12218-GAO, 2014 WL 172203, at 1 (D. Mass. Jan. 16, 2014) (citing Fed. R. Civ. P. 24(b)). Assuming a timely motion is filed, the moving party must demonstrate to the Bankruptcy Court that permissive intervention is appropriate because the proposed intervenor possesses a claim or defense that "shares a common question of law or fact with the main action, and where intervention will not unduly delay or prejudice the adjudication of the main claims." *Id.*

### A. Mandatory Intervention Under Rule 24(a)(1) Is Unavailable Due to Lack of Timeliness

Any motion seeking intervention as of unconditional right must be timely. *In re Lavallee*, No. 14-41386-MSH, 2015 WL 4978709, at *3 (Bankr. D. Mass. Aug. 20, 2015). In evaluating timeliness, a court should consider four factors: (1) the length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be

4

intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 512–13 (5th Cir. 2016).

Here, the motion to intervene is being filed four years into the adversary proceeding. On its face, this cannot be timely. *See Culbreath v Dukakis*, 630 F2d 15, 23 (1st Cir. 1980) (affirming denial of intervention sought nearly 4 years from the time the unions reasonably should have known of initiation of a suit and under circumstances where intervention would have delayed the settlement of a case already 6 years old). While there are no affidavits submitted on timeliness, Class Defendants believe that all proposed Intervenors filed timely proofs of claim. Thus, they have been aware of the TelexFree bankruptcy since March 2017, if not before then. To the extent that the Trustee considers the proposed Intervenors net winners, they would have received numerous notices about the adversary proceeding even earlier. Accordingly, the Class Defendants believe that intervention is unavailable, regardless of whether the Court were to agree that these creditors had a statutory right of intervention under 11 U.S.C. § 1109 (b).[1] And the Class Defendants do not yet concede that they proposed Intervenors are *bona fide* creditors, as their claims are disputed and it may be that they

---

[1] For a discussion of statutory rights of intervention, see *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico for Puerto Rico*, 872 F.3d 57, 63 (1st Cir. 2017), dismissing as dicta contrary statement in *Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136, 1142 n.8 (1st Cir. 1992) ("11 U.S.C. § 1109(b)...does not afford a right to intervene under Rule 24(a)(1).")

are members of a defendant class, regardless of the validity of the Trustee's methodology for identifying parties liable and quantifying liability.

### B. Under Rule 24(a)(2), Proposed Intervenors Do Not Have an Interest in the Net Winner Clawback Cases that is Direct or Legally Protectible

Even if the proposed Intervenors had their claims disallowed, they could still seek mandatory intervention under Rule 24(a)(2). A putative intervenor seeking intervention under Rule 24(a)(2), however, must have an interest "in the proceeding" that is "direct, substantial, and legally protectable." *Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96–97 (2d Cir. 1990), *citing Donaldson v. United States*, 400 U.S. 517 (1971). An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule. *Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96–97 (2d Cir. 1990). For example, in a case over introducing retail competition into New Hampshire's electric utility market, the proposed intervenors' generalized interest in lower electric rates expected to result from the restructuring fell short of the requirements of Rule 24(a)(2). *See Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998).

Here, the proposed Intervenors do not argue that they have a direct interest tethered to the outcome of this case. Rather, they claim only that they share a similar goal of challenging the opinions of the Trustee's expert and participating in discovery. Intervention requires an explicit adoption of an existing claim or defense in the action. "It is settled beyond peradventure...that an undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise

6

intervention as of right." *Pub. Serv. Co. of New Hampshire v. Patch,* 136 F.3d 197, 205 (1st Cir. 1998). The brass-tacks application of the rule is that intervenors must live within the confines of the existing litigation, not renovate the lawsuit to satisfy their divergent interests. *See Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) (an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests). For this reason, intervenors "must take the pleadings in a case as they find them." *Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990). Perhaps not surprisingly, the proposed Intervenors do not attach "a pleading that sets out the claim or defense for which intervention is sought," as required by Rule 24(c). *See In re Shubh Hotels Pittsburgh, LLC*, 495 B.R. 274, 280 (Bankr. W.D. Pa. 2013); *but see In re Lavallee*, No. 14-41386-MSH, 2015 WL 4978709, at *3 (Bankr. D. Mass. Aug. 20, 2015)("the purpose of this requirement is to ensure that the other parties are aware of 'the claimant's position, the nature and basis of the claim asserted, and the relief sought.'").

Even assuming that proposed Intervenors took a position in the adversary proceedings, there is still the basic problem of whether they would support the Trustee or the Class Defendants. In other words, which side of the "*v.*" would the proposed Intervenors occupy? The proposed Intervenors have two distinct and conflicting interests. On one hand, the proposed Intervenors are seeking to maximize recovery on their claims. The only way for this to occur is if the Trustee is successful in the clawback litigations. The more the Trustee recovers from net winners, the more that will be distributed to creditors with allowed claims. On the other hand, the Trustee disputes

7

that the proposed Intervenors are net losers and is seeking to have their claims disallowed. If the Trustee prevails, then the proposed Intervenors—to the extent they were actual participants in TelexFree—will not be net losers and thus must defend claims that they are net winners.[2]

Both interests are indirect and require external contingencies that make intervention inappropriate. *See Washington Elec. Co-op., Inc.*, 922 F.2d, at 96–97. For the proposed Intervenors to have an interest in maximizing recovery, their claims must be allowed in a separate proceeding. Conversely, if their claims are denied in a separate proceeding, then they would become members of the applicable defendant class. The analysis is further complicated by the fact that the goals of the proposed Intervenors run in opposite directions. It would not be possible to maximize the Trustee's recovery ***and*** successfully challenge the Trustee's expert under *Daubert*. A successful *Daubert* challenge would mean—in all likelihood—that the Estate will recover much less money from alleged net winners. These divergent interests are not suitable for legal protection; intervention is a tool to address cases where an existing litigant may be addled due to a conflict interest, *see Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 45 (1st Cir. 1992), not to interject new conflicts where none existed. While there is certainly overlap of subject matter, that is insufficient alone to trigger intervention rights. There must also be a colorable claim that there is inadequate representation. No such claim is made here.

---

[2] Obviously, it is possible for a participant to be neither a net winner nor a net loser. Based on undersigned counsel's review of data thus far, however, the odds that any single participant's ultimate cash position was "break even" down to the penny is extremely remote.

### C. Under Rule 24(a)(2), the Proposed Intervenors Do Not Articulate How Non-Intervention in the Adversary Proceedings Would Impair or Impede their Ability to Litigate their Disputed Claims

There is currently a pathway for disputed claims to be resolved through the claims resolution process in the TelexFree bankruptcy case. As the Court will recall, there was substantial negotiation on the interplay between the claims allowance process and this clawback litigation. Essentially, class counsel negotiated a procedure whereby any positions taken in the claims allowance process would not be used against a clawback defendant who the Trustee alleges is a net winner. This negotiated provision was approved by this Court and made part of this Court's *Order Approving Motion By Chapter 11 Trustee to Establish Omnibus Procedures for the Resolution of Disputed Participant Claims*. (*In re: TelexFree, LLC*, Ch. 11. Case 14-40987, ECF No. 955, ¶ 21.) Thus, there is built-in procedural guarantee that any defendant who filed a successful proof of claim is protected, and the Trustee is not permitted to use account designations, provided to the Trustee by a participant in the claims process, against a participant in this action. *Id.*

To defeat the Trustee's net winner calculations, Class Defendants have engaged Stoneturn Group and are in the process of preparing an expert report to counter the report of Trustee's expert, Huron Consulting. The expert disclosure process, which is referenced in the Motion to Intervene, in no way interferes with or impedes the proposed Intervenors' pursuit of their claims in the TelexFree bankruptcy case. To counsel's knowledge, the proposed Intervenors have not filed *Daubert* motions to challenge Huron's analysis as part of the claims resolution process. Thus there appears to be little risk of inconsistent adjudications. Further, because this Court presides over

9

both sets of contested matters, there is no cause for concern about inconsistent application of any *Daubert* rulings. Further, Class Defendants believe that the Court has afforded creditors an opportunity to be heard about any *Daubert* concerns in the claims administration process. Thus, the Class Defendants do not believe as a sufficient showing of interference has been made.

### D. Under Rule 24(a)(2), the Proposed Intervenors Have Not Demonstrated Inadequacy of Representation

The motion to intervene makes no claim of lack of adequate representation by the existing parties. That omission prevents allowance of the motion because there is a presumption of adequacy that attaches to representation undertaken in the performance of a fiduciary duty. *See Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136, 1143 (1st Cir. 1992). To overcome this presumption, the putative intervenor "must assert concrete facts" demonstrating either: "(1) the existing representation of the putative intervenor's interests is inhibited by the personal interests of the existing representative, (2) the existing representative and the opposing party are engaged in collusive activities, or (3) the existing representative has failed or refused to fulfill the fiduciary duty to protect the interests asserted by the putative intervenor." *Id.* The proposed Intervenors make no such allegations.

### E. If the Court Allows Intervention under either Mandatory or Permissive Intervention, Practical Considerations Suggest that This Court May and Indeed Should, Within Its Sound Discretion, Fashion Some Limited Form of Intervention that Minimizes the Cost and Intrusion to the Class Defendants

In terms of preparing their expert report, Class Defendants have strict limitations on the time to prepare expert opinions and limited funding available to compensate

experts. They are therefore concerned that any intervention will delay the process and increase the costs. This would be prejudicial to the Class.

With that said, however, Class Defendants recognize that this Court has "broad discretion" to delimit the scope of intervention. *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico for Puerto Rico*, 872 F.3d 57, 64 (1st Cir. 2017) (intervenors permitted to review discovery (but not to propound discovery requests), to attend depositions (but not to examine witnesses), and to file briefs and be heard at arguments.) Courts have exercised that discretion to limit the participation of intervenors as of right in a number of ways. *Id.* An intervening party, for example, cannot "preclude other parties from settling their own disputes." *Id.*, citing *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 529 (1986); *Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 181 (2d Cir. 2005) (holding that § 1109(b) "does not authorize creditors to pursue settlement" of an adversary proceeding). Courts may further restrict intervention to "the claims raised by the original parties," *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 737 n.11 (D.C. Cir. 2003), or a particular set of issues, see *Harris v. Pernsley*, 820 F.2d 592, 599 (3d Cir. 1987). Finally, intervenors may be denied discovery, at least in some circumstances. *See United States v. Albert Inv. Co.*, 585 F.3d 1386, 1396 (10th Cir. 2009). Thus, if the Court allows intervention, it should do so in a manner that limits the impact on Class Defendants.

## **CONCLUSION**

For the reasons set forth above, the Class Defendants requests that this Court deny the request for intervention. If, however, this Court should permit intervention, it

should be with significant limitations. Class Defendants therefore request that any intervention be limited as follows:

(a) counsel for Intervenors may only participate in this action for the purpose of challenging the opinions and admissibility of the Trustee's expert Timothy Martin and may not challenge the opinions and admissibility of Class Defendants' expert Stoneturn Group, or otherwise participate in this action;

(b) counsel for Intervenors may attend expert depositions, but may not question the experts;

(c) counsel for proposed Intervenors may receive a copy of all expert reports;

(d) counsel for Intervenors may not directly interact with Stoneturn Group or propound discovery on Stoneturn Group or Class counsel;

(e) counsel for proposed Intervenors may attend any hearings on expert issues and make argument within any specified time limitations this Court may set, without prejudice to the time that counsel for Class Defendants would have otherwise been afforded; and

(f) counsel for proposed Intervenors may file pleadings in the clawback adversary proceedings (16-04006 & 16-04007), but counsel for proposed Intervenors must confer with counsel for the Trustee and counsel for the class defendants before filing any motions.

Respectfully submitted,

FRANTZ BALAN,
FOR HIMSELF AND AS CLASS
REPRESENTATIVE ON BEHALF OF ALL
DOMESTIC NET WINNERS,

*-and-*

MARCO PUZZARINI AND
SANDRO PAULO FREITAS,
FOR THEMSELVES AND AS CLASS
REPRESENTATIVES ON BEHALF OF ALL
INTERNATIONAL NET WINNERS,

By their counsel,

Dated: May 20 , 2020        /s/ Ilyas J. Rona
                            Ilyas J. Rona, Esq. (BBO# 642964)
                            Michael J. Duran, Esq. (BBO #569234)
                            MILLIGAN RONA DURAN & KING LLC
                            50 Congress Street, Suite 600
                            Boston, Massachusetts 02109
                            (617) 395-9570
                            ijr@mrkdlaw.com
                            mjd@mrdklaw.com

## CERTIFICATE OF SERVICE

I, Ilyas J. Rona, hereby certify that I have caused a copy of the Combined Opposition of Domestic Class Representative Frantz Balan and International Class Representative Marco Puzzarini and Sandro Paulo Freitas to the Motion To Intervene to be served on counsel for the Trustee, counsel for the Intervenors, and all registered electronic filers appearing in this case using the Court's CM/ECF system.

Dated: May 20, 2020         /s/ Ilyas J. Rona
                            Ilyas J. Rona, Esq.