UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re:<br><br>TELEXFREE, LLC,<br>TELEXFREE, INC.,<br>TELEXFREE FINANCIAL, INC.,<br><br>**Reorganized Debtors**. | Chapter 11<br><br>Case No. 14-40987-MSH<br>Case No. 14-40988-MSH<br>Case No. 14-40989-MSH<br><br>**Substantively Consolidated** |
| STEPHEN B. DARR, TRUSTEE<br>OF THE ESTATES OF TELEXFREE, LLC,<br>TELEXFREE, INC., and TELEXFREE<br>FINANCIAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BENJAMIN ARGUETA, A<br>REPRESENTATIVE OF A CLASS OF<br>DEFENDANT NET WINNERS,<br><br>Defendants. | Adversary Proceeding<br>No. 16-4006 |
| STEPHEN B. DARR, TRUSTEE<br>OF THE ESTATES OF TELEXFREE, LLC,<br>TELEXFREE, INC., and TELEXFREE<br>FINANCIAL, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>MARCO PUZZARINI, A<br>REPRESENTATIVE OF A CLASS OF<br>DEFENDANT NET WINNERS,<br><br>Defendants. | Adversary Proceeding<br>No. 16-4007 |

1

784860

## JOINT STATUS REPORT REGARDING EXPERTS

In accordance with the Scheduling Order dated July 15, 2020 [Docket No. 354], Stephen B. Darr as he is Trustee of the Estates of TelexFree, LLC, TelexFree, Inc., and TelexFree Financial, Inc. ("**Telexfree**") (the "**Trustee**") and Frantz Balan as representative of a class of Domestic Net Winners, and Marco Puzzarini and Sandro Paulo Freitas as representative of a class of Foreign Net Winners (the "**Class Action Defendants**") (collectively with the Trustee, the "**Parties**") submit the following Joint Status Report:

1. On February 3, 2020, the Trustee provided to the Class Action Representatives the Expert Report of Timothy Martin of Huron Consulting Group LLC ("**Huron Report**"). The Huron Report details the methodology employed by the Mr. Martin to identify the net amount of monies that each Participant in the TelexFree scheme received or paid, either directly or in a Triangular Transaction to determine which Participants were Net Winners and, conversely, which were Net Losers. As detailed in the Huron Report, Mr. Martin and various members of Huron developed an algorithm used to aggregate all of the various User Accounts and identify the owners of those various User Accounts so as to determine who were the Net Winners and the Net Losers and the amount of each claim.

2. Upon providing the Class Action Representatives with the Huron Report, the Class Action Representatives, through their expert, StoneTurn Group LLP ("**StoneTurn**"), requested documents relating to or relied upon by Huron in preparing the Huron Report. The documents provided were extensive and included providing to the Class Action Representatives' experts the access to the ePOC system.

3. On July 31, 2020, the Class Action Representatives' expert StoneTurn provided its Rebuttal Expert Report ("**StoneTurn Report**"). The StoneTurn Report challenges certain of

784860

the basic assumptions made by Huron in the Huron Report, the sufficiency of the information relied upon by Huron in preparing its Huron Report, and the reliability of the methodology employed by Huron to reach its conclusions.

4. While the Parties have not completed their assessment of their respective expert reports and whether additional discovery may be necessary, based on the Expert Reports, the Parties have identified the main points of dispute between the two experts which need to be addressed in connection with determining whether the Trustee's methodology is sufficiently reliable to set forth the Trustee's *prima facie* case.

5. The general areas in dispute identified by the experts are as follows:

(i) The Class Action Representatives dispute the methodology by which the Huron linked records of different accounts to a single user. Huron and StoneTurn both recognize that the need to link records with or without unique identifiers is not unusual, and there are commonly accepted methodologies for joining records, including data files, books, Web sites and databases. The Trustee contends that the methodology employed in the Huron Report, while not wholeheartedly adopting the "Deterministic" methodology, adopted certain principles associated with that methodology. StoneTurn contends that the "Probabilistic" approach, rather than a so-called modified "Deterministic" approach, would have been more appropriate under the facts presented. and StoneTurn asserts that the approach used by Huron is not recommended in such circumstances and undermines the reliability of Huron's record linkages.

(ii) The second area of dispute concerns the use of common identifiers. Both Experts agree that the use of common identifiers is appropriate to analyze and link diverse accounts. The Huron Report identifies a series of common identifiers to be used in the aggregation process, beginning with the name entered into the SIG System. The StoneTurn

784860

Report challenges Huron's decision to accord greater weight to the names that users entered into the SIG system, given that there were no internal controls to verify the accuracy of the information entered. The Huron Report submits it is reasonable to assume that a Participant would include an accurate name when registering a User Account because that would be the name in which the Participant would be receiving credits and transfers. Accordingly, the name would be the most likely common identifier. The StoneTurn Report challenges the assumption by pointing to entries in the SIG System where the information entered in the name category appears to be a combination of numbers, letters, or punctuation marks, with no actual name included. The StoneTurn Report also points out that users could and did in fact enter names of businesses, other people or entities, fictitious names, or arbitrary. StoneTurn asserts the use of unverified or unrelated names, along with the use of unusable sets of non-name characters, calls into question the reliability of an aggregation model that assumes names were always valid.

        (iii)    The next general area of dispute concerns the Huron Report's reliance on ePOC data as validating its aggregation methodology. Huron points to the fact that 95% of the Participants participating in ePOC process accepted the Trustee's aggregation of the accounts and the amounts of the net loss attributable to the Participant. StoneTurn disputes the claim that 95% of ePOC claimants accepted the Trustee's aggregation and net equity calculations. StoneTurn's analysis shows that 25% of users made adjustments to the Trustee's analysis, and 15% either filed multiple claims or claimed multiple aggregations within the same claim. StoneTurn concludes that ePOC data did not validate the Huron aggregation methodology, and in any event any favorable conclusions that could be drawn are limited by too small a sample size and the fact that Participants were receiving cash and thus had no incentive to contest the Trustee's accounting.

4

    (iv) The next subject of dispute is the appropriate method to calculate net equity.  In arriving at its calculation of net equity, the Huron Report assumes that in a Triangular Transactions the Recruited Participant paid the Recruiting Participant the amount of the membership fee invoiced by TelexFree and the Recruiting Participant used his/her credits to pay the TelexFree invoice. StoneTurn challenges the reasonableness of this assumption, asserting there is insufficient factual evidence to support the assumption that money always changed hands, or that if it did, the payments were uniformly 100 cents on the dollar. Further, StoneTurn states that Huron's assumption that credits were 100% monetized in triangular transactions cannot be squared with Huron's other assumption that credit transfers between participants were completely unmonetized, and thus can be ignored for purposes of calculating net equity.

    (v) The final material differential between the Huron Report and the StoneTurn Report relates to the transfer of credits between separate user accounts.  StoneTurn asserts that the calculation of net equity should also include the purchases by Participants of credits from other Participants.  Huron excluded such transactions from the calculation of net equity on the basis that (a) by order of the Court, those transactions were expressly excluded in determining a claim, and (b) those transactions were only between Participants and TelexFree was not a party. Accordingly, TelexFree neither gave nor received consideration for those third-party credit transactions.   StoneTurn disputes that TelexFree was not involved in the credit transfers, as the transfers were clearly reflected in the SIG system with double-entries, and TelexFree even charged users a 3% fee for each transfer. Further, as stated above, StoneTurn challenges Huron's assumption that credits were never sold for cash when the Trustee reaches the opposite conclusion with respect to triangular transactions, where a certain amount of credits were essentially sold to a potentially new user in exchange for collecting an identical amount in

5

cash. Further, the Class Defendants believe that the Court's prior orders allow and indeed require any transfer of cash, including those evidenced by credit transfers, to be factored into the net equity calculations.

6. The Parties submit that in order to resolve the differences between the Huron Report and the StoneTurn Rebuttal, the Court will need to conduct an evidentiary hearing, at which each expert would be examined by the opposing Party, similar to a "Daubert" hearing.

7. The Parties would request the Court schedule a management conference to address the most efficient manner to proceed.

Respectfully submitted,

STEPHEN B. DARR, Trustee of the Estates of
TELEXFREE, LLC, TELEXFREE, INC., and
TELEXFREE FINANCIAL, INC.

By his attorneys,

 */s/ Charles R. Bennett, Jr.*
Charles R. Bennett, Jr. (BBO #037380)
Murphy & King, Professional Corporation
One Beacon Street
Boston, Massachusetts  02108
Tel.:  (617) 423-0400
Fax:  (617) 423-0498
CBennett@murphyking.com


BENJAMIN ARGUETA, A REPRESENTATIVE
OF A CLASS OF DEFENDANT NET
WINNERS,

By their attorneys,


/s/  Ilyas J. Rona
Ilyas J. Rona (BBO #642964)
Michael J. Duran (BBO #569234)
Milligan Rona Duran & King

6

784860

        50 Congress Street, Suite 600
        Boston, MA 02109-4075
        Tel:  (617) 395-9570
        Fax:  (855) 395-5525
        ijr@mrdklaw.com
        mjd@mrdklaw.com


MARCO PUZZARINI, A REPRESENTATIVE
OF A CLASS OF DEFENDANT NET WINNERS

By their attorneys,


/s/ Ilyas J. Rona
Ilyas J. Rona (BBO #642964)
Michael J. Duran (BBO #569234)
Milligan Rona Duran & King
50 Congress Street, Suite 600
Boston, MA 02109-4075
Tel:  (617) 395-9570
Fax:  (855) 395-5525
ijr@mrdklaw.com
mjd@mrdklaw.com

Dated: September 4, 2020

7

784860