# Exhibit I.



UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>TELEXFREE, LLC,<br>TELEXFREE, INC. and<br>TELEXFREE FINANCIAL, INC.,<br><br>Debtors. | Chapter 11 Cases<br><br>14-40987-FJB<br>14-40988-FJB<br>14-40989-FJB<br><br>Jointly Administered |
| STEPHEN B. DARR, TRUSTEE OF THE ESTATES OF TELEXFREE, LLC, TELEXFREE, INC. and TELEXFREE FINANCIAL, INC.,<br><br>Plaintiff,<br>v.<br><br>FRANTZ BALAN, A REPRESENTATIVE OF A CLASS OF DEFENDANT NET WINNERS,<br><br>Defendants. | Adversary Proceeding<br>No. 16-4006 |
| STEPHEN B. DARR AS TRUSTEE OF THE ESTATES OF TELEXFREE, LLC, TELEXFREE, INC. and TELEXFREE FINANCIAL, INC.,<br><br>Plaintiffs,<br>v.<br><br>MARCO PUZZARINI AND SANDRO PAULO FREITAS, REPRESENTATIVES OF A CLASS OF DEFENDANT NET WINNERS,<br><br>Defendants. | Adversary Proceeding<br>No. 16-4007 |

## **AFFIDAVIT OF SANDRO PAULO FREITAS**

I, Sandro Paulo Freitas, hereby state and declare as follows:



1. The following is true and accurate to the best of my personal knowledge, recollection, and belief. If called upon, I am competent to testify about the subjects discussed below.

2. I am a resident of Madeira, an autonomous island region of Portugal that is about 1,000 kilometers southwest of the Portuguese mainland. In 2013, Madeira had a population of approximately 275,000 people.

3. I have lived in Madeira for 40 years.

4. TelexFree was very popular in Madeira. A large proportion of people in Madeira were involved in some way in TelexFree. At least 13 of the named defendants in the International Class Action live in Funchal, the largest city in Madeira.

5. I was involved in TelexFree for a roughly 17-month period in 2013 and 2014. Based on my involvement during that time period, I have familiarity with TelexFree and its systems.

6. In my involvement in TelexFree, I did not receive $1,647,863 in cash (either in Euros or U.S. Dollars) or any amounts close to that figure.

7. I understand the Expert Report of Timothy J. Martin, dated April 13, 2018, that the Trustee used to identify "net winners" and determine the amount of "net winnings" was deemed inadmissible by the Court on June 22, 2021.



8.  I also understand that the Trustee is now requesting permission from the Court to appoint a new expert witness, who will presumably develop a new methodology and process for determining the identity of the "net winners" and determine the amount of "net winnings."

9.  To my knowledge, the only basis for the Trustee to name me as a defendant and say that I earned $1.6 million was the analysis described in the Martin report. Because that report was declared inadmissible, I am unaware of what other basis there is to keep me as a defendant.

10. Allowing the Trustee to present a new expert report with an entirely new aggregation method is highly prejudicial to me and the other class members.

11. I have spent over five and a half years defending the case the Trustee has presented. I have incurred significant personal legal fees for my Portuguese lawyers, who have worked closely with the appointed class counsel to prepare our defense.

12. As a class representative, I spent a significant amount of time and expended a significant amount of legal fees beginning in 2017 to dispute the Trustee's faulty methodology.

13. The false accusation that I made $1.6 million at the expense of other people has affected my life in many aspects during the last six years, clouding my reputation, and limiting enormously many of my personal and



professional relationships. I worked hard to help class counsel prove that the Trustee used a flawed methodology. Allowing the Trustee to use a new methodology and make new calculations only increases the stress on me and the others and further clouds my professional and personal reputation.

14. The passage of this time from 2017 to the present has caused my memory and the memory of many of the other Telexfree participants to fade. I could not provide the same type of detailed information regarding my transactions with other Telexfree participants that I provided to MRDK and Stoneturn in 2017.

15. I do not have the same access to transaction information that I or the other participants I worked with possessed in 2017 when I assisted MRDK and Stoneturn with their critique of the Trustee's aggregation process.

16. Specifically, many people with discoverable information have lost access to the email accounts used and those email accounts have already been deactivated and the information that might have been stored in these email accounts is no longer accessible. I do not know if it is possible to recover such information, but it will certainly entail a cost.

17. If I am called upon to provide additional information in order to prepare a new expert rebuttal, I will no longer be able to count on the testimony of some people with whom I transacted with. Unfortunately, some have died. These participants include: Agostinho Mendes Neves (d. October

I Page 6 of 9

2017); Judite Figueira de Sousa (d. November 2020); Ermelinda Vitoria Freitas (d. October 2021). If called upon to defend new claims against me, I will obviously also not be able to call upon these participants in my defense.

18. Since 2014, I have also changed my computer. While I tried to keep all information that I thought was relevant at the time of the change, I did not conceive of the fact that the Trustee would try to abandon the assumptions contained in the Martin Report and replace them with brand new assumptions in a new report. It is therefore possible that I have irretrievably lost information that, if there is a new expert report, would be essential to my defense.

19. I have moved houses, and naturally I did not keep all papers and objects (such as old computers) when moving to the new house. Now, given the possibility of admitting a new expert report presented by the Trustee, I don't know if the documentation and information I no longer hold could have relevance in my defense against the new report.

20. In fact, as of today, I am unable to even anticipate what steps I would have to take to defend myself from a new expert because I don't know what new assumptions the new expert will come up with and what new methods of aggregation the new expert will use. It is therefore unfair to even imagine all the ways the Trustee's efforts are prejudicial because it is only possible to know the true extent of prejudice if and when a new report is



presented. Until then, I cannot even anticipate what route of defense I should be preparing to face such new assumptions and methods.

21. The passage of time compounds an already difficult situation that I and others I worked with Telexfree have accessing records.

22. Within a year of the TelexFree bankruptcy, two banks that I and others in Telexfree used collapsed. Banco Espírito Santo (BES) was the second largest bank in Portugal at the time it collapsed. Banif (Banco Internacional do Funchal) was the seventh largest and the largest in Funchal at the time it collapsed. Both banks were widely used by participants of Telexfree in Funchal. Both banks failed and were split into "good" assets and "toxic" assets. To retrieve records from these now would either be impossible or cause me to incur significant costs.

23. The legal costs I have incurred out of my own pocket are substantial.

24. I have retained a local Portuguese lawyer and an American lawyer at the beginning of this case, and incurred over €16,000.00.

25. Beginning in 2017, I have retained a law firm in Funchal to better monitor the process in the US, which helped me to understand the process in English and its legal language. The law firm I have retained is Morais Leitão, Galvão Teles, Soares da Silva & Associados (Morais Leitão), one of the top law firms in Portugal, with over 250 lawyers located in Lisbon, Porto, and

Funchal.

26. Since 2017, attorneys at Morais Leitão have spent more than 90 hours working with class counsel regarding the Trustee's aggregation methodology, incurring an additional approximately €16,000.00 in personal legal fees and costs associated with this topic.

27. If the calculation of the alleged net winnings attributed to me by the Trustee changes, as well as if the respective assumptions change with the presentation of a new report, the additional legal fees will be substantial because my Portuguese lawyers at Morais Leitão will again have to restart their work and begin re-analyzing data and collection more information.

28. Prolonging this case after so much time and money has been spent just so that the whole process can go backwards will cause me hardship and added cost.

29. Adding uncertainty about who is a net winner and the amount of net liability at this late stage five years into the litigation and seven years after the bankruptcy of Telexfree will also cause me hardship and added cost.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 31, 2021.

*Sandro Paulo Freitas*
Sandro Paulo Freitas