UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>TELEXFREE, LLC,<br>TELEXFREE, INC. and<br>TELEXFREE FINANCIAL, INC.,<br><br>    Reorganized Debtors. | Chapter 11 Cases<br><br>14-40987-FJB<br>14-40988-FJB<br>14-40989-FJB<br><br>Substantively Consolidated |
| STEPHEN B. DARR, TRUSTEE<br>OF THE ESTATES OF TELEXFREE, LLC,<br>TELEXFREE, INC. and TELEXFREE<br>FINANCIAL, INC.,<br>    Plaintiff,<br>v.<br>FRANZ BALAN, A REPRESENTATIVE OF A<br>CLASS OF DEFENDANT NET WINNERS,<br>    Defendants. | Adversary Proceeding<br>No. 16-4006 |
| STEPHEN B. DARR AS TRUSTEE<br>OF THE ESTATES OF TELEXFREE, LLC,<br>TELEXFREE, INC. and TELEXFREE<br>FINANCIAL, INC.,<br>    Plaintiff,<br>v.<br>MARCO PUZZARINI AND SANDRO PAULO<br>FREITAS, REPRESENTATIVES OF A CLASS<br>OF DEFENDANT NET WINNERS,<br>    Defendants. | Adversary Proceeding<br>No. 16-4007 |

**REPLY BY LIQUIDATING TRUSTEE IN SUPPORT OF HIS MOTION TO
SCHEDULE CASE MANAGEMENT CONFERENCE RESPECTING
SUPPLEMENTATION OF EXPERT REPORTS**

## INTRODUCTION

The Trustee has filed a *Motion by Liquidating Trustee to Schedule a Case Management Conference Respecting Supplementation of Expert Reports* (the "Motion") to permit him to file a supplemental expert report ("Supplemental Report") in order to address issues raised by the

1

Court in its Memorandum and Decision of June 22, 2021 (the "Decision") excluding the Trustee's expert report (the "Huron Report"). The representatives of the defendant class (the "Class Representatives") have opposed the Motion, asserting that the Trustee has not established "good cause" for amending the Scheduling Order because: (1) the Trustee was not diligent in pursuing the litigation and the development of the Huron Report; (2) the Class Representatives will suffer prejudice if the Trustee is permitted to file a Supplemental Report; and (3) a Supplemental Report would be futile based on the inadequacies of the underlying data. As detailed below, these arguments are wholly unsupported by the applicable law when applied to the unique facts and circumstances presented in these two Class Actions.

In exercising its discretion to allow an amendment to a scheduling order the Court should consider a multiplicity of factors including the history of the litigation, the proponent's need for the challenged evidence, the justification for the request, and the opponent's ability to formulate a response. *See Curet-Valazquez v. ACEMLA De P.R., Inc.,* 656 F.3d 47 (1st Cir. 2011). When these factors are viewed in the context of the unique circumstances of this case, it is clear that the amendment of the Scheduling Order is warranted. The Trustee was diligent both in meeting his disclosure obligations and in the prosecution of these Class Action cases. The Trustee had a good faith belief that the Huron Report would be admissible in the Class Actions given the Court's adoption of the Huron aggregation methodology in determining the Participant's net equity in connection with the Claims Determination Process. Further, the Huron methodology played a material role in the criminal prosecution of certain TelexFree principals. It is equally clear under the circumstances of these cases that the Defendants will suffer no prejudice by allowing the filing of a Supplemental Report because no trial date has been set and the Trustee has been funding the defense costs of the Class Representatives. Finally, it is premature to

2

address any issue of futility until the Court has had the opportunity to consider the Supplemental Report.

Thus, from the totality of the circumstances, the Trustee has clearly demonstrated good cause for amending the Scheduling Order and permitting the Trustee to submit a Supplemental Report. *Rimbert v. Eli Lily & Co.*, 647 F.3d 1247, 1256 (10th Cir. 2011); *Brown v. China Integrated Energy, Inc.* 2014 U.S. Dist. Lexis 194203 (C.D. Cal. 2014)(the unique circumstances in the case called for flexibility in the discovery schedule, and denial of the motion to amend the discovery schedule to permit parties to secure additional expert witnesses after initial witness or witnesses have been disqualified was an abuse of discretion).

## ARGUMENT

The primary issue in these Chapter 11 cases has always been the determination of each Participant's net equity – that is, which Participants in the Ponzi scheme were the victims of the scheme having invested more in TelexFree than they received from it ("Net Losers"), and which Participants were the winners having received more from TelexFree than they invested ("Net Winners"). The resolution of this issue was central to ensuring equality of distribution by determining those Participant-Net Losers who have an allowable claim entitled to a distribution and those Participant-Net Winners who received avoidable transfers and are obligated to return money to the Estate for distribution to Net Losers.

The Trustee and the Class Representatives agree that in order to determine each Participant's net equity, it is necessary to include all of a Participant's User Accounts.[1] The Trustee and the Class Representatives further agree that given the millions of User Accounts and

---

[1] As noted in the Motion, each time that a Participant bought a membership plan in TelexFree, the Participant was assigned a User Account. Most of the Participants had multiple User Accounts, some in the thousands.

3

billions of lines of data entry, and certain deficiencies in the data caused by Participants entering inaccurate, inconsistent or incomplete data, the Trustee was presented with novel and unique issues in developing a methodology for the aggregation of Participant User Accounts and calculation of each Participants' net equity.

In addition to the challenges presented by the data, the Trustee also faced unique procedural issues relating to the prosecution of the actions. The actions were commenced as defendant Class Actions, which presented its own procedural issues in obtaining certification of the defendant classes and appointment of class representatives and counsel for the classes. In addition to those issues, the Trustee's standing to prosecute certain claims against Net Winners was challenged by the representatives of a group of Participants in a parallel proceeding pending in the United States District Court. [C.A. No. 4:14-md-02566-TSH].

1. **The Trustee Has Been Diligent.**

    A. **The Trustee has been diligent in retaining an expert.**

The Trustee has been diligent in retaining an expert and submitting an expert report and justifiably relied upon the Huron aggregation methodology. The Trustee has been equally diligent in prosecuting the Class Actions. From the outset, the Trustee recognized the need to retain expert assistance in determining Participant net equity. Within weeks of his appointment, the Trustee retained his experts, Huron.[2] Huron worked with the United States Department of Homeland Security ("DHS") to obtain a copy of all of the TelexFree electronic data files, referred to as SIG, as DHS had seized TelexFree's records shortly after the filing of the Chapter 11 cases. Upon receipt of a copy of SIG, Huron began the laborious tasks of reviewing the data,

---

[2] The Trustee initially retained Mesirow Financial Group. The Trustee later retained Huron Consulting Group after the professionals at Mesirow working on the TelexFree case migrated to Huron. For convenience, the Trustee's experts are referred to collectively as "Huron".

4

understanding the structure of the data in SIG, and identifying and analyzing the issues that needed to be addressed. Once they developed an understanding of SIG, Huron immediately began testing various methodologies to determine a viable means to link the Participant User Accounts and to calculate Participants' net equity.[3] The Trustee's immediate retention of an expert stands in stark contrast to those cases cited by the Class Representatives where the moving party delayed in retaining an expert, failed to meet various scheduling deadlines, and then sought to be excused for the lack of diligence and sought permission to submit a late report. *See, e.g., Gagnon v. Teledyne Princeton*, 437 F.3d 188 (1st Cir. 2006 )(court denied plaintiff's motion to amend scheduling order and submit late an expert report; plaintiff failed to provide justification for his failure to secure an expert for the three years the litigation had been pending); *Cabana v. Forcier*, 200 F.R.D. 9 (D. Mass. 2001)(denying plaintiff's motion to amend scheduling order where the need for expert testimony was obvious from inception of the case and plaintiff failed to timely secure an expert).

After the Class Representatives retained StoneTurn as their experts, the experts engaged in informal discovery. In connection therewith, Huron produced for StoneTurn a complete copy of SIG and conducted tutorials for StoneTurn on the structure of SIG and information contained in SIG, thereby facilitating StoneTurn's ability to review the data. Thereafter, StoneTurn met with Huron to discuss StoneTurn's preliminary concerns regarding Huron's methodology. The Class Representatives would now like the Court to believe that StoneTurn educated the Trustee's experts to the issues in the Huron Report, and the Trustee simply ignored StoneTurn's

---

[3] The Trustee would direct the Court's attention to various pleadings and professional applications for compensation setting forth in detail the extraordinary efforts engaged in by the experts in order to address the issue of aggregating the User Accounts. See, e.g., *Status Report* [docket no. 577]; *Motion by Chapter 11 Trustee to Establish Omnibus Procedures for the Resolution of Disputed Participant Claims* [docket no. 921]; applications for compensation of Mesirow and Huron [docket nos. 599, 747, 746, 812, 873, 936, 1015, 3461].

5

comments. From this position the Class Representatives argue that the Court should find a lack of diligence because the Trustee should have entertained those concerns and retained a new expert or adopted a different methodology. In fact, Huron considered StoneTurn's comments and criticism, but in Huron's opinion a material modification to their methodology was not warranted for several reasons.

First, the Trustee had a good faith belief that the Huron methodology would be admissible in connection with the net equity calculations in the Class Actions because the Court had accepted Huron's methodology in the Claims Determination Process to determine the amount of Claims for Net Losers. The Court did so only after an evidentiary hearing where Timothy Martin of Huron provided a detailed presentation on the implementation of the process for establishing each Participant's net equity (the "Net Equity Formula"). The Net Equity Formula provided for comparing amounts invested by a Participant in the TelexFree scheme with amounts received, and to aggregate all of a Participant's User Accounts in order to establish their Net Losses or Net Winnings. Mr. Martin explained at the evidentiary hearing how the Net Equity Formula would be implemented in the Claims Determination Process using an interactive electronic claims Portal that Huron created, which would allow each Participant to access the Huron User Account aggregation results, make adjustments to the results with supporting documentation, and ultimately electronically file a claim.

After the Court approved the Net Equity Formula and the Claims Determination Process by Orders dated January 26, 2016, approximately 132,000 electronic Claims were filed through the Portal, in which ninety-six percent (96%) of Participants accepted the aggregation results of the Huron methodology. By Order dated December 26, 2017, the Court thereafter established a process to resolve disputed claims that relied upon the Huron methodology as *prima facie*

6

evidence of the Participant's claim amount. The Trustee subsequently made interim distributions of approximately $97,000,000 to Net Loser Participants, all based upon the Huron methodology.

Further supporting the Trustee's good faith belief as to the admissibility of the Huron methodology was the adoption of the Huron methodology by the United States Department of Justice ("DOJ") in the criminal prosecution of certain TelexFree principals. Huron worked closely with the DOJ in connection with the criminal prosecution. Following a guilty plea of one of the Telexfree principals, the DOJ filed a sentencing memorandum which incorporated and relied upon a 35-page report prepared by Huron entitled *Analysis of Damages* that described its methodology for calculating the loss suffered by the Participants [Case No. 4:14-cr-40028-TSH, Doc. 332-1].

### B. The Trustee has been diligent in prosecuting the Class Actions.

In addition to his timely retention of experts, the Trustee has been diligent in his prosecution of the Class Actions, particularly taking into account the unique challenges associated with a defendant class action proceeding. The Class Representatives' suggestion that the Trustee has been dilatory is highly misleading.

The Trustee identified more than 90,000 Net Winners through the Huron aggregation methodology (approximately 75,000 domestic Net Winners and 15,000 foreign Net Winners). The Net Winners were dispersed in dozens of countries and were, for the most part, unrepresented and did not speak English as a first language. The Trustee concluded that the only way to commence recovery of Net Winnings without overwhelming the Court was to institute a defendant class action. The Trustee further concluded that he would need to commence two separate Class Actions, one with respect to domestic Net Winners and one for foreign Net

Winners because of jurisdictional disputes that might arise in the context of the foreign defendants.

The Complaints in the two defendant Class Action proceedings were filed in January 2016. A principal issue in these defendant Class Action proceedings, as in all defendant class actions, relates to the appointment of the class representative(s), the selection of counsel, and the funding of defense costs. In the initial weeks after the Complaints were filed, multiple answers were filed by individual defendants. The Trustee conferred with these defendants respecting potential class representation and their appointment of class counsel, but initial efforts were unsuccessful. In an effort to increase the pool of named defendants who might serve as class representatives, the Trustee worked with Huron to identify Net Winners who might be additional named defendants. The Trustee then filed a first amended Complaint in the domestic action in April 2016 and a first amended Complaint in the foreign action in May 2016, adding dozens of additional named defendants.

In the spring of 2016, Milligan Rona Duran & King ("MRDK") informed the Trustee of its potential willingness to serve as class counsel in the domestic action, subject to establishment of an acceptable arrangement for funding defense costs. The Trustee canvassed applicable authority for providing estate funds for defendant class counsel. The Trustee filed a Report with the Court in June 2016 regarding the initial discussions with MRDK and a potential budget to fund defense costs. The Trustee ultimately reached agreement with the domestic defendants respecting appointment of a Class Representative and appointment and funding of counsel, and the class certification order was entered in October 2016, nine months after the Complaint was filed.

8

The foreign class action presented even greater difficulty in securing class representation and class counsel for the defendants. The Trustee amended the Complaint in the foreign Class Action twice, once in May 2016 and again in January 2017, in each case to name dozens of additional defendants in the hopes of identifying a willing representative who would then retain defense counsel.

In the spring of 2017, two counsel expressed an interest in potentially representing the foreign class defendants, Attorney Francis Morrissey and MRDK. Before class certification could be achieved, however, the Trustee had to ward off multiple motions to dismiss the foreign Class Action for lack of personal jurisdiction. Attorney Morrissey filed motions to dismiss on behalf of four named defendants in March 2017. MRDK filed a motion to dismiss on behalf of Marco Puzzarini in May 2017. The Trustee opposed the motions to dismiss, all of which were denied in June 2017. The Court then needed to attend to the competing motions for designation of class representatives and appointment of class counsel. The Trustee again needed to engage in discussions respecting a potential budget to fund defense costs. After hearing, on August 3, 2017, the Court designated Mr. Puzzarini as class representative in the foreign Class Action, and MRDK was appointed as class counsel. As a result of the foregoing, and through no delay on the part of the Trustee, class certification and appointment of defense counsel was not completed in both Class Actions until more than one and a half years after the filing of the Complaints.

A second obstacle that delayed the prosecution of the Class Actions was the competing claims brought against Net Winners by the Plaintiff Interim Executive Committee (the "PIEC"). In each Triangular Transaction, a recruited Participant paid his membership fee directly to a recruiting Participant, who then retained the membership fee and satisfied the recruited Participant's invoice to TelexFree by using his/her accumulated credits. Under the Net Equity

9

Formula, the Trustee increased a Participant's Net Losses by amounts paid in a Triangular Transaction and increased a Participant's Net Winnings by amounts received pursuant to a Triangular Transaction. The Trustee's pursuit of Net Winners, therefore, included recovery of amounts paid by a recruited Participant to a recruiting Participant in a Triangular Transaction.

The PIEC, which had been appointed to represent certain TelexFree Participant-plaintiffs in Multi-District Litigation ("MDL") pending in the United States District Court for the District of Massachusetts, sought to amend their Complaint in the MDL to pursue recovery of amounts paid by recruited Participants to recruiting Participants in Triangular Transactions, thereby competing with the Trustee to recover amounts paid on the same transactions. In 2015, the Trustee commenced an adversary proceeding against the PIEC (the "Dos Santos Action"), to enjoin their pursuit of the Triangular Transactions and for a finding that amounts paid by Participants in Triangular Transactions constituted property of the estate [A.P. 15-4055].

In early 2017, the Trustee and the PIEC brought cross motions for summary judgment in the Dos Santos Action, seeking a declaration as to the rights to pursue monies paid through Triangular Transactions. The Class Representatives were aware of the Dos Santos Action and recognized that the Class Actions could not proceed in any meaningful way until there was an adjudication of the rights to recover the payments made in Triangular Transactions. Not only were they aware but, in February 2017, the Class Representatives filed a brief in support of the Trustee's motion for summary judgment in the Dos Santos Action, requesting a finding that the Trustee was entitled to pursue claims arising out of the Triangular Transactions.

On December 18, 2017, and because the matter in dispute was considered to be noncore, the Court entered proposed findings of fact and rulings of law in favor of the Trustee on his cross-motion for summary judgment, holding that only the Trustee's claims could proceed

against Net Winners because the TelexFree Estates had a property interest in the funds paid through Triangular Transactions [A.P. 15-4055, Doc. No. 98]. By Order dated September 26, 2018, the District Court adopted these proposed findings and rulings, *Darr v. Dos Santos*, C.A. 18-40007-TSH (D. Mass. Sept. 26, 2018) [Doc. 14].

The PIEC appealed to the First Circuit. The Trustee and the Class Action Representatives conferred, again recognizing that the Class Actions could not be resolved until there was a final ruling on the issue of ownership of claims relating to the Triangular Transactions. The First Circuit affirmed the District Court on October 29, 2019, thus finally resolving the PIEC's obstruction of the Class Actions. *In re TelexFree, LLC*, 941 F.3d 576, 583 (1st Cir. 2019).

To summarize, approximately four years was consumed during the pendency of the Class Actions in the appointment of Class Representatives, appointment and funding of class counsel, and adjudication of rights to recover amounts paid through Triangular Transactions, a critical issue in the case. The Class Representatives were fully aware of, and actively participated in the resolution of, these issues, as all parties recognized the necessity of clearing these obstacles before proceeding with the Class Actions.

On or about February 3, 2020, less than three months after the First Circuit ruling, the Trustee delivered the Huron Report to the Class Representatives. In July 2020, the Class Representatives submitted their Rebuttal Expert Report, and an evidentiary hearing was held in November 2020. On June 22, 2021, the Court issued the Decision, after which the Trustee immediately retained Borelian Corporation ("Borelian"), a firm specializing in large data analytics, which is in the process of preparing its expert report.

The Trustee's diligence in resolving issues beyond his control is plainly evident. The Class Representatives' allegations of delay ring hollow, particularly given the history of the matter and that the Class Representatives actively participated in support of the Trustee's position in the Dos Santos Action.

### 2. The Class Action Defendants Will Not Be Prejudiced.

The Class Action defendants will not suffer any prejudice by permitting the Trustee to submit the Borelian report. The Trustee's theory of liability has not changed, there are no trial or other dates scheduled, and the costs incurred by the Class Representatives can be addressed.

Contrary to the allegations of the Class Representatives, the Trustee is not pursuing a new theory of liability. The theory of liability is, and has always been, the recovery from Net Winners of the Ponzi scheme to compensate Net Losers on the basis of fraudulent transfer. The Court has found TelexFree to have engaged in a Ponzi and pyramid scheme, and such finding is the law of the case [docket no. 654]. As a result, there is a presumption that: TelexFree made transfers to Participants with an actual intend to hinder, delay, or defraud creditors; TelexFree was insolvent at the time of the transfers; and that TelexFree received less than reasonably equivalent value for transfers made in excess of the Participants' investments. *In re Arbco Capital Mgmt., LLP*, 498 B.R. 32 (Bankr. S.D.N.Y. 2013)(actual intent to hinder, delay or defraud creditors established as matter of law in Ponzi case); *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87 (Bankr. S.D.N.Y. 2011)(Ponzi schemes are presumptively insolvent); *Georgelas v. Olsen*, 2020 U.S. Dist. LEXIS 224686 (D. Utah 2020)(Ponzi investors who receive more than their initial investment have only provided reasonably equivalent value up to the portion of their investment).

The only remaining issue in dispute is the quantification of the amount of Participants' Net Winnings. This is not a theory of liability but a measure of damages, liability having been established by the Ponzi presumptions.[4] The method used to determine Net Losers during the claims allowance process, in accordance with the order approving the Net Equity Formula [docket no. 687], was to aggregate the User Accounts for each Participant and to net the losses and winnings in each such User Account to determine the overall Net Loss or Net Winning for a Participant. The aggregation of User Accounts by Participant is similarly the only logical method to determine Net Winners, and there has been no suggestion by the Class Representatives to the contrary. The principal issue in dispute has been the manner in which a Participant's User Accounts are aggregated given the inaccurate, incomplete, and inconsistent data input by Participants and the lack of an automated aggregating mechanism in the TelexFree database.

Contrary to the Class Representatives' allegation, the Court did not find that the quality of the data prohibited an aggregation of a Participant's User Accounts, but only that Huron had not provided sufficient justification to support certain assumptions built into its aggregation methodology. Borelian will address the Court's concerns.

The Class Action Defendants can rely on the same evidence they could or would have offered to rebut the aggregation results of the Huron methodology. Namely, if Defendants have documents, records, or other extrinsic evidence to show that certain User Accounts should be included or excluded from their respective aggregation results, or that they received no consideration for individual transactions, such evidence is equally applicable to any future

---

[4] As set forth in the Motion (p. 14), the Trustee expects to create a Net Winner Portal which will provide individual Defendants with the ability to review any final aggregation results and to challenge those results on an individual basis.

Borelian aggregation results. The Class Representatives' specious claim that unspecified evidence may spoil rings hollow, as the Defendants had a duty to preserve such evidence since the initiation of the Class Actions.

Because there is no trial date or any other deadline set, the Class Representatives have no basis to allege surprise or the need for "a frantic, last-minute scramble", see Opposition, at pg. 22 [docket no. 553 in A.P. No. 16-4007]. Rather, the Class Representatives will have more than adequate time and opportunity to address Borelian's expert report. The Motion requests a Scheduling Order that will provide the Class Representatives with sufficient time to conduct expert discovery and submit a rebuttal report. The Class Representatives will not need to "start from scratch", as the analysis of the Borelian report will be based upon the same TelexFree database and the same data fields with which MRDK and StoneTurn are already intimately familiar.

This situation is easily distinguishable from the cases cited by the Class Representatives, where the moving party suddenly discloses an expert on the eve of trial thereby denying the non-moving party an opportunity to adequately prepare. *See, e.g., Thibeault v. Square D Co.*, 960 F.2d 239 (1st Cir. 1992) (affirming court's decision to preclude testimony where plaintiff disclosed 7 new expert witnesses in a supplemental answer to interrogatories 4 days before trial); *Freund v. Fleetword Enters., Inc.*, 956 F.2d 354 (1st Cir. 1992), *cited* in *Lawes infra* (trial court properly excluded expert testimony where substance of testimony not made known to the defendants until the middle of the trial); *but see Lawes v. CSA Architects & Engineers LLP*, 963 F.3d 72 (1st Cir. 2020)(exclusion of expert testimony for failure to comply with scheduling order reversed on appeal; circuit court found that the defendant had ample time to prepare for trial).

Here, as discussed *supra*, the Trustee justifiably relied upon the Huron methodology as expert opinion as to the aggregation of User Accounts based upon the history of the case, and now seeks to submit the Borelian supplemental expert report to address the concerns raised by the Court. Exclusion of the supplemental expert testimony would be tantamount to an end of the class action litigation, leaving the Trustee to pursue individual defendants on a costly and time consuming basis. Under the reasoning in *Lawes*, these circumstances do not remotely warrant the "strong medicine" of preclusion.

The Class Representatives' final argument for prejudice, the additional expense that will be incurred for expert discovery, fails for two reasons. Additional expense is not prejudice that warrants exclusion of new expert testimony. *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1255 (10th Cir. 2011). Second, and more importantly, the Class Representatives' counsel and expert costs have been heretofore borne by the TelexFree Estates, and to the extent that additional costs are incurred as a result of the Supplemental Report, these costs can be separately addressed.

3. **The Submission of the Report Is Not Futile.**

The Class Representatives' objection on the grounds of futility is premature and speculative. The objection, which rests upon the assertion that the quality of the data "dooms an analysis", is premised on the fact that Participants entered inaccurate, inconsistent or incomplete information when opening a User Account.[5] Thus, the Class Action defendants, having entered misleading information, now seek to use these data infirmities to shield themselves from liability and walk away with millions of dollars, which unquestionably should be returned to the Estate and distributed to the victims of the Ponzi scheme.

---

[5] As referenced herein, the data input by Participant when opening User Accounts formed the basis for the Claims Determination Process, including the resolution of 132,000 claims filed and the distribution of approximately $97,000,000.

15

The Court should not countenance such an unjust result by preventing the consideration of the Borelian report. As numerous courts have noted in other contexts, "the most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which its own wrong has created." *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 (1946)("The constant tendency of the court is to find some way in which the damage can be awarded where the wrong has been done.") *Story Parchmant Co. v Paterson Parchmant Paper Co*, 282 U.S 555, 563 (1951)(difficulty in ascertainment should not be confused with the right of recovery… "it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relive the wrongdoer from making any amend for his acts"). This is exactly what the Class Representatives are seeking in this case - to prevent the Court from even considering a supplemental report, thus allowing the Class Action defendants to retain their ill-gotten gains.

Under *Daubert*, the Trustee is not required to prove that his expert's assessment is infallible for admissibility. He need only show that the methodology rests on "good grounds" "based on what is known." *Milward v. Acuity Specialty Products Group, Inc.*, 639 F.3d 11, 15 (1st Cir. 2011), cert. den. 132 S. Ct. 1002 (2012) (expert testimony should be tested by the adversarial process rather than excluded); *Cook v. Rockwell International*, 580 F. Supp. 2d 1071, 1085 (D. Col. 2006) (proffering party need not establish the "best or most reliable methodology" out of all conceivable alternatives for admissibility. The reliability of an expert's methodology is not determined by the quality of data used in applying the methodology"); *Manpower Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013) ("Assuming a rational connection between the data and the opinion–as there is here–an expert's reliance on faulty information…does not go to

16

admissibility.") *Id.* at 809 (citation omitted.); *see also Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 579 (N.D. Ill. 2018).

Prior to undertaking this engagement, Borelian was provided with the competing expert reports and the Decision. Further, they were given access to SIG so that they could make an assessment as to the quality of the data to determine whether they could address the concerns raised by the Court. Borelian has considered the quality of the data and determined that it can address the Court's concerns. The Borelian methodology incorporates initial deterministic elements based on accepted industry practice in the field of data analytics. The Borelian methodology will also include probabilistic components, again based on industry standard practices. The Borelian methodology further incorporates accepted data cleaning techniques to ensure that salvageable data fields are not prematurely discarded. The combination of these components ensures reliability under *Daubert*.[6]

## CONCLUSION

For the forgoing reasons, the Motion should be allowed and the Trustee should be permitted to proffer the Borelian expert report.

STEPHEN B. DARR,
LIQUIDATING TRUSTEE,
By his counsel,

*/s/ Andrew G. Lizotte*
Harold B. Murphy (BBO #362610
Charles R. Bennett, Jr. (BBO #037380)
Andrew G. Lizotte (BBO #559609)
MURPHY & KING, P.C.
28 State Street, Suite 3101
Boston, MA 02109
Tel: (617) 423-0400
alizotte@murphyking.com

Dated: November 16, 2021 (803844)

---

[6] The principals of Borelian, Cameron Freer and Mark Meras, are impeccably credentialed professionals at the forefront of data analytic industries with specific expertise in large data sets.