## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>TELEXFREE, LLC,<br>TELEXFREE, INC. and<br>TELEXFREE FINANCIAL, INC.,<br><br>Reorganized Debtors. | Chapter 11 Cases<br><br>14-40987-EDK<br>14-40988-EDK<br>14-40989-EDK<br><br>Substantively Consolidated |
| STEPHEN B. DARR, TRUSTEE<br>OF THE ESTATES OF TELEXFREE, LLC,<br>TELEXFREE, INC. and TELEXFREE<br>FINANCIAL, INC.,<br>Plaintiff,<br>v.<br>FRANZ BALAN, A REPRESENTATIVE OF A<br>CLASS OF DEFENDANT NET WINNERS,<br>Defendants. | Adversary Proceeding<br>No. 16-4006 |
| STEPHEN B. DARR AS TRUSTEE<br>OF THE ESTATES OF TELEXFREE, LLC,<br>TELEXFREE, INC. and TELEXFREE<br>FINANCIAL, INC.,<br>Plaintiff,<br>v.<br>MARCO PUZZARINI AND SANDRO PAULO<br>FREITAS, REPRESENTATIVES OF A CLASS<br>OF DEFENDANT NET WINNERS,<br>Defendants. | Adversary Proceeding<br>No. 16-4007 |

**AFFIDAVIT OF STEPHEN B. DARR IN SUPPORT OF OPPOSITION BY TRUSTEE TO DOMESTIC & INTERNATIONAL CLASS REPRESENTATIVES' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION BY TRUSTEE FOR SUMMARY JUDGMENT**

I, Stephen B. Darr, being duly sworn, hereby submit this Affidavit in support of the

opposition to the Motion by the Domestic and International Class Representatives (the "Class

1

Representatives") for Summary Judgment and Cross-Motion by the Trustee for Summary Judgment.

1. I am the duly appointed Liquidating Trustee ("Trustee") of the substantively consolidated bankruptcy estates of TelexFree LLC, TelexFree Inc. and TelexFree Financial, Inc. ("TelexFree") pursuant to a Plan.

2. I was appointed as Chapter 11 trustee for TelexFree on June 5, 2014 and served in that capacity until confirmation of TelexFree's Liquidating Plan of Reorganization on July 9, 2020.

3. The statements provided herein are based upon information and knowledge I have derived through my involvement in these Chapter 11 cases, as further set forth herein.

4. In order to administer the case, I needed to compute Net Losses of Participants[1] to establish the pool of claimants entitled to a distribution and the Net Winnings of Participants to identify those Participants subject to estate claims for recovery of amounts received in excess of amounts paid. I consulted the Net Equity ruling issued by the Court on January 26, 2016 [docket no. 687] in order to compute Net Losses and Net Winnings.

5. The first step in computing Net Losses and Net Winnings was to establish a methodology for aggregating the User Accounts attributable to each Participant. I retained Dr. Cameron E. Freer ("Freer") and the firm Borelian Corporation ("Borelian"), an esteemed "big data" consulting firm, to provide expert testimony on the appropriate method of aggregating the User Accounts of Participants, after the Court determined that the prior expert had not

---

[1] Terms not otherwise defined herein shall have the meaning set forth in the opposition to the Motion by the Domestic and International Class Representatives for Summary Judgment and Cross-Motion by the Trustee for Summary Judgment.

2

demonstrated the requisite reliability of the methodology employed for aggregating the User Accounts of Participants who were Net Winners in the TelexFree Ponzi scheme.

6. After the User Accounts had been aggregated, I needed to determine the identity of the Participant who was the owner of the aggregated User Accounts. At the direction of counsel, Huron Consulting Group ("Huron"), compared the information in the name field of the first User Account opened by such Participant (the "Lowest Rep ID") with the most prevalent name in the aggregation. The result of this calculation is set forth in the *Affidavit of Jean Louis Sorondo in Support of Opposition by Trustee to Domestic & International Class Representatives' Motion for Summary Judgment and Cross-Motion by Trustee for Summary Judgment* (the "Sorondo Affidavit"). I concluded based upon this calculation that there was a high correlation between the name contained in the Lowest Rep ID and the most prevalent name identified in the User Account aggregation.

7. Counsel to the Class Representatives identified a list of forty-seven (47) names that appear in the name field of User Accounts that are alleged to be fictitious. *See Affidavit of Ilyas J. Rona,* Adv. Proc. No. 16-4006, Doc. 443, at ¶25. Of these alleged fictitious names, only one, Princess Rosario, appears in a Lowest Rep ID name field. However, Princess Rosario is, in fact, a person who resides at 327 E. Union Street, Allentown, Pennsylvania, which is the address listed in her User Account information. *See* Sorondo Affidavit.

8. This information confirms my assumption that Participants would be most likely to input complete and accurate name data when first registering for TelexFree and opening a User Account.

9. Based upon this information, I determined that the use of the Lowest Rep ID provided an appropriate method of identifying the Participant for each User Account aggregation.

10. In computing Net Equity, I considered the various types of transactions in which a Participant could engage. Participants could purchase membership plans and pay membership fees directly to TelexFree (Direct Payments). Participants could purchase credits directly from TelexFree (Manual Credits, or Purchase of Credits). Participants could also redeem credits directly with TelexFree (Direct Receipts). These are referred to as "direct" transactions.

11. Participants could also open User Accounts through so-called "Triangular Transactions." A Triangular Transaction involved (a) TelexFree, (b) the Participant opening a User Account (Recruited Participant), and (c) the Participant who facilitated the transaction (the Recruiting Participant). A Triangular Transaction operated as follows: (a) a Recruited Participant registered for a TelexFree membership plan from TelexFree; (b) TelexFree issued the membership fee invoice to the Recruited Participant; (c) the Recruited Participant paid the membership fee directly to the Recruiting Participant; and (d) the Recruiting Participant used accumulated credits in the TelexFree system to satisfy the invoice of the Recruited Participant.

12. Upon my appointment as Trustee, I became familiar with "Triangular Transactions" through discussions with employees of TelexFree, discussions with Participants, and discussions with the Office of Homeland Security which had conducted an investigation of the TelexFree Ponzi scheme. See *Affidavit of John S. Soares in Support of Search Warrants*, at ¶71, attached as Exhibit "A". Based upon these sources of information, as well as my understanding of the economics of the TelexFree scheme, I concluded that it was reasonable to presume that a Recruited Participant paid cash to the Recruiting Participant in an amount equal to the credits redeemed by the recruiting Participant in order to consummate the transaction. This presumption was confirmed by the testimony of numerous Participants, as further set forth in the Cross-Motion for Summary Judgment.

13. Participants could also transfers credits between and amongst themselves (referred to as "Credit Transfers"). The Credit Transfer was a two-party transaction between Participants. Unlike the three-party Triangular Transaction which involved the purchase of a TelexFree membership plan and payment of a membership invoice, TelexFree was not a party to the Credit Transfers. TelexFree merely recorded the transfer of credits in its records and charged an administrative fee of three (3) credits for the bookkeeping entry. TelexFree credits were denominated in U.S. currency in the portal accessible to Participants on a 1 to 1 basis (one credit equaled $1). *See* Sorondo Affidavit. After understanding the mechanics of the Credit Transfers and consulting with counsel, I determined to exclude the Credit Transfers from the computation of Net Equity.

14. In connection with the assessment of damages against individual Net Winner Participants, I intend to create a process similar to that used for establishing claim entitled to a distribution. This process will enable each Participant to view electronically the User Accounts that have been attributed to the Participant. Participants will be given an opportunity to provide evidence to demonstrate that any of the User Accounts or transactions attributed to them are not property attributed to them or to provide evidence of ownership of additional User Accounts which may reduce the amount being sought.

Attested to this 11 day of September, 2023

*/s/ Stephen B. Darr*
Stephen B. Darr

823880