UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>TELEXFREE, LLC,<br>TELEXFREE, INC.,<br>TELEXFREE FINANCIAL, INC.,<br><br>        Reorganized Debtors. | Chapter 11 Cases<br>14–40987–EDK<br>14–40988–EDK<br>14–40989–EDK<br><br>Jointly Administered |
| STEPHEN DARR, CHAPTER 11 TRUSTEE OF THE ESTATES OF EACH OF THE DEBTORS,<br><br>        Plaintiff,<br><br>        v.<br><br>BENJAMIN ARGUETA, *et al.*, and a CLASS OF DOMESTIC NET WINNERS,<br><br>        Defendants. | Adv. Pro. No.: 16–04006–EDK |
| STEPHEN DARR, CHAPTER 11 TRUSTEE OF THE ESTATES OF EACH OF THE DEBTORS,<br><br>        Plaintiff,<br><br>        v.<br><br>PAOLA ZOLLO ALECCI, *et al.*, and a CLASS OF INTERNATIONAL NET WINNERS,<br><br>        Defendants. | Adv. Pro. No.: 16–04007–EDK |

**DOMESTIC & INTERNATIONAL CLASS REPRESENTATIVES'
OPPOSITION TO TRUSTEE'S MOTION TO PARTIALLY STRIKE
PORTIONS OF THE AFFIDAVIT OF FRANTZ BALAN UNDER FEDERAL
RULE OF EVIDENCE 602 AND 702**

Domestic Class Representative Frantz Balan and International Class Representatives Marco Puzzarini and Sandro Paulo Freitas (the "Class Defendants") hereby oppose the Trustee Stephen B. Darr's Motion (the "Motion") to Partially Strike Portions of the Affidavit of Class Representative Frantz Balan Under Federal Rule of Evidence 602 and 702. As set forth below, Domestic Class Representative Frantz Balan worked in TelexFree on a full-time basis for a nine- or ten-month period and is therefore competent to testify about his experiences as they relate to the issues of user account aggregation and participant net equity. Accordingly, the motion to strike should be denied.

As further grounds for this opposition, the Class Defendants state as follows:

## INTRODUCTION

Mr. Balan's testimony is based on his personal knowledge and experience as a Participant (as that term is defined by the Trustee) in Telexfree, and requires no particular knowledge, skill, experience, training, or education to provide or understand. His testimony is thus admissible under Rule 602. Further, to the extent Mr. Balan offers any opinion testimony in his affidavit, this is opinion testimony by a lay witness, which is admissible under Rule 701 because it is based on Mr. Balan's perception of events as a Participant in Telexfree. Finally, Class Defendants' expert Joshua Dennis properly relied on Mr. Balan's testimony under Rule 703, because how Participants actually transacted is a type of facts and data that Mr. Dennis was made aware of, and because real-world Participant testimony of how Telexfree actually worked is the sort of facts or data on which an expert would reasonably rely in forming his opinion. FRE 703. Accordingly,

2

the Trustee's request to strike wide swaths of the Balan Affidavit from the record should be denied.

By way of background, Frantz Balan's affidavit is dated July 30, 2020, and was served on the Trustee shortly thereafter in connection with the first expert report of Joshua Dennis. Mr. Balan's Affidavit was admitted by this Court in the prior Daubert hearing in these proceedings held in November 2020. In admitting the Balan Affidavit, this Court stated: "I'm admitting Mr. Balan's affidavit as part of the record in this Daubert proceeding and I will look at it." (Daubert Hearing Tr., Nov. 24, 2020, at 421:12-425:15) ("Defendants' Exhibit 19 [Affidavit of Frantz Balan], admitted in evidence").

## ARGUMENT

Frant Balan's affidavit contains statements that are admissible under Rule 602 and 701, and is the sort of evidence that can be relied upon by an expert under Rule 703. Accordingly, the motion to strike should be denied.

### A. Mr. Balan's Testimony is Based On His Personal Knowledge and Experience, and Thus is Admissible Under FRE 602

A lay witness may testify regarding his personal knowledge and experience, provided that sufficient evidence is introduced to support a finding that the witness has personal knowledge of the matter. FRE 602. A witness's own testimony may be evidence to prove the witness's personal knowledge. *Id.* A foundation should be laid "establishing the basis of a witness's knowledge, opinion, or expertise." *United States v. Rosado-Perez*, 605 F.3d 48, 55 (1st Cir. 2010).

3

Here, Mr. Balan has personal knowledge of Telexfree because he was himself a Participant. As he stated in his affidavit, he "was involved in TelexFree for a roughly nine- or ten-month period in 2013 and 2014," and thus has "familiarity with TelexFree and its systems." Balan Aff. ¶ 5. Through his own participation, as well as his work in a team with other Participants and his conversations and engagement with other Participants, Mr. Balan has a wealth of personal knowledge regarding how TelexFree worked and how many Participants operated. This is the foundation for his testimony and his affidavit properly establishes the basis of his knowledge. *See Rosado-Perez*, 605 F.3d at 55. Mr. Balan is therefore particularly suited to provide information to the experts and this Court. Despite this breadth of personal knowledge and experience, the Trustee now seeks to strike several of Mr. Balan's statements.

The Trustee is correct that Mr. Balan does not know how every single Participant acted in every single instance. Indeed, no one, not even the Trustee, has the ability to say that *all* Participants did *anything* 100% of the time. Mr. Balan acknowledges as much in one of his statements the Trustee has moved to strike: ". . .each team and each pair of participants within a team had their own compensation arrangements that varied by team and participant. *There was no universal payment practice.*" Balan Aff. ¶ 17 (emphasis added). Mr. Balan's experience as a promoter working with other Participants (both other promoters and recruits) provided him with this knowledge.

Despite what the Trustee claims, Mr. Balan has simply testified as to his own knowledge of how he and the Participants with which he worked and was acquainted, acted. For example, Mr. Balan states that the Trustee's assumptions that a promoter

4

*always* received the *exact* amount of an invoice from a recruit are false. Balan Aff. ¶ 25. In the very next paragraph, Mr. Balan states that "promoters like me *rarely received the full amount in cash*. I would estimate *for me and the promoters I worked with or spoke to* that at best this happened *only 10% of the time*." Balan Aff. ¶ 26 (emphasis added). Mr. Balan has firsthand knowledge of these facts because, as he stated, he was a TelexFree Participant and he worked with, transacted with, and spoke to other Participants. His testimony is a sufficient basis to show his personal knowledge of these facts. FRE 602 ("Evidence to prove personal knowledge may consist of the witness's own testimony.")

Mr. Balan also testified to the fact that promoters usually had to ask for steeply discounted payments, usually around 50-75% of the invoiced amount, due to the competition to recruit new Participants. *See* Balan Aff. ¶ 27. Again, Mr. Balan is testifying based on his experience working as a promoter and engaging with other promoters and recruits. While he cannot testify as to how every single promoter was paid in every single transaction across the vast TelexFree scheme, he can certainly explain that in his experience, competition for recruits drove down prices so that promoters like himself most often had to take a steeply discounted payment. *Id.* Likewise, his experience also gives him the personal knowledge to testify as to how promoter-recruit transactions often occurred and the problems promoters often faced with collecting payments. *See* Balan Aff. ¶¶ 28-30. In Mr. Balan's experience, "[i]t was common to have collection problems . . . It is a mistake to assume that even the discounted amounts were collected 100% of the time. The Trustee overstates any net equity I may have had by wrongly assuming that I collected 100% of all people I

5

recruited." Balan Aff. ¶ 29. In paragraphs the Trustee asks this Court to strike, Mr. Balan explains that "[*m*]*uch of the time*, a recruit was being recruited not just by a single promoter, but "on behalf of or in concert with the promoter's promoter." Balan Aff. ¶ 28. He explains that promoters often shared compensation and that these transactions were not triangular in every case. Balan Aff. ¶ 28. Mr. Balan also states that the Trustee should not assume credit transfers between Participants were free because credits "were bought and sold on a discounted basis an overwhelming majority of the time." Balan Aff. ¶ 29.

While Mr. Balan cannot, and does not, speak for every single one of the thousands of TelexFree Participants, he can certainly speak to the experience he and those he worked with had. Indeed, Rule 23(a) expressly contemplates that class representatives such as Frantz Balan provide meaningful information where it would be impractical to seek the testimony of each and every participant. Mr. Balan's statements come from his own experiences and perceptions while working within TelexFree. Accordingly, all such statements are properly admitted under Rule 602.

### B. Mr. Balan's Testimony is Not Expert Testimony Under FRE 702 Because it Does Not Require Particular Knowledge, Skill, Experience, Training, or Education

To be sure, a heightened standard applies to expert witnesses because, unlike lay witnesses, the trier of fact may be more easily swayed by the imprimatur of an "expert." *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993) ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it"); *see also Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 35 (1st. Cir. 2012) (noting that courts must guard against the "tyranny of experts" and "insulate the jury from

6

expert testimony when reliance on authoritative studies and methods threatens to mask the lack of an adequate fit"). But this standard does not apply to Mr. Balan because he is not being offered as an expert witness. He is merely a fact witness who participated in TelexFree and observed the participation of others. The statements Mr. Balan makes in his affidavit were based on his own personal knowledge, experience, and perception, gained through his participation in TelexFree and his engagement with other Participants. Accordingly, Rule 702 is inapplicable here.

Examination of the Trustee's arguments reveals the inapplicability of Rule 702. Specifically, the Trustee claims that Mr. Balan does not have the required expertise to testify as to the accuracy and reliability of the Trustee's aggregation. *See* Motion at 2. But Mr. Balan has firsthand knowledge of his own Participation in TelexFree, including which accounts belonged to him. Mr. Balan has reviewed which accounts the Trustee has aggregated to him and has determined that the aggregation is incorrect. Balan Aff. ¶¶ 11-15. As Mr. Balan explains, there are accounts that Mr. Balan or his team members set up, in Mr. Balan's name, that the Trustee did not aggregate to him. Balan Aff. ¶ 13. There are also accounts that were not set up by Mr. Balan, that he did not set up or operate in any way, that the Trustee *did* aggregate to him. Balan Aff. ¶ 15. Based on his personal knowledge of his participation in TelexFree and his personal review of which accounts the Trustee has aggregated to him, Mr. Balan has determined that "[t]he outcome of this aggregation is not fully accurate or reliable." Balan Aff. ¶ 12. Mr. Balan is entitled to testify to this opinion, not under the inapplicable Rule 702, but under the applicable Rule 701. *See* Section C, *infra*.

7

Further, it is hard to see how Mr. Balan's statement that the aggregation is "not fully accurate or reliable," based on his own knowledge, experience, and perceptions would require Mr. Balan to be qualified as an expert under Rule 702.[1] Mr. Balan does not seek to testify as to the specifics of the aggregation methodology. Rather, he knows based on direct first-hand knowledge which accounts belonged to him and which *did not*, as well as which accounts were aggregated to him and which accounts were not. It does not take any expertise to understand that mistakes in aggregation—*i.e.* aggregating accounts to a user that did not belong to him, and failing to aggregate accounts that did—mean the aggregation is "not *fully* accurate or reliable." *See* Balan Aff. ¶ 12. Accordingly, Mr. Balan's statements as to the accuracy and reliability of the aggregation method, based on his personal knowledge, constitute lay testimony and fall outside the scope of Rule 702.

Likewise, Mr. Balan's statement that "simply going by the information entered in the TelexFree system is unreliable and would cause mistakes" is properly admitted as lay testimony. Balan Aff. ¶ 18. Mr. Balan is again tapping into his personal knowledge to explain why the TelexFree data does not show the whole picture of how Participants actually acted. In fact, Mr. Balan goes on to list out reasons why the information entered in the TelexFree system is "unreliable," including Participants' ability to use other Participant's personal information to set up an account and the use of shared computers allowing Participants to "autocomplete" data fields when setting up an account. Balan Aff. ¶¶ 19-22.

---

[1] As it turns out, Mr. Balan's criticisms of the Martin Report turn out to have been justified, as the opinions expressed therein were excluded under *Daubert*.

8

Here, Mr. Balan is simply pointing out that Participants could, and often did, open accounts by using other people's names and identifying information. *Id.* It does not require expertise for Mr. Balan (or anyone else) to understand how these situations could make the data unreliable. For example, TelexFree's website allowed data to be entered via "autocomplete," and ordinary people understand the "autocomplete" function gives others access to your data entries when computers are shared. Balan Aff. ¶ 21. Additionally, as a lay witness, Mr. Balan is able to offer testimony that TelexFree allowed users to make typographical errors. *Id.*

To the extent that Mr. Balan is offering any opinions (*see* Balan Aff. ¶ 16), which is discussed below, these may be properly admitted under FRE 701. In any case, Mr. Balan's testimony falls well within the common knowledge of the ordinary layman, and thus falls outside the purview of Rule 702. *Compare United States v. Fosher*, 590 F.2d 381 (1st Cir. 1979) (finding trial court did not err in deciding that unreliability of eyewitness testimony was not beyond the ken of lay jurors) *with Carrozza v. CVS Pharmacy, Inc.*, 992 F.3d 44, 58 (1st Cir. 2021) (concluding that an expert opinion was necessary to prove standard of care because such knowledge "is beyond the ken of a lay juror").

### C. Mr. Balan's Testimony is Admissible Under FRE 701 Because As a Lay Witness He May Give Opinion Testimony That is Rationally Based on His Perception

A lay witness may properly offer opinion testimony so long as such opinion testimony is (1) based on the witness's perception; (2) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (3) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. The lay opinion

9

witness "remains a fact witness as opposed to an expert witness." *Fecho v. Eli Lilly and Co.*, 914 F.Supp.2d 130, 141 (D. Mass 2012). Under FRE 701, courts allow lay witnesses to express opinions about a business "'based on the witness's own perceptions and knowledge and participation in the day-to-day affairs of [the] business.'" *United States v. Munoz-Franco*, 487 F.3d 25, 35 (1st Cir. 2007) (internal citations omitted). In *Munoz-Franco*, the court held that the lay witness's opinion testimony was properly within the scope of Rule 701 because it was based on the knowledge of the employer's banking practices that the witness acquired while he was employed there. *Id.* at 35-36.

In his affidavit, Mr. Balan makes statements that the Trustee seeks to strike as improper lay opinion testimony under Rule 701 and "irrelevant under Net Equity Order." Mr. Balan has offered testimony regarding his expenses (both in time and money) as a Participant in TelexFree. Such statements are based on Mr. Balan's perception, helpful to understand Mr. Balan's testimony regarding his participation in TelexFree and determining whether his net equity calculation is accurate, and are not based on any specialized knowledge within the scope of Rule 702. These statements are thus properly admitted under Rule 701.

The Trustee also takes issue with Mr. Balan's statement that "it is not possible to determine how much money a participant made or lost simply by allocating the accounts based on the aggregations." Balan Aff. ¶ 17. As Mr. Balan explained throughout his affidavit, his personal review of the accounts aggregated to him show that some accounts he controlled were not aggregated to him, while some accounts he did not set up or operate were aggregated to him. *See* Balan Aff. ¶¶ 13-15. Additionally,

10

Mr. Balan explains the way in which he and others bought and sold credits, which were not accounted for in the Trustee's net equity calculation. *See* Balan Aff. ¶ 30. He also explains how he paid out other expenses to participate in TelexFree (including renting office space and hiring support staff), which were not considered in the Trustee's net equity calculation. Balan Aff. ¶¶ 6-8. Despite the Trustee's claims, Mr. Balan's testimony about the inaccuracies of the Trustee's net worth calculation are highly relevant here. This proceeding seeks to determine the liability of alleged "Net Winners," and Mr. Balan seeks to show how his (and many others Participants') alleged "net winnings" are vastly overstated and inaccurate. This is a central question of this litigation and Mr. Balan's testimony on the subject is highly relevant and should not be struck. Similarly, his opinion that the Trustee's aggregation cannot determine how much money a participant made or lost is based on his own perceptions and does not require any specialized knowledge. These statements are properly admitted under Rule 701.

Mr. Balan also testified as to reasons why the information entered in the TelexFree system is "unreliable," including Participants' ability to use other Participant's personal information to set up an accounts, and the use of shared computers allowing Participants to "autocomplete" data fields when setting up an account. Balan Aff. ¶¶ 19-22. Here, Mr. Balan is simply pointing out that Participants could easily open accounts by using other people's names and identifying information. It does not require expertise for Mr. Balan (or anyone else) to understand how these situations could make the data unreliable. These statements are based off of Mr. Balan's experience as a Participant in TelexFree and how he operated within a team of other Participants, and

11

his statements are helpful to understanding his full testimony and determining important facts in issue (*i.e.* Mr. Balan's net equity). Thus, these statements are also properly admitted as lay opinion testimony under Rule 701.

### D. Class Defendants' Expert, Joshua Dennis, May Permissibly Rely on Mr. Balan's Testimony Under FRE 703.

An expert may base his opinion on facts or data in the case that he has been made aware of or has personally observed. FRE 703. Moreover, the expert's opinion is properly admitted even if the facts and data underlying that opinion are not admissible, so long as they are the kind of facts and data on which an expert in the field would reasonably rely. *Id.; see United States v. Tavares*, 843 F.3d 1, 6 (1st Cir. 2016) (finding sufficient basis for expert to opine about the rate of usable fingerprints recovered from examined firearms because, while the expert was not aware of the specific procedures used to compile and tabulate the data that went into the report, he "made clear that the report was neither an ad hoc nor an informal production"); *see also United States v. Corey*, 207 F.3d 84, 89 (1st Cir. 2000) (approving expert's reliance on "materials maintained at ATF 'research libraries,' which contained information on approximately five thousand different firearms").

The Trustee correctly points out that an expert using one or a handful of Participants' experience to extrapolate to the tens of thousands of Class Defendants would be "improper." Motion at 3. With so many Participants, it is virtually impossible to say reliably that *all* Participants did *anything* 100% of the time. The Balan Affidavit is simply a counter to the Trustee's numerous assumptions about Participant behavior that assume 100% uniformity, most notably the assumption that 100% of recruitment

12

transactions involved a cash transfer and that the cash that was transferred was always 100 cents on the dollar. Indeed, as a Class Representative, Mr. Balan is required by Federal Rule of Civil Procedure 23(a) to "fairly and adequately represent the interests of the class." Thus, it is incumbent upon Mr. Balan to recount his experiences in TelexFree to the extent they refute or contradict the Trustee's assumptions.

Unlike the Trustee's experts, however, Mr. Dennis expressly does not extrapolate Mr. Balan's testimony to 100% of Telexfree Participants, as the Trustee claims. Rather, Mr. Dennis is relying on Mr. Balan's testimony about his *own* participation in Telexfree to show the ways in which the Trustee's assumptions are incorrect (*e.g.* that promoters did *not* collect 100% of the face value of invoices 100% of the time, and that Participants often operated in teams). Mr. Dennis simply uses Mr. Balan's testimony to illustrate an example of a Telexfree Participant's experience that does *not* fit with the assumptions the Trustee has applied universally to all Participants. Certainly when evaluating the accuracy of the Trustee's assumptions about how TelexFree worked, a Participant's first-hand account is one type of data on which an expert may reasonably rely. *See* FRE 703.

Moreover, Mr. Dennis' opinion is not based on "conjecture or speculation" as the Trustee contends. Mr. Dennis is relying, as relevant here, on sworn testimony from Mr. Balan, a Telexfree Participant, based on Mr. Balan's first-hand knowledge and experience of his own participation and that of the other Participants Mr. Balan worked closely with for almost a year.

## CONCLUSION

For the reasons set forth above, the Class Defendants hereby respectfully request that this Court deny the Trustee's Motion to Partially Strike Portions of the Affidavit of Frantz Balan.

                                Respectfully submitted,

                                FRANTZ BALAN,
                                FOR HIMSELF AND AS CLASS
                                REPRESENTATIVE ON BEHALF OF
                                ALL DOMESTIC NET WINNERS,

                                  *-and-*

                                MARCO PUZZARINI AND
                                SANDRO PAULO FREITAS,
                                FOR THEMSELVES AND AS CLASS
                                REPRESENTATIVES ON BEHALF OF
                                ALL INTERNATIONAL NET
                                WINNERS,

                                By their counsel,

Dated: September 29, 2023            /s/ *Ilyas J. Rona*
                                                Ilyas J. Rona, Esq. (BBO# 642964)
                                                Michael J. Duran, Esq. (BBO #569234)
                                                MILLIGAN RONA DURAN & KING LLC
                                                28 State Street, Suite 802
                                                Boston, Massachusetts 02109
                                                (617) 395-9570
                                                ijr@mrkdlaw.com
                                                mjd@mrdklaw.com

## **CERTIFICATE OF SERVICE**

I, Ilyas J. Rona, hereby certify that I have caused a copy of the foregoing Opposition be served on counsel for the Trustee and all registered electronic filers appearing in this case using the Court's CM/ECF system.

Dated: September 29, 2023                     /s/ Ilyas J. Rona
                                              Ilyas J. Rona, Esq.