UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>TELEXFREE, LLC,<br>TELEXFREE, INC. and<br>TELEXFREE FINANCIAL, INC.,<br><br>Reorganized Debtors. | Chapter 11 Cases<br><br>14-40987-EDK<br>14-40988-EDK<br>14-40989-EDK<br><br>Substantively Consolidated |
| STEPHEN B. DARR, TRUSTEE<br>OF THE ESTATES OF TELEXFREE, LLC,<br>TELEXFREE, INC. and TELEXFREE<br>FINANCIAL, INC.,<br>Plaintiff,<br>v.<br>FRANZ BALAN, A REPRESENTATIVE OF A<br>CLASS OF DEFENDANT NET WINNERS,<br>Defendants. | Adversary Proceeding<br>No. 16-4006 |
| STEPHEN B. DARR AS TRUSTEE<br>OF THE ESTATES OF TELEXFREE, LLC,<br>TELEXFREE, INC. and TELEXFREE<br>FINANCIAL, INC.,<br>Plaintiff,<br>v.<br>MARCO PUZZARINI AND SANDRO PAULO<br>FREITAS, REPRESENTATIVES OF A CLASS<br>OF DEFENDANT NET WINNERS,<br>Defendants. | Adversary Proceeding<br>No. 16-4007 |

**RESPONSE BY TRUSTEE TO
DOMESTIC & INTERNATIONAL CLASS REPRESENTATIVES' MOTION TO
STRIKE THE AFFIDAVITS OF JEAN LOUIS SORONDO & STEPHEN B. DARR
PURSUANT TO FED. R. CIV. P. 37(C)(1) OR, ALTERNATIVELY, TO RESCHEDULE
THE UPCOMING DAUBERT HEARING, AMEND THE DEADLINE FOR EXPERT
DISCLOSURE, AND INCREASE THE BUDGET OF CLASS DEFENDANTS
FOR LEGAL FEES AND EXPERT COSTS**

1

Stephen B. Darr, the Liquidating Trustee ("Trustee") under the confirmed plan of reorganization of TelexFree LLC, TelexFree Inc., and TelexFree Financial Inc. (collectively, "TelexFree" or the "Debtor"), respectfully submits this opposition to the Motion by the Domestic and International Class Representatives (the "Class Representatives") to Strike the Affidavits of Jean Louis Sorondo & Stephen B. Darr Pursuant to Fed. R. Civ. P. 37(c)(1) or, Alternatively, to Reschedule the Upcoming Daubert Hearing, Amend the Deadline for Expert Disclosure, and Increase the Budget of Class Defendants for Legal Fees and Expert Costs (the "Motion to Strike").

Both Jean Louis Sorondo ("Sorondo") of Huron Consulting Group ("Huron"), the Trustee's financial advisors, and the Trustee qualify as witnesses permitted to give lay opinions. Therefore, there was no need for disclosure of these individuals as experts nor the need to submit additional expert reports. The conclusions expressed in the Sorondo Affidavit and the Trustee Affidavit, and the basis for those conclusions, were disclosed to the Class Representatives and their expert nearly four (4) years ago. There is no new information being presented and certainly no harm. The Motion to Strike should be denied.

In connection with the first *Daubert* trial conducted in November 2020, the Court's ruling of June 22, 2021 was limited to a finding that the trustee had not shown by a preponderance of the evidence the reliability of his expert's opinion as to the selection and application of his method for *aggregating* user accounts of Net Winner Participants. See A.P. No. 16-4006, Docket 385, pg 39. The ruling was limited to the aggregation process. The Court explicitly deferred any ruling on the computation of the Net Winnings of each Participant.

2

The Trustee thereafter retained Cameron Freer of Borelian Group specifically to address the aggregation issues arising in the first *Daubert* hearing. The Borelian Group did not address the manner of identifying the Net Winner in each aggregation or the calculation of the Net Winnings for a User Account aggregation. These issues were addressed in the Sorondo Affidavit and Trustee Affidavit.

## I.     The Sorondo Affidavit

The identification of the Net Winner Participant who owned a cluster of User Accounts through the use of the so-called "Lowest Rep ID" has been consistently applied by the Trustee for nine (9) years, is unchanged from the method used in the first *Daubert* hearing, and is not a matter of expert testimony. The Lowest Rep ID is simply the first-in-time User Account that was created in any User Account aggregation.

In his affidavit, Sorondo stated the factual basis upon which the Court may find: (i) that the Lowest Rep ID identifies the owner of each User Account aggregation; and (ii) that the calculation of net equity for each User Account aggregation is as set forth in the Freer expert report.

Sorondo's work consisted of sorting the data in the name field of each Participant to establish identity, and in applying the definition of net equity supplied to him by the Trustee and using that definition to calculate each Participant's Net Winnings. These tasks, consisting of mathematical exercises and basic manipulation of Excel spreadsheet data, do not require specialized expertise for which an expert witness is required. *Allscripts Healthcare, LLC v. Andor Health, LLC*, 2022 U.S. Dist. LEXIS 134924 (D. Del. 2022) at *55; *Foraker v. Schauer*, 2005 U.S. Dist. LEXIS 46071 (D. Col. 2005) at *24; *New York v. UPS*, 942 F.3d 554, 596 (2nd Cir. 2019), *cert den.*, 141 S. Ct. 242 (2020)(arithmetic calculations performed using Excel, even

as to spreadsheets that are large and unwieldy, does not require expert testimony); *Qwest Corp. v. Elephant Butte Irrigation Dist.*, 616 F. Supp. 2d 1110 (D.N.M. 2008)(witness estimate was a mathematical exercise based upon information known and reasonably available; the case was tried to the bench and the Court understood the calculation; accordingly, declarant was not an expert witness).

Sorondo qualifies as a fact witness, not an expert witness. Contrary to the Class Representatives' allegations, a witness need not have been actively involved in the scheme in order to have sufficient personal knowledge to qualify as a fact witness under Federal Rule of Evidence ("FRE") 602. Where an individual was not personally involved in the events that are the principal focus of his testimony and, instead, provides testimony based upon that individual's participation in an investigation of events that predated the witness' appearance in the case, such individual may qualify as a fact witness. *See Fox v. Perry H. Koplik & Sons, Inc.*, 382 B.R. 599 (Bankr. S.D.N.Y. 2008)(where a skilled accounting professional studies what happened before his retention and explains in testimony what he has discovered, such testimony is permissible as a lay witness reflecting witness perception). In this case, Sorondo conveyed factual information located in the TelexFree books and records based upon his participation in the investigation of the TelexFree scheme and knowledge of the books and records.

II. **The Darr Affidavit**

In his affidavit, Darr provides his conclusions as to the appropriate method of identifying the Participant in a User Account aggregation and the computation of the Net Winnings for each aggregation of User Accounts.

The Trustee is a fact witness. The Trustee's familiarity with the Debtor's books and records and the Debtor's assets is sufficient to establish his personal knowledge. *In re Real*

4

*Estate W. Ventures, L.P.,* 170 B.R. 736 (Bankr. N.D. Ga. 1993). The Trustee's personal knowledge may be based upon the Debtor's books and records of which he is custodian as well as his personal review of such records. *In re Walker,* 566 B.R. 503 (Bankr. E.D. Tenn. 2017); *see also In re Louis J. Pearlman Enters.*, 398 B.R. 59, 63 (Bankr. M.D. Fla. 2008)(motion to strike trustee affidavit denied; affidavit was based upon trustee's personal knowledge of facts gained through carrying out his duties as trustee).

Having established that Darr is a proper fact witness, his conclusions respecting the use of the Lowest Rep ID to identify Participants and the computation of Net Winnings are permitted opinion testimony of a lay witness under FRE 701. *See United States v. Spencer,* 873 F.3d 1, 14 (1st Cir. 2017)(touchstone for admissibility under FRE 701 of lay opinion is whether the testimony has the potential to help the jury).

Darr's opinions are rationally based upon his perception because an ordinary person would infer that: (i) an individual is more likely to submit complete and accurate data the first time that person interfaces with a website application; and (ii) an individual is likely to demand payment of $1 for surrendering 1 credit where such credits can easily be redeemed otherwise for $1. *See United States v. Cooks,* 589 F.3d 173, 179-180 (5th Cir. 2009)(trustee must demonstrate opinion is result of reasoning familiar in everyday life). His opinion must be one a normal person would draw based upon the observed facts. *Torres v. County of Oakland,* 758 F.2d 147, 149 (6th Cir. 1985).

Darr's conclusion as to the propriety of using Lowest Rep ID to identify ownership of an aggregation of User Accounts is based upon a review of the data comparing the name in Lowest Rep ID with the most prevalent name in each User Account aggregation. The Trustee's explanation of the mechanics of a Triangular Transaction are based upon his investigation into

5

the TelexFree scheme, the value of credits while the scheme was in operation, and a normal understanding of individual incentives and market activity. Darr's instructions as to the treatment of Credit Transfers in the computation of Net Winnings are premised upon discussions with counsel pertaining to applicable law.

Darr's conclusions are helpful to the Court in determining an appropriate methodology for identifying the owner of each Net Winner aggregation and in determining the computation of Net Winnings ascribed to each User Account aggregation. *See In re Nulik*, 2010 Bankr. LEXIS 4475, f/n 6 (Bankr. D. Kan. 2010)(trustee was a party and his opinion testimony as to amount of lost rent was helpful to a determination of damages and that, as trustee, he had experience and familiarity in renting property and thus his opinions were rationally based upon his perception. A trustee's opinion testimony is not unlike that of an owner of property); *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 736-37 (5th Cir. 2010)(company president could testify about corporate losses; her position as president permitted a broader range of testimony than a traditional lay witness when testifying to matters concerning the business).

Darr's testimony is admissible based not only on his observations and personal perceptions but also on the Trustee's experience and specialized knowledge in his vocation. *See, e.g., United States v. Munoz-Franco,* 487 F.3d 25, 35 (1st Cir. 2007)(Under FRE 701, courts allow lay witnesses to express opinions about a business based on the witness' own perceptions and knowledge and participation in the day to day affairs of that business; bank's former chief lending officer could offer lay opinion about propriety of certain construction loans, based on his observation of bank's practices, even though he did not recall seeing specific loan classifications at issue during his employment with bank).

The testimony of Sorondo and Darr is based upon their investigation of TelexFree and review of TelexFree's books and records. The financial expertise of these individuals does not necessarily equate to being an "expert", as the federal rules are not intended to eliminate the ability of lay witnesses to testify on the basis of particularized knowledge acquired in business or through other experiences. *Advisory Committee Note* (2000); *United States v. Brooks,* 715 F.3d 1069, 1078 (8th Cir. 2013)(affirming admission of lay testimony of senior account executive, who knew how GPS device worked and had demonstrated device to customers, in order to establish foundation for admissibility of GPS device).

### III.    There is no prejudice or harm to the Class Representatives.

The Class Representatives' claims of prejudice in connection with the Sorondo Affidavit an Trustee Affidavit ring hollow, given the issues in dispute and the Class Representatives' intimate familiarity with each issue. The issues addressed in the affidavits consist principally of:

(i)   The use of the Lowest Rep ID to determine the identity of the Net Winner in each User Account aggregation;

(ii)  The exclusion of Credit Transfers in computing net equity; and

(iii) The presumption that cash was paid by a recruited Participant to a recruiting Participant in a Triangular Transaction.

The Trustee has used the Lowest Rep ID to identify Participants in a User Account aggregation consistently for nine (9) years. In early 2020, nearly four (4) years ago, Sorondo sent the Class Representatives' expert a tutorial memo on the aggregation of User Accounts performed by Huron as well as the computation of net equity for each aggregation.[1] The memo is listed as a reference material to the *Rebuttal Expert Report of Joshua W. Dennis ("Rebuttal*

---

[1] In fact, Mr. Sorondo began to educate StoneTurn on the mechanics of the TelexFree scheme in late 2016, nearly seven (7) years ago.

7

*Report")* submitted July 31, 2020 (Exhibit 1 to Defendants' Daubert Exhibits (Vol. I), Exhibit 2 to Rebuttal Report: *Documents Considered: TelexFree Net Equity Calculation and Aggregation.pdf, as provided by Huron*. The expert for the Class Representatives was not only aware of the Trustee's position on these issues, but *relied upon a memo in 2020 explaining these positions*. The memo is attached as Exhibit "A" hereto.

The memo specifically references the use of the Lowest Rep ID and confirms each component in the computation of Net Winnings. The Class Representatives and their expert have been on notice of the Trustee's positions in this regard for nearly four (4) years. In paragraphs 39 and 40 of the Rebuttal Report filed by StoneTurn in 2020, StoneTurn outlines the components of Net Equity as computed by the Trustee (which has not changed). Further, Exhibit 8 to that Rebuttal Report identifies the 100 largest Net Winners computed by the Trustee using the name identified in the Lowest Rep ID and specifically referencing the Lowest Rep ID in the data. The notion that the Class Representatives have suffered any "surprise" as to any of these issues is absurd. Each of these issues was raised in the first *Daubert* hearing, and the Trustee's position on each of these issues has not changed at all since the first *Daubert* hearing. As to the last issue of Credit Transfers, the treatment of Credit Transfers in calculating Net Winnings is a matter of law, appropriate for consideration on summary judgment.

## IV. Conclusion

Both Sorondo and Darr qualify as fact witnesses with personal knowledge, and to the extent that any of their testimony is consider opinion testimony, such testimony is admissible as an opinion of a lay witness. The issues forming the basis of the Sorondo Affidavit and Darr Affidavit have been well-known to the Class Representatives for nearly four (4) years, and the Trustee's position on these issues has not changed at all throughout the case. The Class

Representatives have shown no harm from the introduction of the affidavits. Accordingly, the Motion to Strike should be denied.

                                          Respectfully submitted,

                                          STEPHEN B. DARR, LIQUIDATING TRUSTEE,
                                          By his counsel:

Dated: October 6, 2023                 /s/ Andrew G. Lizotte
                                          Charles R. Bennett, Jr. (BBO #037380)
                                          Andrew G. Lizotte (BBO #559609)
                                          MURPHY & KING,
                                          Professional Corporation
                                          28 State Street, 31st Floor
                                          Boston, MA 02109
                                          Telephone: (617) 423-0400
                                          ALizotte@murphyking.com

825192

## CERTIFICATE OF SERVICE

I, Andrew G. Lizotte, hereby certify that on October 6, 2023, I caused a copy of the foregoing RESPONSE BY TRUSTEE TO DOMESTIC & INTERNATIONAL CLASS REPRESENTATIVES' MOTION TO STRIKE THE AFFIDAVITS OF JEAN LOUIS SORONDO & STEPHEN B. DARR PURSUANT TO FED. R. CIV. P. 37(C)(1) OR, ALTERNATIVELY, TO RESCHEDULE THE UPCOMING DAUBERT HEARING, AMEND THE DEADLINE FOR EXPERT DISCLOSURE, AND INCREASE THE BUDGET OF CLASS DEFENDANTS FOR LEGAL FEES AND EXPERT COSTS to be served electronically through the Court's ECF System upon the registered participants as identified on the Notice of Electronic Filing.

Dated: October 4, 2023                    /s/ Andrew G. Lizotte
                                          Andrew G. Lizotte

825308

# EXHIBIT A

Computation of Net Equity

There are six components to the Net Equity calculation. These components are outlined in the table below.

Relevant transactions were extracted from the TelexFree database tables representante (Accounts), fatura (Invoice), bonus(Bonus), and transferencia (Transfer). Some of the information being pulled, including the chargebacks, is information the Trustee received from third parties and imported into database tables. The components of Net Equity, and their location in TelexFree's records is described in Table 1 below.

Table 1: Components of Net Equity

| Transaction Type | Description | Source of Data | Table Name | Relevant Fields | Additional Information |
|---|---|---|---|---|---|
| Direct Receipts | Participant received payment from TelexFree through a bank or merchant. | SIG | Transfer Table | rep_id (account id) tipo (type) valor (amount) dat_solicita (date requested) | These transactions were extracted from the transfer table where the type field was set to zero, indicating payment was requested from TelexFree. Receipts were not processed subsequent to March 31, 2014. |
| Triangular Receipt | Participant used accumulated Credits to satisfy the Invoice of another Participant. | SIG | Invoice Table | account id amount status (status) obs (comment) | These transactions were extracted from the invoice table where status = 1 indicating the invoice was satisfied. The comment field contains the login name for the User Account that satisfied the invoice using system credit. The value in the amount field was recorded as a credit to the User Account satisfying the invoice. |
| Chargeback | Bank or Credit Card refund | iPayout Allied Wallet | Claim Statement | trans_type (transaction type) | Allied Wallet transaction ids and contact information were matched to iPayout transaction ids and contact information to associate chargebacks with TelexFree accounts. They can be found where trans_type is '8 – Chargebacks' |
| Less | | | | | |
| Direct Payments | Participant paid TelexFree directly or through a bank or merchant to satisfy an invoice. | SIG | Invoice Table | account id amount status comment | Transactions were extracted from the invoice table where status = 1 indicating they were paid. Unlike with Triangular Payments, the comment field did not indicate the invoice was satisfied by another User Account. |
| Triangular Payment | Participant used accumulated Credits to | SIG | Invoice Table | account id amount status (status) | These transactions were extracted from the invoice table where status = 1 indicating they were paid. Comment field indicated the User Account satisfying the invoice. |

Page 1

| | | | | | |
|---|---|---|---|---|---|
| | satisfy the Invoice of another Participant. | | | obs (comment) | |
| Manual Credit | Participant paid TelexFree directly or through a bank or merchant to Purchase system credits | SIG | Bonus Table | rep_id_recebeu (recipient account id) Type | These transactions were extracted from the bonus table where type = 3. Recipient account id was mapped to account id. Manual credits were excluded from table unless SIG indicated that a payment was made to a banking institution or via cashier's check, or the value was below $20,000. |

All net equity data was extracted to the table Claim Statement and fields were mapped from the four tables. The Trustee created a transaction type field (trans_type) that categorizes the different transaction types. The six transaction types can be summed for any account to calculate net equity for that account.

A basic query to calculate net equity for a typical TelexFree participant account:

Select sum(a.valor) from claim_statement a join rep_id_summary b on a.rep_id = b.rep_id where b.rep_id like [enter value] and b.entity like 'telexfree' and a.confirmed like 'net_equity'

A basic query to calculate net equity for a net winner account aggregation where certain accounts may have been manually excluded:

Select sum(a.valor) from claim_statement a join rep_id_summary b on a.rep_id = b.rep_id where b.included_accounts = [enter value] and b.confirmed like 'net_equity'

Page 2

Methodology of Aggregation of User Accounts

The Trustee aggregated User Accounts by comparing information from the Account Table in an iterative process. In order to do so, Huron developed a series of "keys" from the Account Table. These keys are described in Table 2 below.

Table 2: Aggregation Keys

| TelexFree/SIG Field | Description | Additional Information | Trustee Designation For Modified data from TelexFree/SIG Field ("Aggregation Field") |
|---|---|---|---|
| rep_nome | Full Name | Aggregation field removes spaces and other extraneous characters and excludes names with fewer than five characters. | name_key |
| rep_email | Email Address | Aggregation field identifies properly formatted permanent email addresses and excludes other entries. | email_key |
| rep_cel | Mobile Phone | Aggregation field removes non-numeric values and excludes entries with fewer than eight digits. | cel_key |
| rep_fone | Home Phone | Aggregation field removes non-numeric values and excludes entries with fewer than eight digits. | fone_key |
| rep_login | Login | Aggregation field only uses first three characters of login. | login_key |
| rep_end | Address 1 | Aggregation field only uses first five characters of address field with spaces removed. | end_key |
| rep_pwd_secondary | Secondary Password | Aggregation field uses the Secondary Password field where a password was provided. | hash_key |
| N/A | N/A | Aggregation field is the first four characters of the name_key field. | part_name_key |
| N/A | N/A | Aggregation field is the first character of the name_key field concatenated with the last four characters of the name_key field. | part_name_key2 |
| N/A | N/A | Aggregation field is the last five digits of the cel_key field concatenated with the last five digits of the fone_key field. | part_phone_key |

The Trustee then developed a database script that groups the keys together in different combinations, and sequentially compares them to previous results. By using the keys in different combinations, the script identified potential "signatures" for related participant accounts.

The database script performs this process through thirteen multiple account groupings, and links additional accounts or groups of accounts with each subsequent test. At each grouping, the lowest value "rep_id", which is the primary key in the account table, is applied to the aggregated group of accounts. Since rep_id was assigned automatically and sequentially by TelexFree, using the lowest value in the group also referenced the account that was created first in the group. The result is a new "parent key" for each aggregation that can be tied to the first account created by the participant in the aggregation. The parent key for any group may change several times through the process as the script looks to associate groups of accounts with the one that was created first in the group.

The aggregation steps using the keys developed by the Trustee are outlined in Table 3 below.

**Table 3**: Aggregation Steps

| Aggregation Step | Aggregation Fields Used |
|---|---|
| 1 | name_key, email_key |
| 2 | name_key, cel_key |
| 3 | name_key, fone_key |
| 4 | name_key, part_phone_key |
| 5 | name_key, login_key, end_key, |
| 6 | part_name_key, email_key, part_phone_key |
| 7 | part_name_key, part_phone_key, login_key, end_key |
| 8 | part_name_key, email_key, login_key, end_key |
| 9 | part_name_key, login_key, hash_key |
| 10 | part_name_key2, email_key, part_phone_key |
| 11 | part_name_key2, part_phone_key, login_key, end_key |
| 12 | part_name_key2, email_key, login_key, end_key |
| 13 | part_name_key2, login_key, hash_key |

Table 4 below provides an illustration of a portion of the aggregation process.

Table 4: Aggregation Example – Steps 1 and 2

| Ref. # (for discussion purposes) | Rep_ID | Name (name_key) | Email Address (email_key) | Cell Phone (cel_key) | Test 1 (name_key, email_key) | Test 2 (name_key, cel_key) | Minimum Rep_ID of Test 1 / Test 2 (Aggregation) |
|---|---|---|---|---|---|---|---|
| 1 | 456789 | John Smith | jsmith@gmail.com | 2125551212 | 456789 | 456789 | 456789 |
| 2 | 456790 | John Smith | jsmith@gmail.com | 2125551212 | 456789 | 456789 | 456789 |
| 3 | 456791 | John Smith | jsmith@gmail.com | 2125551212 | 456789 | 456789 | 456789 |
| 4 | 456792 | John Smith | jsmith@gmail.com | 3055551212 | 456789 | 456792 | 456789 |
| 5 | 456793 | John Smith | jsmith@gmail.com | 3055551212 | 456789 | 456792 | 456789 |
| 6 | 789123 | John Smith | jsmith@yahoo.com | 2125551212 | 789123 | 456789 | 456789 |
| 7 | 789124 | John Smith | jsmith@yahoo.com | 2125551212 | 789123 | 456789 | 456789 |
| 8 | 789125 | John Smith | jsmith@yahoo.com | 6175551212 | 789123 | 789125 | 456789 |
| 9 | 789126 | John Smith | jsmith@yahoo.com | 6175551212 | 789123 | 789125 | 456789 |
| 10 | 789127 | John Smith | jsmith@yahoo.com | 6175551212 | 789123 | 789125 | 456789 |

In Table 4 above, ten individual User Accounts are aggregated together using the first two of the 13 aggregation steps described above. The first five of the User Accounts share the same name_key and email_key. For this reason, they are assigned the lowest rep_id of the group (456789) for step 1. While the remaining five User Accounts shared the same name_key as the first five, they were not aggregated with those User Accounts in the first step because the email_key did not match. Rather, they were all assigned the lowest rep_id of their group (789123). At this point the ten User Accounts are considered to be two groups (456789 and 789123).

The second of the thirteen aggregation steps looks at the combination of name_key and cel_key. Step two resulted in three groups of User Accounts which were assigned the lowest rep_id of their respective groups (456789, 456792 and 789125).

Page 5

The script then takes the two groups from step 1 and looks at the lowest rep_id assigned to them in step 2. The script then assigns all of the User Accounts in each group with lowest rep-Id assigned to any User Account within the group. For example, User Accounts 6 and 7 were assigned the rep_id 456789 in step 2, and User Accounts 8-10 were assigned 789125. Because 456789 is lower, all five User Accounts in the group were assigned that rep_id and aggregated together. After step 3, all ten of the User Accounts in the example would be grouped together going forward.